UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE RESCAP LIQUIDATING TRUST MORTGAGE PURCHASE LITIGATION | Case No. 12-12020 (MG) (Ch. 11) Adv. Proc. No. 14-07900 (MG) |
| *This document relates to*: Rescap Liquidating Trust v. GreenPoint Mortg. Funding, Inc., Adv. Proc. No. 14-01916 (MG) Rescap Liquidating Trust v. Summit Fin. Mortg. LLC, Adv. Proc. No. 14-01996 (MG) | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS BASED ON LACK OF STANDING AND TO <u>ENFORCE THE SOLE REMEDY PROVISION</u>

MURPHY & McGONIGLE, P.C.
1185 Avenue of the Americas, 21st Floor
New York, N.Y. 10025
(212) 880-3976

*Attorneys for Defendants*

## TABLE OF CONTENTS

Table of Authorities ....................................................................................................... ii

Preliminary Statement.....................................................................................................1

STATEMENT OF FACTS .............................................................................................2

    A. The Claims Against GreenPoint and Summit...................................................2

    B. RFC's Assignment of Loans That Were Securitized........................................3

    C. The Sole Remedy Provision in the GreenPoint Agreement..............................5

ARGUMENT...................................................................................................................6

I.    RFC ASSIGNED AWAY THE RIGHTS IT ASSERTS IN THIS
    CASE AND LACKS STANDING TO SUE ........................................................6

II.    THE COURT SHOULD ENFORCE THE SOLE REMEDY
    PROVISION IN THE GREENPOINT AGREEMENT ........................................9

CONCLUSION................................................................................................................9

## TABLE OF AUTHORITIES

**Cases**                                                                                                        **Page**

*Amusement Indus., Inc. v. Stern,*
    No. 07 Civ. 11586 (LAK)(GWG), 2011 WL 6811018 (S.D.N.Y. Dec. 28, 2011)...................6

*In re Bank of New York Mellon,*
    No. 651786/11, 42 Misc. 3d 1237(A) (Sup. Ct. N.Y. Co. Jan. 31, 2014) ................................8

*Carlson v. Schmitt,*
    No. A09-930,  2010 WL 607576 (Minn. Ct. App. Feb. 17, 2010) ...........................................7

*Cortec Indus., Inc. v. Sum Holding L.P.,*
    949 F.2d 42 (2d Cir. 1991)  ...................................................................................................4

*Dunn v. National Beverage Corp.,*
    729 N.W.2d 637 (Minn. Ct. App. 2007) *aff'd,* 745 N.W.2d 549 (Minn. 2008) ......................7

*Home Equity Mortg. Trust Series 2006-5 v. DLJ Mortg. Capital, Inc.,*
    No. 653787/2012, 2013 WL 5314331 (Sup. Ct. N.Y. Co. Sept. 18, 2013) ...............................9

*House of Europe Funding I, Ltd. v. Wells Fargo Bank, N.A.,*
    No. 13 Civ. 519 (RJS), 2014 WL 1383703 (S.D.N.Y. March 31, 2014) ..................................6

*LaSalle Bank National Assoc. v. Nomura Asset Capital Corp.,*
    180 F. Supp.2d 465 (S.D.N.Y. 2001).......................................................................................8

*National Fin. Co. v. Uh,*
    279 A.D.2d 374 (1st Dep't 2001) ..............................................................................................6

*North Fork Bank v. Cohen & Krassner,*
    44 A.D.3d 375 (1st Dep't 2007) .........................................................................................7, 8

*Saco I Trust 2006-5 v. EMC Mortgage, LLC,*
    No. 651820/2012, 2014 WL 2451356 (Sup. Ct. N.Y. Co. May 29, 2014)................................9

*Stewardship Credit Arbitrage Fund LLC v. Charles Zucker Pearl Corp.,*
    No. 600634/2010, 31 Misc. 3d 1223(A) (Sup. Ct. N.Y. Co. May 4,
    2011) .........................................................................................................................................7

*U.S. Bank Nat'l Assoc. v. DLJ Mortg. Capital, Inc.,*
    No. 650369/2013, 42 Misc. 3d 1213(A) (Sup. Ct. N.Y. Co. Jan. 15, 2014) ............................9

*U.S. Bank National Assoc. v. Nesbitt Bellevue Property LLC,*
    859 F. Supp.2d 602 (S.D.N.Y. 2012).......................................................................................8

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE RESCAP LIQUIDATING TRUST MORTGAGE PURCHASE LITIGATION | Case No. 12-12020 (MG) (Ch. 11) Adv. Proc. No. 14-07900 (MG) |

*This document relates to*:

Rescap Liquidating Trust v. GreenPoint
Mortg. Funding, Inc., Adv. Proc. No. 14-
01916 (MG)

Rescap Liquidating Trust v. Summit Fin.
Mortg. LLC, Adv. Proc. No. 14-01996 (MG)

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS BASED ON LACK OF STANDING
AND TO ENFORCE THE SOLE REMEDY PROVISION**

**Preliminary Statement**

Defendants in the above captioned adversary proceedings submit this memorandum of

law in support of their motion to dismiss the claims against them relating to mortgage loans that

were assigned away by Plaintiff's predecessor. Those claims should be dismissed because

Plaintiff has no standing to assert them.

Plaintiff Rescap Liquidating Trust ("Plaintiff" or the "Liquidating Trust") sues herein as

successor to the contractual rights of Residential Funding Company, LLC ("RFC"), which

purchased loans from Defendants. For the loans that were purchased by RFC and deposited into

securitization trusts, RFC entered into agreements under which it assigned away the loans,

including its rights to sue with respect to the loans.[1] Accordingly, because the Liquidating Trust,

---

[1] This motion to dismiss at the pleadings stage relates only to securitized loans, and not to other loans sold
by Defendants that were not securitized. Defendants reserve their rights to seek dismissal with respect to
loans that were not securitized at the summary judgment or other appropriate stage of these proceedings.

1

RFC's successor, has no standing to assert claims with respect to such assigned loans, its claims relating to those loans should be dismissed in their entirety.[2]

Additionally, RFC's contract with defendant GreenPoint Mortgage Funding, Inc. ("GreenPoint") contains a "sole remedy" provision that governs claims of breaches of representations and warranties with respect to loans sold under the contract. The provision limits plaintiff's remedy to performance under a repurchase protocol set forth in the contract. Courts construing such sole remedy provisions have overwhelmingly enforced them. This Court should likewise enforce the sole remedy provision in the GreenPoint agreement, and dismiss Plaintiff's demand for monetary "damages," which is barred by the provision.

## STATEMENT OF FACTS

### A.  The Claims Against GreenPoint and Summit

In Adv. Proc. No. 14-01916 (MG), Plaintiff's Second Amended Complaint against GreenPoint (the "GreenPoint Complaint") alleges that, prior to RFC's bankruptcy in May 2012, GreenPoint sold over 2300 loans to RFC pursuant to a Mortgage Loan Purchase and Warranties Agreement (the "GreenPoint Agreement"). Some of the loans were then securitized, and others were either held by RFC or sold by RFC in whole loan sales. GreenPoint Complaint ¶ 18 & Ex. B-1 (listing securitized loans), B-2 (listing loans that were not securitized).

In Adv. Proc. No. 14-01996 (MG), Plaintiff's First Amended Complaint against Summit[3] (the "Summit Complaint") alleges that, prior to RFC's bankruptcy, Summit Mortgage sold over

---

[2] The claims against GreenPoint are also jurisdictionally deficient based on the grounds set forth in the separate motion to dismiss filed by SunTrust Mortg. Inc. in Adversary Proceeding No. 13-1820 (MG). GreenPoint joins in the argument set forth therein that RFC lacked standing to commence this case when it filed its original complaint against GreenPoint in December 2013. Under the terms of the Bankruptcy Court Plan governing RFC, it had assigned away its relevant contractual rights to the Liquidating Trust prior to commencing this action.

5,600 mortgage loans to RFC pursuant to a "Client Contract" that incorporated terms and conditions set forth in various versions of a "Client Guide" (the "Summit Agreement"). Summit Complaint ¶ 18, Exs. A, B-1, B17-31. Again, some of the loans sold were securitized, and others were not. *Id.*, Ex. C-1 (listing securitized loans), Ex. C-2 (listing loans that were not securitized).

Defendants' written agreements with RFC set forth representations and warranties made by GreenPoint and Summit, respectively, with respect to the mortgage loans they sold. GreenPoint Complaint ¶¶ 23-25; Summit Complaint ¶ 24. Those agreements also contained provisions providing for indemnification by Defendants in certain circumstances. GreenPoint Agreement, Subsection 13.1, p. 37; Summit Client Guide, Ex. B-1, Section A212, p. 2A27. Plaintiff alleges Defendants breached their representations and warranties relating to the loans, and demands indemnification for amounts RFC paid in settlement of claims relating to the loans. GreenPoint Complaint ¶¶ 77-88; Summit Complaint ¶¶ 83-94. The Summit Complaint also contains a claim of guaranty against Summit Bank. *Id.* ¶¶ 95-98.

**B.  RFC's Assignment of Loans That Were Securitized**

The agreements by which Defendants sold loans to RFC expressly permitted RFC to assign them. GreenPoint Agreement, Section 22, p. 42 ("This Agreement may be assigned, pledged or hypothecated by the Purchaser in whole or in part, and with respect to one or more of the Mortgage Loans, without the consent of the Seller. There shall be no limitation on the number of assignments or transfers allowed by the Purchaser with respect to the Mortgage Loans and this Agreement."); Summit Agreement, Client Contract, ¶ 10 ("GMAC-RFC may at any

---

[3] The defendants are Summit Financial Mortgage, LLC f/k/a Summit Financial LLC ("Summit Mortgage") and Summit Community Bank f/k/a Shenandoah Valley Bank ("Summit Bank"). Summit Mortgage and Summit Bank are referred to collectively herein as "Summit," and GreenPoint and Summit are referred to collectively herein as "Defendants."

time, without Notice to or the consent of Client, transfer or assign, in whole or in part its rights under the Program Documents, with respect to any Commitment Letter or Loan . . . .").

When loans purchased by RFC were securitized, they were transferred to other entities and deposited into securitization trusts. Plaintiff identified the names of the securitization trusts in exhibits annexed to the complaints. GreenPoint Complaint, Ex. B-1; Summit Complaint, Ex. C-1. When the loans were securitized, RFC assigned away its "right, title and interest in and to the" mortgage loans at issue, and those rights were subsequently assigned to the trustee of the securitization trusts. This is set forth in documents publicly filed with the Securities and Exchange Commission relating to those securitizations.[4]

By way of example, Defendants submit with this memorandum publicly filed documents relating to one of the securitizations, Series 2006-QA11, identified in the exhibits to Plaintiff's pleading. In connection with the 2006-QA11 securitization, RFC entered into an Assignment and Assumption Agreement, dated December 28, 2006, with a corporation entitled Residential Accredit Loans, Inc. ("RALI"), which is defined in the agreement as the "Company."[5] The Agreement states:

> Concurrently with the execution and delivery hereof, RFC hereby assigns to the Company without recourse all of its right, title and interest in and to the Mortgage Loans, . . . .

---

[4] Documents publicly filed with the SEC are properly considered on a motion to dismiss the complaint pursuant to Rule 12(b)(6). *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991) (on 12(b)(6) motion, district court "may review and consider public disclosure documents required by law to be and which actually have been filed with the SEC").

[5] The Assignment and Assumption Agreement is publicly available at the following web address: http://www.sec.gov/Archives/edgar/data/1382163/000138216307000006/qa11aa.htm. A copy is annexed to the accompanying Declaration of Theodore Snyder, dated September 8, 2014 ("Snyder Dec.") as Exhibit A.

Snyder Dec., Ex. A, ¶ 2. RALI then assigned the loans it received from RFC to the Trustee of

the securitization trust pursuant to the terms of a Pooling and Servicing Agreement, which closed

on December 28, 2006:

> The Company [Residential Accredit Loans, Inc.], concurrently
> with the execution and delivery hereof, does hereby assign to the Trustee,
> for the benefit of the Certificateholders, without recourse all the right, title
> and interest of the Company in and to the Mortgage Loans. . . .

Snyder Dec., Ex. B, Section 2.01, p. 74 of 178.[6] The same assignment language is contained in

publicly filed documents relating to other securitization trusts identified in the exhibits to

Plaintiff's pleading.[7]

### C.  The Sole Remedy Provision in the GreenPoint Agreement

Count One of the GreenPoint Complaint seeks "compensation in an amount to be proven

at trial," for "loss, harm, and financial exposure directly attributable" to alleged material

breaches of representations and warranties by GreenPoint. GreenPoint Complaint ¶ 83-84.

However, the contract containing GreenPoint's representations and warranties sets forth a

protocol for cure, repurchase or substitution of loans that breach representations and warranties.

---

[6] The agreement is publicly available from the SEC at the following web address:
http://www.sec.gov/Archives/edgar/data/1382163/000138216307000006/qa11ssfinal.htm, and relevant
excerpts are annexed to the Snyder Dec. as Exhibit B.

[7] Identical assignment language is included in the publicly filed documents relating to the following
securitizations, among others, identified in the exhibits to Plaintiff's complaints: 2006-QA7, 2006-QA8,
2006-QA9, 2006-QS14, 2006-QS-15, 2006-QS16, 2006-QS17, 2006-QS18, 2006-RS1, 2006-RS2, 2006-
RS3, 2006-SA3, 2007-QA1, 2007-QA2, 2007-QA3, 2007-QA4, 2007-QA11, 2007-QS1, 2007-QS2,
2007-QS3, 2007-QS4, 2007-RS1, 2007-RS2, 2007-SA1, 2007-SA2, 2006-HSA1, 2007-HSA2, 2007-S3.
Given the volume of materials, which would be duplicative, publicly filed documents relating to other
trusts are not submitted herewith but they (or web addresses for the documents) can be furnished to the
Court upon request.

GreenPoint Complaint, Ex. A, Subsection 9.3.  This protocol, along with the indemnification

provisions in the contract, constitute the sole remedies available for breaches:

> It is understood and agreed that the obligations of the Seller set forth in
> this Subsection 9.3 to cure, repurchase or substitute for a defective
> Mortgage Loan and to indemnify the Purchaser and Successor Servicer . . .
> constitute the **sole remedies** of the Purchaser and Successor Servicer
> respecting a breach of the foregoing representations and warranties. *Id.*
> (bold emphasis added).

## ARGUMENT

### I.    RFC ASSIGNED AWAY THE RIGHTS IT ASSERTS IN THIS CASE AND LACKS STANDING TO SUE

Plaintiff, the Liquidating Trust, allegedly derives its rights to sue with respect to the

mortgage loans at issue on the grounds that it is the successor to RFC's rights.  GreenPoint

Complaint ¶ 13; Summit Complaint ¶ 13.  However, with respect to the mortgage loans that were

securitized, RFC assigned away its rights with respect to the loans.  Plaintiff has no standing to

sue based on rights its predecessor assigned away. *See House of Europe Funding I, Ltd. v. Wells

Fargo Bank, N.A.*, No. 13 Civ. 519 (RJS), 2014 WL 1383703 (S.D.N.Y. March 31, 2014) ("A

party that has assigned away its rights under a contract lacks standing to sue for breach of that

contract."); *Amusement Indus., Inc. v. Stern*, No. 07 Civ. 11586 (LAK)(GWG), 2011 WL

6811018, at \*4 (S.D.N.Y. Dec. 28, 2011) ("Having assigned any 'right' or 'interest' it had in the

payments made pursuant to the Contract to FRG LLC, FRG Corp. plainly lacks standing to

initiate a law suit for return of those payments.") (citing cases); *National Fin. Co. v. Uh*, 279

A.D.2d 374, 375 (1st Dep't 2001) (dismissing suit for lack of standing because assignor of note

"was no longer the real party in interest with respect to an action upon the instrument and

retained no right to pursue a claim against defendant").

Specifically, in written assignment agreements it executed as part of the securitizations, RFC assigned away, without recourse, "all, right, title and interest in and to the Mortgage Loans." Snyder Dec. Ex. A. Employing the same language, RFC's assignee then assigned "all right, title and interest" to the loans to the securitization trustee. *Id.* Ex. B. Under governing case law, these assignments were sufficient to convey the loans and the right to sue with respect to those loans.

The same assignment language was at issue in *North Fork Bank v. Cohen & Krassner*, 44 A.D.3d 375 (1st Dep't 2007). There, New York's Appellate Division, First Department held that a bank's assignment of "all of its, right, title and interest in and to" mortgages conveyed to the assignee the right to assert a fraud claim against a law firm that made misrepresentations about a borrower's authority to enter into the subject mortgage transaction; the bank was precluded from asserting the claim because it had assigned it away. *Id.* at 375.[8]

Subsequently, in *Stewardship Credit Arbitrage Fund LLC v. Charles Zucker Pearl Corp.*, No. 600634/2010, 31 Misc. 3d 1223(A) (Sup. Ct. N.Y. Co. May 4, 2011), the court relied on the appellate court's holding in *North Fork Bank* to uphold the assignment of contract and tort claims relating to certain loan transactions, observing that the "narrower" assignment language in *North Fork Bank* had been deemed sufficient to assign the fraud claim, and therefore upholding

---

[8] The assignments are governed by New York law. Snyder Dec., Ex. B, Section 11.04, p. 122 of 178. Moreover, the GreenPoint Agreement is governed by New York law. GreenPoint Complaint, Ex. A, Section 31, p. 45. The Summit Agreement is governed by Minnesota law, Summit Complaint, Ex. A, ¶ 12, p. 2, but the same principles apply. Minnesota law establishes that, by virtue of the assignment, the assignor of the rights no longer has standing to sue upon them. *See Dunn v. National Beverage Corp.*, 729 N.W.2d 637, 648 (Minn. Ct. App. 2007) *aff'd*, 745 N.W.2d 549 (Minn. 2008) ("[a] breach-of-contract claim cannot be maintained when the rights vested in the contract have been assigned to another party." ); *accord Carlson v. Schmitt*, No. A09-930, 2010 WL 607576 at *2 n.4 (Minn. Ct. App. Feb. 17, 2010).

the assignment of the contract and tort claims under the broader assignment language in that case. *Id.* at *4.

The assignment language used by RFC (and its assignee) is identical to the language at issue in *North Fork Bank*, and was thus sufficient to assign not only the loans but causes of action relating to the loans. This is confirmed by recent cases involving mortgage backed securitizations, in which courts concluded that the trustee was the real party to bring suit where, as here, "all right, title and interest" to the mortgage loans were conveyed to the trustee as part of the securitization. In *LaSalle Bank National Assoc. v. Nomura Asset Capital Corp.*, 180 F. Supp.2d 465 (S.D.N.Y. 2001), the court observed that the relevant trust agreement "conveys '*all* the right, title and interest*' in the mortgages" to the trustee, *id.* at 471 (emphasis in original) -- the same language used by RFC and RALI in their assignments in this case. The court held that "[t]he plain meaning of these words ordinarily includes the power to bring suit to protect and maximize the value of the interest thereby granted." *Id. See also In re Bank of New York Mellon*, No. 651786/11, 42 Misc. 3d 1237(A), at *14 (Sup. Ct. N.Y. Co. Jan. 31, 2014) (citing *LaSalle Bank*, and finding that "Trustee holds all right, title and interest in the mortgage loans" under the governing agreements, which "effectively grants the Trustee the power and authority to commence litigation" concerning the loans); *U.S. Bank National Assoc. v. Nesbitt Bellevue Property LLC*, 859 F. Supp.2d 602, 606-07 (S.D.N.Y. 2012) (U.S. Bank could bring suit as real party in interest with respect to mortgage loans where assignment had been made of "all right, title and interest" to the mortgages).

Accordingly, because RFC assigned away the mortgage loans and the rights to sue with respect to those loans, RFC's successor, the Liquidating Trust, cannot now assert those rights

8

against Defendants. Plaintiff lacks standing to sue with respect to the assigned loans, and its claims relating to such loans should be dismissed.

## II.    THE COURT SHOULD ENFORCE THE SOLE REMEDY PROVISION IN THE GREENPOINT AGREEMENT

Plaintiff's claims for monetary damages are precluded by the sole remedy provision in the GreenPoint Agreement. GreenPoint Complaint, Ex. A, Subsection 9.3.

New York courts addressing sole remedy provisions in mortgage loan contracts precisely like the one at issue have overwhelmingly enforced those provisions. *See, e.g., Saco I Trust 2006-5 v. EMC Mortgage, LLC,* No. 651820/2012, 2014 WL 2451356, at *5 (Sup. Ct. N.Y. Co. May 29, 2014) (sole remedy provision "bars recovery" for remedies beyond repurchase protocol); *U.S. Bank Nat'l Assoc. v. DLJ Mortg. Capital, Inc.,* No. 650369/2013, 42 Misc. 3d 1213(A), at *3 (Sup. Ct. N.Y. Co. Jan. 15, 2014) ("The language of this provision is clear and bars the recovery of the damages sought by Plaintiff"); *Home Equity Mortg. Trust Series 2006-5 v. DLJ Mortg. Capital, Inc.,* No. 653787/2012, 2013 WL 5314331, at *9 (Sup. Ct. N.Y. Co. Sept. 18, 2013) (dismissing claims for consequential and recessionary damages based on sole remedy clause). This Court should likewise enforce the sole remedy provision in the GreenPoint agreement and dismiss Plaintiff's claims for monetary damages that are barred by the provision.

### CONCLUSION

For the foregoing reasons, GreenPoint and Summit respectfully request that the Court (i) dismiss Plaintiff's claims relating to assigned mortgage loans with prejudice; (ii) with respect to GreenPoint, dismiss Plaintiff's claims for relief to the extent that they are precluded by the sole

remedy provision; and (iii) award Defendants such other and further relief as the Court deems appropriate.

Dated: September 8, 2014                    MURPHY & MCGONIGLE, P.C.

                                            By:  /s/ Cameron S. Matheson
                                                James A. Murphy
                                                jmurphy@mmlawus.com
                                                Theodore Snyder
                                                tsnyder@mmlawus.com
                                                1185 Avenue of the Americas, 21st Floor
                                                New York, N.Y. 10025
                                                (212) 880-3976

                                                Cameron S. Matheson
                                                cmatheson@mmlawus.com
                                                4870 Sadler Road, Suite 301
                                                Glen Allen, Virginia 23060
                                                (804) 762-5320


                                                *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I, Theodore Snyder, hereby certify that this 8th day of September, 2014, I caused a true

and correct copy of the foregoing Memorandum of Law to be served by the Court's electronic

filing system upon:

Peter Calamari (petercalamari@quinnemanuel.com)
David Elsberg (davidelsberg@quinnemanuel.com)
Isaac Nesser (isaacnesser@quinnemanuel.com)
John Sullivan (johnsullivan@quinnemanuel.com)
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Ave.
New York, NY 10001

*Attorneys for Plaintiff Rescap Liquidating Trust*

Theodore Snyder