Hearing Date:  TBD
Opposition Deadline:  October 23, 2014
Reply Deadline:  November 7, 2014

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE RESCAP LIQUIDATING TRUST MORTGAGE PURCHASE LITIGATION | Case No. 12-12020 (MG) (Ch. 11) <br> Adv. Proc. No. 14-07900 (MG) |

*This document relates to*:

Residential Funding Co. v. HSBC Mortg. Corp. (USA), Adv. Proc. No. 14-01915 (MG)

Residential Funding Co. v. Greenpoint Mortg. Funding, Inc., Adv. Proc. No. 14-01916 (MG)

Residential Funding Co. v. UBS Real Estate Secs., Inc., Adv. Proc. No. 14-01926 (MG)

ResCap Liquidating Trust v. Summit Fin. Mortg. LLC, Adv. Proc. No. 14-01996 (MG)

ResCap Liquidating Trust v. CMG Mortg., Inc., Adv. Proc. No. 14-01998 (MG)

ResCap Liquidating Trust v. Primary Capital Advisors LLC, Adv. Proc. No. 14-01999 (MG)

ResCap Liquidating Trust v. Honor Bank, Adv. Proc. No. 14-02000 (MG)

ResCap Liquidating Trust v. Cadence Bank, N.A. f/k/a Encore Bank, N.A. Adv. Prov. No. 14-02001 (MG)

ResCap Liquidating Trust v. First Mariner Bank, N.A., Adv. Proc. No. 14-02003

ResCap Liquidating Trust v. Mortg. Investors Grp., Inc., Adv. Proc. No. 14-02004 (MG)

ResCap Liquidating Trust v. Synovus Mortg. Corp., Adv. Proc. No. 14-02005 (MG)

ResCap Liquidating Trust v. PHH Mortg. Corp., Adv. Proc. No. 14-02008 (MG)

Residential Funding Co. v. SunTrust Mortg. Inc., Adv. Proc. No. 13-1820 (MG)

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR COLLECTIVE MOTION TO DISMISS THE AMENDED COMPLAINTS**

# Table of Contents

Page

BACKGROUND ..................................................................................................................5

ARGUMENT ....................................................................................................................10

    I.      PLAINTIFF IS BARRED FROM SEEKING INDEMNIFICATION FOR
SECURITIES OR FRAUD CLAIMS..................................................................10

    II.     PLAINTIFF'S BREACH-OF-CONTRACT CLAIMS ARE UNTIMELY. .........15

          A.     Plaintiff's Contract Claims Are Time-Barred Under Delaware
Law. ......................................................................................................15

          B.     Alternatively, Plaintiff's Contract Claims For Loans Acquired
Before May 14, 2006 Are Time-Barred.................................................20

    III.    THE AMENDED COMPLAINTS FAIL TO SATISFY THE PLEADING
REQUIREMENTS OF *IQBAL* AND *TWOMBLY*. ...............................................24

CONCLUSION...................................................................................................................28

| EXHIBITS | |
|---|---|
| A | Complaint, *MBIA Insurance Corporation v. Ally Fin., Inc. et al.*, No. 0:12-cv-02563, ECF Doc. # 1-2 (D. Minn. October 5, 2012). |
| B | Amended Complaint, *The Union Central Life Insurance Company, et al. v. Ally Fin., Inc. et al.*, No. 1:11-cv-02890, ECF Doc. # 146 (S.D.N.Y. May 4, 2012). |
| C | Complaint, *FHFA v. Ally Financial, Inc. et al.*, No. 1:11-cv-07010, ECF Doc. # 1 (S.D.N.Y. October 6, 2011). |
| D | Consolidated First Amended Securities Class Action Complaint, *New Jersey Carpenters Health Fund, et al. v. Residential Capital, LLC, et al.*, No. 1:08-cv-08781, ECF Doc. # 27 (S.D.N.Y. May 18, 2009). |
| E | Plaintiff Residential Funding Company, LLC's Memorandum in Opposition to Defendant's Motion to Dismiss the First Amended Complaint, *Residential Funding Company, LLC v. PNC Bank, N.A.*, No. 0:13-cv-03498, ECF Doc. # 54 (D. Minn. May 16, 2014). |

# <u>TABLE OF AUTHORITIES</u>

## CASES

*ACE Sec. Corp. v. DB Structured Prods., Inc.*, 977 N.Y.S.2d 229 (1st Dep't 2013) ...................21

*Ace Securities Corp. Home Equity Loan Trust v. DB Structured Products, Inc.*,
   No. 13 Civ. 1689, --- F. Supp. 2d ---, 2014 WL 1116758 (S.D.N.Y. Mar. 20,
   2014) .......................................................................................................................26

*ACLU v. Tarek ibn Ziyad Acad.,* 788 F. Supp. 2d 950 (D. Minn.2011) ......................................13

*Am. Druggists Ins. v. Thompson Lumber Co.*, 349 N.W.2d 569 (Minn. Ct. App.
   1984) .......................................................................................................................22

*Anderson v. H-Window Co.*, No. C9-98-1103, 1999 WL 88953 (Minn. Ct. App.
   Feb. 23, 1999) .........................................................................................................19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .........................................................................4, 24, 25

*Aufderhar v. Data Dispatch, Inc.*, 452 N.W.2d 648 (Minn. 1990) ..............................................23

*Baena v. Woori Bank*, No. 05 Civ. 7018, 2006 WL 2935752 (S.D.N.Y. Oct. 11,
   2006) .................................................................................................................15, 16

*Barbagallo v. Marcum, LLP*, No. 11-CV-1358, 2012 WL 1664238 (E.D.N.Y.
   May 11, 2012) .........................................................................................................13

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ..............................................4, 24, 25, 27

*Bergstein v. Jordache Enters.*, 90 Civ. 1461, 1995 WL 4533558 (S.D.N.Y. Aug.
   1, 1995) ...................................................................................................................19

*CBS Corp. v. Eaton Corp.*, No. 07 Civ. 11344, 2010 WL 1375169 (S.D.N.Y. Mar.
   30, 2010) .................................................................................................................13

*Cent. Bank Denver, N.A. v. Mehaffy, Rider, Windholz & Wilson*, 940 P.2d 1097
   (Colo. App. 1997) ...................................................................................................23

*Central Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, No. 5140-
   CS, 2012 WL 3201139 (Del. Ch. June 22, 2012) .................................................18

*Credit Suisse First Boston, LLC v. Intershop Commc'ns AG*, 407 F. Supp. 2d 541
   (S.D.N.Y. 2006) ......................................................................................................11

*Dain Bosworth Inc. v. Goetze*, 374 N.W.2d 467 (Minn. Ct. App. 1985) ....................................19

*Deephaven Capital Mgmt. v. Schnell*, No. 06-844, 2007 WL 101821 (D. Minn. Jan. 8, 2007) ..................................................................................................11, 12

*Eichenholtz v. Brennan*, 52 F.3d 478 (3d Cir. 1995) ...................................................12

*Elliot & Callan, Inc. v. Crofton*, No. 07-CV-3391, 2009 WL 3297506 (D. Minn. Oct. 13, 2009) ........................................................................................................23

*First Golden Bancorp. v. Weiszmann*, 942 F.2d 726 (10th Cir. 1991) .........................11

*Gabriel Capital, L.P. v. NatWest Fin., Inc.*, 137 F. Supp. 2d 251 (S.D.N.Y. 2000) ..............12, 13

*Globus v. Law Research Service, Inc.‚* 418 F.2d 1276 (2d Cir. 1969) ...................10, 12

*Gracey v. J.P. Morgan Chase & Co. (In re Amaranth Natural Gas Commodities Litig.)*, 730 F.3d 170 (2d Cir. 2013) ..............................................................24

*Haavisto v. Perpich*, 520 N.W.2d 727 (Minn. 1994) ...................................................22

*Heizer Corp. v. Ross*, 601 F.2d 330 (7th Cir. 1979) ...................................................12

*Hydra-Mac, Inc. v. Onan Corp.*, 450 N.W.2d 913 (Minn. 1990) ..................................20

*In re Dairy Dozen-Thief River Falls, LLP*, Nos. A09-936, -1406, 2010 WL 2161781 (Minn. Ct. App. June 1, 2010) ..............................................................22

*In re Dean Witter P'ship Litig.*, No. Civ. A. 14816, 1998 WL 442456 (Del. Ch. July 17, 1998) ......................................................................................................20

*In re Del-Val Fin. Corp. Sec. Litig.*, 868 F. Supp. 547 (S.D.N.Y. 1994) ....................11

*In re Livent Sec. Litig.*, 193 F. Supp. 2d 750 (S.D.N.Y. 2002)....................................12

*In re Olympia Brewing Co. Sec. Litig.*, 674 F. Supp. 597 (N.D. Ill. 1987) ..................12

*In re S. African Apartheid Litig.*, 617 F. Supp. 2d 228 (S.D.N.Y. 2009) ....................15

*In re Tysons Food, Inc.*, 919 A.2d 563 (Del. Ch. 2007) ...............................................20

*Jacobson v. Bd. of Trs. of Teachers Ret. Ass'n*, 627 N.W.2d 106 (Minn. Ct. App. 2001) ......................................................................................................................21

*Kennedy v. Josephthal & Co.*, No. 82-913, 1983 WL 1314 (D. Mass. May 9, 1983) ......................................................................................................................11

*King v. Gibbs*, 876 F.2d 1275 (7th Cir. 1989) .............................................................11

*Kosowsky v. Willard Mountain, Inc.*, 934 N.Y.S.2d 545 (3d Dep't 2011) ...................19

*Lecates v. Hertrich Pontiac Buick Co.*, 515 A.2d 163 (Del. Super. 1986) ...................................19

*Lehman XS Trust, Series 2006-4N ex rel. U.S. Bank Nat'l Ass'n v. Greenpoint Mortg. Funding, Inc.*, 991 F. Supp. 2d 472 (S.D.N.Y. 2014) ...................................21

*Macon v. United States*, No. 3:05 cv 1721, 2006 WL 3041104 (D. Conn. Oct. 23, 2006) ...................................................................................................................23

*McCleod v. Travelers Indem. Co.*, No. 12 Civ. 176, 2012 WL 5210945 (S.D.N.Y. Oct. 19, 2012) ...............................................................................................15, 16

*Milsap v. Special Sch. Dist. No. 1*, No. C8-99-79, 1999 WL 391859 (Minn. Ct. App. June 15, 1999) ...............................................................................................23

*Ochs v. Streater, Inc.*, 568 N.W.2d 858 (Minn. Ct. App. 1997) ...................................19

*Pomeranz v. Museum Partners L.P.*, No. Civ. A. 2021, 2005 WL 217039 (Del. Ch. Jan. 24, 2005) ...............................................................................................19

*Portfolio Recovery Assocs., LLC v. King*, 927 N.E.2d 1059 (N.Y. 2010) ...................................15

*Pricaspian Dev. Corp. (Tex.) v. Royal Dutch Shell, plc*, No. 08 Civ. 9726, 2009 WL 1564110 (S.D.N.Y. June 3, 2009) ...............................................................22

*Putter v. North Shore Univ. Hosp.*, 858 N.E.2d 1140 (N.Y. 2006) ...................................20

*Residential Funding Co., LLC v. Embrace Home Loans, Inc.*, Nos. 13-3457, 13-3509, 13-3545 --- F. Supp. 2d ---, 2014 WL 2766114 (D. Minn. June 18, 2014) ...................................................................................................... passim

*Residential Funding Co., LLC v. Mortg. Access Corp.*, No. 13-3499, 2014 WL 3577403 (D. Minn. July 21, 2014) ...............................................................8, 18, 22, 24

*Rite Aid Corp. v. Grass*, 854 N.Y.S.2d 1 (1st Dep't 2008) ...............................................20

*Ross v. Louise Wise Servs., Inc.*, 8 N.Y.3d 478 (N.Y. 2007) ...................................19

*Schaffer ex rel. Lasersight Inc. v. CC Invs. LDC*, 286 F. Supp. 2d 279 (S.D.N.Y. 2003) ...................................................................................................................11

*Schwan's Sales Enters., Inc. v. SIG Pack, Inc.*, 476 F.3d 594 (8th Cir. 2007) ...........................15

*Scottsdale Ins. Co. v. RiverBank*, 815 F. Supp. 2d 1074 (D. Minn. 2011) ...................................13

*St. Paul Fire & Marine Ins. Co. v. C.J.*, No. A03-328, 2004 WL 614548 (Minn. Ct. App. Mar. 30, 2004) ...............................................................................................13

*Torchlight Loan Servs., LLC v. Column Fin., Inc.*, No. 11 Civ. 7426, 2012 WL 3065929 (S.D.N.Y. July 25, 2012) ...............................................................................24

*VanGelder v. Johnson*, 827 N.W.2d 430 (Minn. Ct. App. 2012) .................................................22

*Verizon Directories Corp. v. Continuum Health Partners, Inc.*, 902 N.Y.S.2d 343
(1st Dep't. 2010) .............................................................................................................15

*Vincent v. Money Store*, 915 F. Supp. 2d 553 (S.D.N.Y. 2013) ...................................................19

*Wells Fargo Bank, N.A. v. JPMorgan Chase Bank, N.A.*, No. 12 Civ. 6168, 2014
WL 1259630 (S.D.N.Y. Mar. 27, 2014) ..........................................................................19

*Zumpano v. Quinn*, 849 N.E.2d 926 (N.Y. 2006) .........................................................................19

## STATUTES AND RULES

11 U.S.C. § 108(a) ..........................................................................................................................17

N.Y. CPLR § 202 .......................................................................................................................3, 15

Del. Code Ann. Title 10, § 8106 (West 2014) ..............................................................................16

Federal Rule of Civil Procedure 8 ...........................................................................................24, 25

Minn. Stat. § 541.05, subd. 1 .......................................................................................................21

Federal Rule of Civil Procedure 12(b)(6) .............................................................................11, 12, 23

Plaintiff, the Rescap Liquidating Trust, purportedly brings these lawsuits on behalf of

Residential Funding Company ("RFC"), a company that acquired and sold mortgage loans as

well as residential mortgage-backed securitizations ("RMBS") containing mortgage loans.  First

Am. Compl., *Rescap Liquidating Trust v. HSBC Mortgage Corp. (USA)*, Adv. No. 14-01915,

ECF Doc. # 27, ¶ 3 (July 24, 2014) ("HSBC Am. Compl.").[1]  In the wake of the 2007-2008

financial crisis, purchasers of loans and RMBS sued RFC alleging that the loans and RMBS it

sold and securitized "contained numerous defects and were rife with fraud and compliance

---

[1]  *See also* Sec. Am. Compl., *Rescap Liquidating Trust v. Greenpoint Mortg. Funding, Inc.*, Adv.
No. 14-01916, ECF Doc. # 20 (July 24, 2014) ("Greenpoint Sec. Am. Compl."); Sec. Am.
Compl., *Rescap Liquidating Trust v. UBS Real Estate Sec., Inc.*, Adv. No. 14-01926, ECF Doc. #
33 (July 24, 2014) ("UBS Sec. Am. Compl.); First Am. Compl., *Rescap Liquidating Trust v.
Summit Fin. Mortg. LLC*, Adv. No. 14-01996 (July 25, 2014) ("Summit Am. Compl."); First
Am. Compl., *Rescap Liquidating Trust v. CMG Mortg., Inc.*, Adv. No. 14-01998, ECF Doc. # 20
(July 24, 2014) ("CMG Am. Compl."); First Am. Compl., *Rescap Liquidating Trust v. Primary
Capital Advisors LLC*, Adv. No. 14-01999, ECF Doc. # 24 (July 24, 2014) ("PCA Am.
Compl."); First Am. Compl., *Rescap Liquidating Trust v. Honor Bank*, Adv. No. 14-02000, ECF
Doc. # 21 (July 24, 2014) ("Honor Am. Compl."); First Am. Compl., *Rescap Liquidating Trust
v. Cadence Bank, N.A.*, Adv. No. 14-02001, ECF Doc. # 31 (July 24, 2014) ("Cadence Am.
Compl."); First Am. Compl., *Rescap Liquidating Trust v. First Mariner Bank*, Adv. No. 14-
02003, ECF Doc. # 28 (July 25, 2014) ("First Mariner Am. Compl."); First Am. Compl., *Rescap
Liquidating Trust v. Mortg. Investors Grp., Inc.*¸ Adv. No. 14-02004, ECF Doc. # 18 (July 24,
2014) ("MIG Am. Compl."); First Am. Compl., *Rescap Liquidating Trust v. Synovus Mortg.
Corp.*, Adv. No. 14-02005, ECF Doc. # 27 (July 25, 2014) ("Synovus Am. Compl."); First Am.
Compl., *Rescap Liquidating Trust v. PHH Mortg. Corp.* Adv. No. 14-02008, ECF Doc. # 25
(July 25, 2014) ("PHH Am. Compl."); First Am. Compl., *Residential Funding Company, LLC v.
SunTrust Mortg., Inc.*, No. 13-cv-8938, ECF Doc. # 32 (S.D.N.Y. Apr. 8, 2014) ("SunTrust Am.
Compl.") and, to the extent the Second Amended Complaint is the operative pleading, Sec. Am.
Compl., *Residential Funding Company, LLC v. SunTrust Mortg., Inc.*, No. 13-1820 (Bankr.
S.D.N.Y. Aug. 8, 2014) ("SunTrust Sec. Am. Compl.").  Despite the Case Management and
Scheduling Order's mandate that "Plaintiff may file amended complaint(s) in each of the
Adversary Proceedings by July 24, 2014," and "[a]fter that date, any amended pleadings may not
be filed . . . [without] leave of the Court," Plaintiff, without seeking leave from the Court, filed
amended complaints against Summit Financial Mortgage, First Mariner Bank, Synovus
Mortgage Corp., and PHH Mortgage Corp. on July 25, 2014, and against SunTrust Mortgage on
August 8, 2014.  Plaintiff's late filings contravene this Court's Case Management and
Scheduling Order.

1

problems." *Id.* ¶ 6.  These lawsuits, Plaintiff claims, drove RFC into bankruptcy, which was

resolved through settlement in December 2013.  *Id.* ¶¶ 7, 9.  Plaintiff now asserts that the

Defendants in the 13 above-captioned Adversary Proceedings, rather than RFC, are liable for the

loans that RFC purchased and sold to others.  Plaintiff asserts two claims:  (1) breach of contract

based on each Defendant's alleged breach of representations and warranties concerning the

quality and characteristics of mortgage loans sold to RFC (Count One); and (2) contractual

indemnification for alleged liabilities, losses, and damages incurred by RFC arising out of

purported defects in loans that RFC purchased and sold to third parties (Count Two).  *See*, *e.g.*,

*id.* ¶¶ 10–11, 79–90, Exhibits ("Exs.") C–1 (identifying loans sold to and securitized by RFC), C–

2 (identifying loans sold to RFC that RFC either held or sold).[2]  These claims should be

dismissed for three reasons.

    *First*, Plaintiff's indemnification claims are barred as a matter of law insofar as they seek

indemnification for liabilities or losses arising from securities or fraud claims against RFC.

More than two billion dollars in purportedly allowed claims for which Plaintiff seeks

indemnification resulted from the settlement of securities or fraud claims against RFC.[3]  Those

---

[2]*See*, *e.g.*, HSBC Am. Compl., Exs. C–1 & C–2 (purporting to identify the "Loan ID No.," "Date of Acquisition," and "Original Balance" for each loan); Greenpoint Sec. Am. Compl., Exs. B–1 & B–2 (same); UBS Sec. Am. Compl., Exs. B–1 & B–2 (same); Summit Am. Compl., Exs. C–1 & C–2 (same); CMG Am. Compl., Exs. C–1 & C–2 (same); PCA Am. Compl., Exs. C–1 & C–2 (same); Honor Am. Compl., Exs. C–1 & C–2 (same); Cadence Am. Compl., Exs. C–1 & C–2 (same); First Mariner Am. Compl., Exs. C–1 & C–2 (same); MIG Am. Compl., Exs. C–1 & C–2 (same); Synovus Am. Compl., Exs. C–1 & C–2 (same); PHH Am. Compl., Exs. C–1 & C–2 (same); SunTrust Am. Compl., Ex. C (same); SunTrust Sec. Am. Compl., Exs. C–1 & C–2 (same).

[3] *See*, *e.g.*, Greenpoint Sec. Am. Compl. ¶¶ 10, 74–75; Findings of Fact, Ch. 11 ECF Doc. # 6066, ¶¶ 124–154 (allowing claims of more than $1.5 billion for monoline insurers, which alleged that RFC "committed fraud"), ¶¶ 155–176 (allowing distributions and claims of $437 million to "private securities investors," including New Jersey Carpenters, FHFA, and NCUA, which had "asserted claims for state and federal securities law violations" and "common law fraud").

securities and fraud claims were premised on the allegation that RFC violated securities laws and

committed fraud:  the plaintiffs alleged that RFC and its affiliates (1) "knowingly, intentionally,

and purposefully misrepresented existing material facts regarding the Securitizations;"[4] (2)

"committed egregious fraud with [its] materially false and misleading representations," which

were "the result of the company's reckless or intentional misconduct[,]" including "actual

knowledge that the stated underwriting guidelines were not adhered to," "knowledge of

distortions in the LTV ratios," and knowledge "that the quality of the loans did not meet prudent

underwriting practices and standards because it also analyzed those loans to determine which

ones it would securitize and get off its books;"[5] and (3) "defrauded [creditors] willfully and

wantonly."[6]  Notably, Plaintiff's own counsel (then representing MBIA) made these allegations

against RFC, asserting that RFC "perpetrated a fraud" in connection with its issuance of RMBS.[7]

Plaintiff is barred as a matter of law from obtaining indemnification for these alleged violations

of the federal securities laws and intentional misconduct.

     *Second*, Plaintiff's contract claims are untimely.  Delaware's three-year statute of

limitations, which is applicable to these actions pursuant to the New York borrowing statute,

N.Y. CPLR § 202, required Plaintiff to commence its contract claims within three years of the

---

[4] Declaration of N. Mahmood Ahmad in Support of Defendants' Collective Motion to Dismiss the Amended Complaints ("Ahmad Decl."), Exhibit ("Ex.") A (Compl., *MBIA Ins. Corp. v. Ally Fin., Inc. et al.*, No. 12-cv-02563, ECF Doc. # 1-2, ¶¶ 124–125 (D. Minn. Oct. 5, 2012) ("MBIA Compl.")).

[5] Ahmad Decl., Ex. B (Am. Compl., *The Union Cent. Life Ins. Co. et al. v. Ally Fin., Inc. et al.*, No. 11-cv-02890, ECF Doc. # 146, ¶¶ 20, 639, 652, 685, 697 (May 4, 2012) ("Union Cent. Compl.")).

[6] Ahmad Decl., Ex. C (Compl., *FHFA v. Ally Fin., Inc. et al.*, No. 11-cv-07010, ECF Doc. # 1, ¶ 265 (Oct. 6, 2011) ("FHFA Compl.")).

[7] Ahmad Decl., Ex. A (MBIA Compl. ¶ 3).

3

alleged breach.  Even assuming, as Plaintiff has argued elsewhere, that RFC's bankruptcy filing

in May 2012 tolled the time period in which Plaintiff was required to file its contract claims,

Plaintiff's contract claims still are time-barred because, according to the Amended Complaints,

RFC acquired virtually all of the loans allegedly at issue in these actions before May 14, 2009.[8]

Even were the New York borrowing statute not applicable, Plaintiff's contract claims should be

dismissed as to all loans that RFC acquired before May 14, 2006 under either Minnesota's or

New York's six-year statutes of limitations.  Indeed, multiple federal district courts in Minnesota

have so held in companion lawsuits filed by Plaintiff, and those determinations collaterally estop

Plaintiff from contending otherwise.

*Third*, Plaintiff's contract and indemnification claims fail the basic pleading requirements

set forth by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp.*

*v. Twombly*, 550 U.S. 544 (2007).  As one court has held when considering companion

complaints filed by Plaintiff against other loan originators, Plaintiff's Complaints are

"troublingly vague" and "do not allege 'enough facts to state a claim to relief.'"  *Residential*

*Funding Co., LLC v. Embrace Home Loans, Inc.*, Nos. 13-3457, 13-3509, 13-3545, - - - F. Supp.

2d - - -, 2014 WL 2766114, at \*5, \*8 (D. Minn. June 18, 2014) (alteration and citation omitted).

With respect to the vast majority of loans at issue, Plaintiff has set forth its claim in the most

conclusory, generic terms possible, failing to make any factual allegations regarding breach or

loss.  Plaintiff's claims with respect to such loans are purely conclusory and not well-pled.

---

[8] With respect to each Defendant except First Mariner Bank, Plaintiff alleges that RFC acquired
all loans before May 14, 2009.  Plaintiff alleges that First Mariner Bank sold a number of loans
to RFC on or after May 14, 2009.  First Mariner Am. Compl., Ex. C-2.

## BACKGROUND

Plaintiff alleges that, in the wake of the 2007-08 financial crisis and the collapse of the housing market throughout the United States, an unknown number of unidentified "loans sold to RFC by [Defendants] defaulted or became seriously delinquent" at an unidentified time.  *See*, *e.g.*, Greenpoint Sec. Am. Compl. ¶ 46.  Plaintiff asserts that, beginning in 2008, RFC faced repurchase demands and lawsuits from purchasers or insurers of the loans and RMBS that RFC had sold.  *Id.* ¶ 58; *see also id.* ¶¶ 59–68 (discussing more than 15 lawsuits by private investors and more than 12 lawsuits by monoline insurers).  Plaintiff alleges that these demands and lawsuits involved "more than one hundred RMBS securitizations, and a combined original principal balance of more than $100 billion."  *Id.* ¶ 68.  These lawsuits alleged, among other things, that RFC and its affiliates violated federal and state securities laws and committed fraud.[9]  RFC filed for bankruptcy protection in May 2012.  *Id.* ¶ 70.  Plaintiff alleges that, after RFC filed for Chapter 11 protection, hundreds of proofs of claim were filed, many of which mirrored the litigation filed against RFC prior to its bankruptcy.  *Id.* ¶ 71.

In December 2013, this Court entered an Order (the "Confirmation Order," Ch. 11 ECF Doc. # 6065)[10] confirming the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors* (the "Plan," Ch. 11 ECF Doc. # 6065-1).  Greenpoint Sec. Am. Compl. ¶ 75.  Plaintiff then commenced a coordinated campaign to shift financial responsibility from the bankrupt RFC to solvent parties by filing

---

[9] *See*, *e.g.*, Ahmad Decl., Ex. C (FHFA Compl. ¶¶ 186–274); *id.*, Ex. B (Union Cent. Compl. ¶¶ 815–827, 832–860); *id.*, Ex. A (MBIA Compl. ¶¶ 3, 123–146); *id.*, Ex. D (Consolidated First Am. Sec. Action Compl., *New Jersey Carpenters Health Fund, et al. v. Residential Capital, LLC, et al.*, No. 08-cv-08781, ECF Doc. # 27, ¶¶ 1, 262–294 (S.D.N.Y. May 18, 2009) ("N.J. Carpenters Compl.")).

[10] References to documents filed in the Chapter 11 proceeding, Case No. 12–12020, are notated as "Ch. 11 ECF Doc. # XX."

"substantially similar" complaints against scores of RFC's former correspondent lenders in

federal and state courts in Minnesota and New York.  Mem. Op. and Order Den. Mot. to

Remand, *Residential Funding Co., LLC v. UBS Real Estate Sec., Inc.*, Adv. No. 14-01926 (MG),

ECF Doc. # 41, 2 (Aug. 25, 2014).  Plaintiff claims that each Defendant is liable to the

Liquidating Trust, as the purported successor to RFC, for a portion of the "global settlement" in

RFC's bankruptcy, including "securities claims" and "monoline insurer claims."  *See*, *e.g.*,

Greenpoint Sec. Am. Compl. ¶ 74.[11]

At issue here are 13 Amended Complaints filed in these Adversary Proceedings.  Each

Amended Complaint alleges that RFC purchased residential mortgage loans from Defendants,

packaged those loans into RMBS or pooled them into groups of whole loans, and sold the RMBS

or whole loans to investors.  *See*, *e.g.*, HSBC Am. Compl. ¶¶ 16, 18–19; *Embrace Home Loans*,

2014 WL 2766114, at *1.  Plaintiff alleges that RFC purchased these mortgage loans from

Defendants pursuant to contracts containing certain representations and warranties.  *See*, *e.g.*,

HSBC Am. Compl. ¶¶ 16, 23.  Plaintiff claims that loans sold by each Defendant breached these

representations and warranties.  *See*, *e.g.*, *id.* ¶ 36.  Plaintiff further alleges that each Defendant

agreed to indemnify RFC for losses and liabilities it incurred in connection with the loans that

RFC purchased.  *See*, *e.g.*, *id.* ¶ 32.  The indemnification provisions, Plaintiff alleges, are

contained in a "Client Guide" incorporated by reference into the contracts purportedly applicable

to each Defendant's dealings with RFC.  *See*, *e.g.*, *id.* ¶ 17.  Plaintiff asserts that, between 1986

---

[11] Plaintiff alleges that more than 15 lawsuits were filed by private investors in RFC's RMBS
securities, the New Jersey Carpenters pension funds, FHFA, and other securities law claimants.
*See*, *e.g.*, Greenpoint Sec. Am. Compl. ¶¶ 59–68.  These claimants sued RFC and its affiliates for
alleged misstatements in offering documents under both federal and state securities laws.
Ahmad Decl., Ex. C (FHFA Compl. ¶¶ 37, 186–256); *see also id.*, Ex. B (Union Cent. Compl. ¶¶
837–860); *id.*, Ex. D (N.J. Carpenters Compl. ¶¶ 1, 262–294).

and 2007, RFC purchased more than 100,000 loans collectively from the Defendants with an

original principal balance exceeding $17 billion.[12]  Plaintiff alleges that RFC purchased a

substantial percentage of these loans prior to May 2006—*i.e.*, more than six years before it filed

for bankruptcy in May 2012.[13]  Plaintiff acknowledges that RFC acquired *virtually all* loans on

---

[12] *See*, *e.g.*, HSBC Am. Compl. ¶ 4 ("HSBC sold over 8,800 mortgage loans, with an original principal balance in excess of $2.9 billion, to RFC"); Greenpoint Sec. Am. Compl. ¶ 4 ("Green[p]oint sold over 2,300 mortgage loans, with an original principal balance in excess of $970 million, to RFC"); UBS Sec. Am. Compl. ¶ 4 ("UBS sold over 2,200 mortgage loans, with an original principal balance in excess of $685 million, to RFC "); Summit Am. Compl. ¶ 4 ("Summit Mortgage sold over 5,600 mortgage loans, with an original principal balance in excess of $288 million, to RFC"); CMG Am. Compl. ¶ 4 ("CMG Mortgage sold over 9,200 mortgage loans, with an original principal balance in excess of $3.1 billion, to RFC"); PCA Am. Compl. ¶ 4 ("Primary Capital Advisors sold over 3,900 mortgage loans, with an original principal balance in excess of $252 million, to RFC"); Honor Am. Compl. ¶ 4 ("Honor Bank sold over 4,200 mortgage loans, with an original principal balance in excess of $190 million, to RFC"); Cadence Am. Compl. ¶ 4 ("Cadence sold over 35,000 mortgage loans, with an original principal balance in excess of $526 million, to RFC"); First Mariner Am. Compl. ¶ 4 ("First Mariner sold over 3,300 mortgage loans, with an original principal balance in excess of $843 million, to RFC"); MIG Am. Compl. ¶ 4 ("[MIG] sold over 100 mortgage loans, with an original principal balance in excess of $34 million, to RFC"); Synovus Am. Compl. ¶ 4 ("Synovus sold over 2,000 mortgage loans, with an original principal balance in excess of $360 million, to RFC"); PHH Am. Compl. ¶ 4 ("PHH sold over 3,500 mortgage loans, with an original principal balance in excess of $945 million, to RFC"); SunTrust Am. Compl. ¶¶ 17, 19 ("SunTrust sold over 10,000 mortgage loans to RFC . . . The original principal balance of these loans exceeds $3.5 billion."); SunTrust Sec. Am. Compl. ¶ 4 ("SunTrust sold over 20,000 mortgage loans, with an original principal balance in excess of $6.6 billion").

[13] *See* HSBC Am. Compl., Exs. C-1 & C-2 (alleging that RFC purchased approximately 5,600 of 8,800 loans before May 14, 2006); Greenpoint Sec. Am. Compl., Exs. B-1 & B-2 (alleging that RFC purchased approximately 172 of 2,305 loans before May 14, 2006); UBS Sec. Am. Compl., Exs. B-1 & B-2 (alleging that RFC purchased approximately 2,100 of 2,200 loans before May 14, 2006); Summit Am. Compl., Exs. C-1 & C-2 (alleging that RFC purchased approximately 5,469 of 5,560 loans before May 14, 2006); CMG Am. Compl., Exs. C-1 & C-2 (alleging that RFC purchased approximately 8,351 of 9,200 loans from CMG before May 14, 2006); PCA Am. Compl., Exs. C-1 & C-2 (alleging that RFC purchased approximately 3,324 of 3,900 loans before May 14, 2006); Honor Am. Compl., Exs. C-1 & C-2 (alleging that RFC purchased approximately 3,121 of 4,219 loans before May 14, 2006); Cadence Am. Compl., Exs. C-1 & C-2 (alleging that RFC purchased approximately 25,986 of 35,000 loans before May 14, 2006); First Mariner Am. Compl., Exs. C-1 & C-2 (alleging that RFC purchased approximately 153 of 3,300 loans before May 14, 2006); Synovus Am. Compl., Exs. C-1 & C-2 (alleging that RFC purchased approximately 1,842 of 2,032 loans before May 14, 2006); PHH Am. Compl., Exs. C-

before May 14, 2009—*i.e.*, more than three years before it filed for bankruptcy.[14]  Plaintiff

claims that Defendants (including Defendants who were not loan originators) had the "initial"

and "primary responsibility" for underwriting the loans.  *See, e.g., id.* ¶ 19.  Plaintiff alleges that

the "types of defects" contained in the loans it purchased from Defendants, which Plaintiff

alleges breached Defendants' representations and warranties concerning the loans, included

"income misrepresentation, employment misrepresentation, appraisal misrepresentations or

inaccuracies, undisclosed debt, and missing or inaccurate documents."  *See, e.g., id.* ¶ 47.  Such

breaches of representations and warranties, courts have observed, occur at the time that the

representations and warranties are made—*i.e.*, the date on which the loans were sold to RFC.

*Residential Funding Co., LLC v. Mortg. Access Corp.*, No. 13-3499, 2014 WL 3577403, at *5

(D. Minn. July 21, 2014).

　　With respect to the overwhelming majority of loans, Plaintiff fails to identify which

loans—individually or otherwise—out of the more than 100,000 loans it purchased from

Defendants purportedly breached a representation or warranty.  Plaintiff does not allege which

---

1 & C-2 (alleging that RFC purchased approximately 3,036 of 3,500 loans before May 14, 2006);
SunTrust Am. Compl., Ex. C (alleging that RFC purchased approximately 4,186 of 10,922 loans
before May 14, 2006); SunTrust Sec. Am. Compl., Exs. C-1 & C-2 (alleging that RFC purchased
approximately 13,183 of 20,414 loans before May 14, 2006).  The foregoing numbers are based
solely on the allegations set forth in each Amended Complaint and the information contained in
the exhibits attached thereto.

[14] *See* HSBC Am. Compl., Exs. C-1 & C-2 (alleging that RFC purchased its last loan on
September 10, 2007); Greenpoint Sec. Am. Compl., Exs. B-1 & B-2 (July 7, 2007); UBS Sec.
Am. Compl., Exs. B-1 & B-2 (January 10, 2007); Summit Am. Compl., Exs. C-1 & C-2 (January
23, 2008); CMG Am. Compl., Exs. C-1 & C-2 (September 15, 2008); PCA Am. Compl., Exs. C-
1 & C-2 (September 25, 2007); Honor Am. Compl., Exs. C-1 & C-2 (October 10, 2007);
Cadence Am. Compl., Exs. C-1 & C-2 (September 26, 2007); First Mariner Am. Compl., Exs. C-
1 & C-2 (January 25, 2012); MIG Am. Compl., Exs. C-1 & C-2 (October 2, 2007); Synovus Am.
Compl., Exs. C-1 & C-2 (September 7, 2007); PHH Am. Compl., Exs. C-1 & C-2 (June 28,
2007); SunTrust Am. Compl., Ex. C (April 10, 2007); SunTrust Sec. Am. Compl., Exs. C-1 & C-
2 (April 10, 2007).

representation or warranty each loan breached or how those representations or warranties were breached. With regard to a small fraction of loans—less than one in five—Plaintiff asserts that it "undertook an investigation to examine [Defendants'] representations and warranties about the subject properties' appraised values and owner-occupancy status." *See, e.g.*, HSBC Am. Compl. ¶ 37.[15] In other words, as one court observed in a companion case filed by RFC, for more than four out of five loans allegedly sold by Defendants to RFC, Plaintiff has pled "a laundry list of defects that may or may not appear in any of [Defendants'] loans." *Embrace Home Loans*, 2014 WL 2766114, at *5. And even as to the loans captured by Plaintiff's "forensic review," Plaintiff concedes that it was unable to identify any defects in many of the loans. *See, e.g.*, HSBC Am. Compl. ¶ 45.[16] Moreover, the defects Plaintiff purported to uncover with respect to allegedly defective loans analyzed in the "forensic review" concerned only the loans' property value and owner-occupancy status. *See, e.g., id.* ¶¶ 37–45. Plaintiff does not allege in well-pled, non-conclusory terms that any loan was the cause of any loss in the proofs of claim or lawsuits filed or demands made against RFC.

---

[15] *See also* HSBC Am. Compl., Ex. D; Greenpoint Sec. Am. Compl., Ex. C; Summit Am. Compl., Ex. D; CMG Am. Compl., Ex. D; PCA Am. Compl., Ex. D; Honor Am. Compl., Ex. D; Cadence Am. Compl., Ex. D; First Mariner Am. Compl., Ex. D; MIG Am. Compl., Ex. D; Synovus Am. Compl., Ex. D; PHH Am. Compl., Ex. D; SunTrust Am. Compl., ¶ 39; SunTrust Sec. Am. Compl. Ex. D. Although Plaintiff asserts that it undertook a similar investigation with respect to loans that UBS sold to RFC, it does not identify any loans that were the subject of that investigation. *See* UBS Sec. Am. Compl. ¶¶ 35–41.

[16] *See also* HSBC Am. Compl. ¶ 45; Greenpoint Sec. Am. Compl. ¶ 45; UBS Sec. Am. Compl. ¶ 41; Summit Am. Compl. ¶ 47; CMG Am. Compl. ¶ 47; PCA Am. Compl. ¶ 47; Honor Am. Compl. ¶ 47; Cadence Am. Compl ¶ 47; First Mariner Am. Compl. ¶ 47; MIG Am. Compl. ¶ 47; Synovus Am. Compl. ¶ 47; PHH Am. Compl. ¶ 48; SunTrust Am. Compl. ¶ 52; SunTrust Sec. Am. Compl. ¶ 47.

## ARGUMENT

**I.   PLAINTIFF IS BARRED FROM SEEKING INDEMNIFICATION FOR SECURITIES OR FRAUD CLAIMS.[17]**

The Court should dismiss Count II of the Amended Complaints to the extent that the purported $10 billion in allowed claims in the global settlement in the RFC bankruptcy proceeding includes claims alleging that RFC violated the securities laws or committed fraud. Indemnification for such claims is barred as a matter of law.

In this Circuit, the bar against indemnification of securities claims is longstanding.  In the seminal case of *Globus v. Law Research Service, Inc.*, 418 F.2d 1276 (2d Cir. 1969), the Second Circuit held that indemnification for such claims was inconsistent with the Securities Act.  "Civil liability under section 11 [of the Securities Act] and similar provisions was designed not so much to compensate" the purchaser of the security "as to promote enforcement of the Act and to deter negligence by providing a penalty for those who fail in their duties." *Id.* at 1288.  "[T]o tolerate indemnity under these circumstances would encourage flouting the policy of the common law and the Securities Act," the Second Circuit held.  *Id.*  Prohibiting securities claim defendants from seeking indemnification, the Second Circuit explained, is rooted in the common-law principle that "one cannot insure himself against his own reckless, wil[l]ful or criminal misconduct." *Id.*

"[C]ourts in this district and elsewhere" have "readily extended *Globus*'s reasoning to preclude indemnification in cases involving negligent misrepresentations," because "indemnification for liability under a negligence standard would equally undermine the role of the underwriter as investigator and public advocate in contravention of federal public policy."

---

[17] Defendants HSBC Mortgage Corp. (USA) and UBS Real Estate Securities, Inc. do not join in this section of Defendants' Memorandum of Law In Support of Their Collective Motion to Dismiss the Amended Complaints.

*Credit Suisse First Boston, LLC v. Intershop Commc'ns AG*, 407 F. Supp. 2d 541, 546–48

(S.D.N.Y. 2006) (alterations, citation and internal quotation marks omitted); *see also Kennedy v.*

*Josephthal & Co.*, No. 82-913, 1983 WL 1314, at *5 (D. Mass. May 9, 1983) (no right to

indemnification under Massachusetts securities laws).  The "public policy [of deterrence]

enunciated by the federal securities laws" equally applies to bar indemnification for violations of

the securities laws that do "not require proof of fraudulent intent" but, instead, impose strict

liability.  *First Golden Bancorp. v. Weiszmann*, 942 F.2d 726, 728–29 (10th Cir. 1991) (internal

quotation marks omitted) (Section 16(b) of the Exchange Act) (short swing profit prohibition); *In*

*re Del-Val Fin. Corp. Sec. Litig.*, 868 F. Supp. 547, 553 (S.D.N.Y. 1994) ("Courts do not allow

indemnification for securities claims because permitting it would reduce each actor's incentive to

perform its statutory duties carefully."); *King v. Gibbs*, 876 F.2d 1275, 1282 n.10 (7th Cir. 1989)

("It is difficult to see how a right to indemnification for even innocent persons would serve the

deterrent function which underlies the [Exchange Act].  Those innocent parties who would

qualify for indemnification . . . cannot be found liable for damages.  Thus, a right to

indemnification would have no affect [sic] on their conduct and would not serve the deterrent

function of the statute." (citation omitted)); *Deephaven Capital Mgmt. v. Schnell*, No. 06-844,

2007 WL 101821, at *3–4 (D. Minn. Jan. 8, 2007) (dismissing under Rule 12(b)(6)

indemnification claim premised on violation of Section 16(b)); *Schaffer ex rel. Lasersight Inc. v.*

*CC Invs. LDC*, 286 F. Supp. 2d 279, 283 (S.D.N.Y. 2003) (observing indemnification is barred

for violation of Section 16(b)).

   In addition to furthering the public policy objectives underlying the securities laws,

courts also have recognized that "claims for indemnification fail as a matter of law in the

securities fraud context" because there is no circumstance in which the defendant would be

entitled to indemnification. *In re Livent Sec. Litig.*, 193 F. Supp. 2d 750, 754 (S.D.N.Y. 2002).

Either the securities claim defendant is not liable for violating the securities laws and has nothing

to indemnify, or it is liable for violating the securities laws and is precluded from seeking

indemnification under *Globus*. As the court in *Livent* observed,

> In essence, a defendant in a securities fraud case is faced with two prospects: he
> may ultimately be found not liable for the alleged fraud, in which case there is no
> liability to indemnify; or he may be found liable to plaintiffs for securities
> violations. In either case, indemnification is unwarranted because in the first
> instance, there is no liability to indemnify and in the second, a finding of liability
> would necessarily entail a finding of defendant's own reckless or knowing fraud,
> which would preclude indemnification.

*Id.* at 754–55. *See also Gabriel Capital, L.P. v. NatWest Fin., Inc.*, 137 F. Supp. 2d 251, 268

(S.D.N.Y. 2000) (if the indemnitee "did not knowingly and willfully violate federal securities

law, then [it] will have no liability to deflect").

Other Courts of Appeals have similarly barred securities claim defendants from asserting

claims for indemnification. Thus, in *Heizer Corp. v. Ross*, 601 F.2d 330, 334 (7th Cir. 1979), the

Seventh Circuit affirmed the dismissal under Rule 12(b)(6) of claims for indemnification arising

out of violations of the securities laws. In *Eichenholtz v. Brennan*, 52 F.3d 478, 483–84 (3d Cir.

1995), the Third Circuit overruled the objection of non-settling defendants and affirmed a bar

order extinguishing all claims for contractual indemnification relating to alleged securities law

violations. *See also*, *e.g.*, *Deephaven*, 2007 WL 101821, at *3–4 (dismissing under Rule

12(b)(6) securities defendant's claim for indemnity, even where it contended it was not at fault);

*In re Olympia Brewing Co. Sec. Litig.*, 674 F. Supp. 597, 610–14 (N.D. Ill. 1987) (dismissing

under Rule 12(b)(6) securities defendant's claim for indemnity "even [where it] arguably acted

in good faith," because allowing such defendants "to avoid [] liability merely by showing

ignorance would contravene the congressional intent to protect the public . . . from fraudulent practices").

Securities claims are not the only species of claims for which indemnification is barred; indemnification for intentional or fraudulent misconduct is likewise barred as a matter of public policy. Thus, in Minnesota, it is black-letter law that contractual indemnification provisions are not enforceable if they apply to "intentional, willful, and wanton acts." *ACLU v. Tarek ibn Ziyad Acad.*, 788 F. Supp. 2d 950, 967–68 (D. Minn. 2011) (internal quotation marks omitted). In New York, the law is the same: "contracts that would indemnify a party for intentional or fraudulent conduct are void as against public policy." *CBS Corp. v. Eaton Corp.*, No. 07 Civ. 11344, 2010 WL 1375169, at *2 (S.D.N.Y. Mar. 30, 2010). Courts in both jurisdictions uniformly reject indemnification claims arising out of fraud or intentional misconduct. *See, e.g.*, *Scottsdale Ins. Co. v. RiverBank*, 815 F. Supp. 2d 1074 (D. Minn. 2011) (granting summary judgment on the grounds that allowing indemnification for claims arising out of fraud would contravene public policy); *St. Paul Fire & Marine Ins. Co. v. C.J.*, No. A03-328, 2004 WL 614548, at *5 (Minn. Ct. App. Mar. 30, 2004) (rejecting indemnification claim for injuries arising out of intentional misconduct); *Gabriel Capital*, 137 F. Supp. 2d at 269 (dismissing complaint seeking indemnification arising out of fraud claims); *Barbagallo v. Marcum, LLP*, No. 11-CV-1358, 2012 WL 1664238, at *4–7 (E.D.N.Y. May 11, 2012) (dismissing complaint seeking indemnification for underlying intentional tort claims). To the extent Plaintiff seeks indemnification arising out of RFC's allegedly fraudulent or intentionally tortious conduct, that claim is barred as a matter of law.

Here, the Amended Complaints make clear that Plaintiff seeks indemnification for claims that RFC violated the securities laws or engaged in fraudulent or intentionally tortious conduct.

13

Plaintiff alleges that RFC's global settlement provided more than two billion dollars in consideration for securities law claimants and monoline insurers that sued or filed claims against RFC for securities law violations, fraud, and intentional tortious conduct.  Greenpoint Sec. Am. Compl. ¶ 74; Findings of Fact ¶¶ 124–176, Ch. 11 ECF Doc. # 6066.  In its Amended Complaints, Plaintiff alleges that, in RFC's bankruptcy proceeding, "hundreds of proofs of claim were filed against RFC by dozens of claimants, including investors alleging securities fraud claims."  Greenpoint Sec. Am. Compl. ¶ 74.  Those lawsuits alleged that, in connection with its issuance of RMBS, RFC and its affiliates knowingly made misstatements in violation of federal and state securities law, as they "had actual knowledge that the stated underwriting guidelines were not adhered to," had actual "knowledge of distortions in the LTV ratios," and "knew that the quality of the loans did not meet prudent underwriting practices and standards because it also analyzed those loans to determine which ones it would securitize and get off its books."[18]

Several of the lawsuits that Plaintiff features in its Amended Complaints alleged that RFC and its affiliates were liable for violations of section 11 of the Securities Act and similar provisions of federal and state securities laws.[19]  The Amended Complaints all allege that RFC's disclosures to investors in its RMBS contained misrepresentations regarding the quality of the underlying loans.  *Id.* ¶ 35.  Plaintiff nowhere in its Amended Complaints takes issue with these allegations; nowhere does it assert that RFC was innocent of these securities law violations or fraudulent or intentionally tortious conduct.  That is not surprising, as any such assertion would be wholly implausible given that these allegations of misconduct against RFC were made by Plaintiff's own counsel, who asserted on behalf of then-client MBIA that RFC "perpetrated a fraud" in

---

[18] Ahmad Decl., Ex. B (Union Cent. Compl. ¶¶ 639, 652, 685).

[19] *See*, *e.g.*, Ahmad Decl., Ex. C (FHFA Compl. ¶¶ 186–226); *id.* Ex. B (Union Cent. Compl. ¶¶ 837–860); *id.* Ex. D (N.J. Carpenters Compl. ¶¶ 262–294).

connection with its issuance of securities, and "knowingly, intentionally, and purposefully misrepresented existing material facts regarding the Securitizations, knowing that their representations were materially false."[20]

Under controlling Second Circuit precedent and Minnesota and New York law, Plaintiff is barred from seeking indemnification for RFC's alleged violation of the securities laws and fraudulent and intentionally tortious conduct.

## II.    PLAINTIFF'S BREACH-OF-CONTRACT CLAIMS ARE UNTIMELY.

The law governing motions to dismiss for statute of limitations is well-established. Dismissal is appropriate where a complaint "facially shows noncompliance with the limitations period." *In re S. African Apartheid Litig.*, 617 F. Supp. 2d 228, 287 (S.D.N.Y. 2009) (emphasis and internal quotation marks omitted). That is plainly the case with respect to Plaintiff's contract claims.

### A.    Plaintiff's Contract Claims Are Time-Barred Under Delaware Law.

The statute of limitations for a breach-of-contract claim is procedural and thus is governed by the law of the forum. *Portfolio Recovery Assocs., LLC v. King*, 927 N.E.2d 1059, 1061 (N.Y. 2010); *Schwan's Sales Enters., Inc. v. SIG Pack, Inc.*, 476 F.3d 594, 596 (8th Cir. 2007). The New York borrowing statute, N.Y. CPLR § 202, which applies to any cause of action that accrues outside of New York to a non-New York resident, requires application of the shorter statute of limitations period provided by either New York or the state where the cause of action accrued. *Baena v. Woori Bank*, No. 05 Civ. 7018, 2006 WL 2935752, at *6 (S.D.N.Y. Oct. 11, 2006). The borrowing statute "mandat[es] use of the *shortest* statute of limitations available." *McCleod v. Travelers Indem. Co.*, No. 12 Civ. 176, 2012 WL 5210945, at *1 n.2

---

[20] Ahmad Decl., Ex. A (MBIA Compl. ¶¶ 3, 124–125); *see also id.*, Ex. C (FHFA Compl. ¶¶ 265, 274) (RFC "defrauded Freddie Mac willfully and wantonly").

(S.D.N.Y. Oct. 19, 2012) (internal quotation marks omitted) (emphasis in original); *see Verizon Directories Corp. v. Continuum Health Partners, Inc.*, 902 N.Y.S.2d 343 (1st Dep't 2010) (dismissing contract claims as untimely, applying the three-year statute of limitations of plaintiff's state of incorporation rather than the four-year statute of limitations of its principal place of business).

Under New York law, a cause of action accrues "in the place of the injury," which "usually is where the plaintiff resides and sustains the economic impact of the loss." *Baena*, 2006 WL 2935752, at *6 (internal quotation marks omitted). Where the injured party is a corporation, its place of residence for purposes of the borrowing statute is "traditionally the state of incorporation or the corporation's principal place of business." *Id.*

Here, Plaintiff alleges that RFC "was a Delaware limited liability company with its principal place of business in Minneapolis, Minnesota." HSBC Am. Compl. ¶ 12. Pursuant to the mandate of the borrowing statute, the cause of action accrues in the resident state with the shortest statute of limitations—in this case, Delaware, which applies a three-year statute of limitations to breach-of-contract claims. *See McLeod*, 2012 WL 5210945, at *1 n.2; Del. Code Ann. tit. 10, § 8106 (West 2014).

The Amended Complaints each allege that Plaintiff's breach-of-contract claims arise out of Defendants' breaches of representations and warranties contained "in RFC's agreement to acquire the mortgage loans from [Defendants]." *See, e.g.*, HSBC Am. Compl. ¶ 24. Thus, based on the Amended Complaints, "the breaches occurred at the sale of the loans," *Embrace Home Loans*, 2014 WL 2766114, at *2, and RFC's claim for breach of contract accrued on the day that RFC purchased each loan. Plaintiff sets forth those purchase dates in the Amended Complaints. *See, e.g.*, HSBC Am. Compl., Exs. C-1, C-2 (Date of Acquisition).

16

Assuming *arguendo* that RFC's filing of bankruptcy on May 14, 2012 tolled the statute

of limitations for contract claims,[21] RFC's contract claims are time-barred for all loans purchased

more than three years earlier—before May 14, 2009.  Because virtually all loans in Plaintiff's

Amended Complaints and Exhibits allegedly were purchased from Defendants by RFC prior to

this date, Plaintiff's claims for breach of contract are time-barred virtually in their entirety.  *See*

n.8, *supra*.

Plaintiff seeks to circumvent this time-bar by alleging that Defendants have "a continuing

obligation under Section A201(M) of the Client Guide to promptly notify RFC of any act or

omissions which might impact the Loan," and that Defendants have "continually breached this

obligation . . . by failing to inform RFC of" alleged "loan defects."  *See, e.g.*, HSBC Am. Compl.

¶ 19.  That attempt to avoid the statute of limitations, however, fails for at least three reasons.

*First*, Plaintiff's assertion of a "continuing obligation" runs headlong into the express

terms of the Client Guide, which explicitly states that "representations and warranties contained

herein are made *as of each Funding Date* . . . unless the specific representation or warranty

provides to the contrary."  HSBC Am. Compl., Ex. B-1, § A200, ¶ 4 (emphasis added); PHH

Am. Compl., Ex. A at 43–44 ("Such representations and warranties speak as of the Funding Date

unless otherwise indicated").  Plaintiff fails to identify any specific representation or warranty

that provides to the contrary.  As Judge Doty in the District of Minnesota recently held, the

defects alleged by Plaintiff—"income misrepresentation, employment misrepresentation, owner

occupancy misrepresentations, appraisal misrepresentations or inaccuracies, undisclosed debt,

---

[21] Plaintiff has argued elsewhere that RFC's bankruptcy filing tolled statutes of limitation
pursuant to 11 U.S.C. § 108(a).  Ahmad Decl., Ex. E (Pl. Residential Funding Co., LLC's Mem.
in Opp. to Def.'s Mot. to Dismiss the First Am. Compl., *Residential Funding Co., LLC v. PNC
Bank, N.A.*, No. 13-03498, 26–29 (D. Minn. May 16, 2014)).  Plaintiff's ability to avail itself of
section 108(a)—which allows for tolling for a "Trustee"—is far from certain, as neither RFC nor
the Liquidating Trust is a bankruptcy trustee.

and missing or inaccurate documents"—are precisely the types of breaches that "occur at the time a loan is underwritten, not some later date." *Mortg. Access*, 2014 WL 3577403, at *5 (internal quotation marks omitted).  On that basis, Judge Doty held, "RFC does not sufficiently allege the breach of a continuing obligation," and its contract claims "are untimely." *Id.* (citing *Embrace Home Loans*, 2014 WL 2766114, at *3 ("It is beyond doubt that the breaches of contract about which the Amended Complaint complains happened when [Defendant] sold each allegedly defective loan to RFC.  RFC's cause of action arising out of those breaches thus accrued at that time.")).  Plaintiff's allegations here are no different and also are time-barred.

Second, Plaintiff's conclusory assertion that Defendants breached a post-closing "continuing obligation" also is directly contrary to its allegation that Defendants knew of purported defects in loans based on their "initial" underwriting or diligence of loans prior to their sale to RFC.  *See*, *e.g.*, HSBC Am. Compl. ¶ 19 (alleging that "HSBC had the initial responsibility for . . . verifying" borrower information and "underwriting the loan. . . . Accordingly, HSBC knew or should have known of the defects in the loans it sold to RFC."); *see also Embrace Home Loans*, 2014 WL 2766114, at *3 ("[T]he gravamen of RFC's claims is that [Defendant] knew or should have know[n] of these defects and failed to disclose them to RFC at the time of the loans' sale to RFC").  Nowhere does Plaintiff assert that Defendants later acquired new information concerning the loans that would give rise to some post-closing notice obligation.

Third, Plaintiff's argument essentially asserts that equitable estoppel or tolling bars Defendants from raising the statute of limitations because of their alleged "fail[ure] to inform RFC of the loan defects."  *See*, *e.g.*, HSBC Am. Compl. ¶ 19.  Equitable estoppel, however, is a "narrow doctrine that is sparingly invoked."  *Central Mortg. Co. v. Morgan Stanley Mortg. Capital*

18

*Holdings LLC*, No. 5140-CS, 2012 WL 3201139, at *24 (Del. Ch. June 22, 2012);[22] *Pomeranz v. Museum Partners L.P.*, No. Civ. A. 2021, 2005 WL 217039, at *13 (Del. Ch. Jan. 24, 2005) ("Equitable exceptions to statutes of limitations are narrow."); *Ross v. Louise Wise Servs., Inc.*, 8 N.Y.3d 478, 491 (N.Y. 2007) (equitable estoppel is an "uncommon remedy"); *Anderson v. H-Window Co.*, No. C9-98-1103, 1999 WL 88953, at *3 (Minn. Ct. App. Feb. 23, 1999) ("Equitable tolling" should "be used only in exceptional circumstances") (internal quotation marks omitted). To invoke equitable estoppel, a plaintiff cannot merely allege that a defendant breached an affirmative duty to disclose. *Lecates v. Hertrich Pontiac Buick Co.*, 515 A.2d 163, 177 (Del. Super. 1986); *Dain Bosworth Inc. v. Goetze*, 374 N.W.2d 467, 472 (Minn. Ct. App. 1985). Rather, it also must demonstrate that the defendant's conduct "prevented the plaintiffs from discovering the basis for their cause of action." *Lecates*, 515 A.2d at 177; *Wells Fargo Bank, N.A. v. JPMorgan Chase Bank, N.A.*, No. 12 Civ. 6168, 2014 WL 1259630, at *5 (S.D.N.Y. Mar. 27, 2014) ("[P]laintiff must show that it has been prevented in some extraordinary way from exercising its rights.") (internal quotation marks omitted); *Kosowsky v. Willard Mountain, Inc.*, 934 N.Y.S.2d 545, 549 (3d Dep't 2011) ("[P]laintiff was prevented from commencing a timely action by reasonable reliance on the defendant's . . . affirmative misconduct"); *Zumpano v. Quinn*, 849 N.E.2d 926, 930–31 (N.Y. 2006); *Ochs v. Streater, Inc.*, 568 N.W.2d 858, 860 (Minn. Ct. App. 1997). Plaintiff makes no such allegation. Indeed, any such allegation would be implausible. Although Plaintiff bases its claims on alleged defects contained in loan files, *see, e.g.*, HSBC Am. Compl. ¶¶ 37–45, the contractual documents Plaintiff cites in its Amended Complaints demonstrate that RFC had full access to those loan files. *See, e.g.*, HSBC Am.

---

[22] The New York borrowing statute requires the "borrowing of [Delaware's] tolling provisions." *Bergstein v. Jordache Enters.*, 90 Civ. 1461, 1995 WL 4533558, at *3 (S.D.N.Y. Aug. 1, 1995); *see also Vincent v. Money Store*, 915 F. Supp. 2d 553, 569 (S.D.N.Y. 2013) (applying California statute of limitations and California equitable tolling doctrines).

Compl., Ex. B-1 at 497–99 ("Client must submit" to RFC all "documents or materials . . .

requested to support the credit worthiness of the transaction.").  Moreover, as Plaintiff alleges,

RFC was well aware that "[o]ver time, many of the loans sold to RFC by HSBC defaulted or

became seriously delinquent."  *See, e.g.*, HSBC Am. Compl. ¶ 46.  In fact, Plaintiff claims, third

parties acting on their own discovered the alleged breaches by "reviewing loan files" as early as

May 2008.  *Id.* ¶ 57.  Nothing prevented RFC from doing the same at any time.  Indeed, Plaintiff

alleges that RFC conducted such reviews.  *Id.* ¶ 47.  A plaintiff cannot make a showing sufficient

to support equitable estoppel or tolling[23] where it had access to information to timely investigate

its claims.  *In re Dean Witter P'ship Litig.*, No. Civ. A. 14816, 1998 WL 442456, at *6 (Del. Ch.

July 17, 1998); *Putter v. North Shore Univ. Hosp.*, 858 N.E.2d 1140, 1142–43 (N.Y. 2006); *Rite

Aid Corp. v. Grass*, 854 N.Y.S.2d 1, at *2 (1st Dep't 2008); *Hydra-Mac, Inc. v. Onan Corp.*, 450

N.W.2d 913, 919 (Minn. 1990).

Any breach of an alleged obligation to notify RFC of purported defects in loans

necessarily accrued no later than the time of sale of the loan.  According to the Amended

Complaints, those sales virtually all occurred before May 14, 2009.  As a matter of law,

Plaintiff's contract claims are time-barred.

**B.**    **Alternatively, Plaintiff's Contract Claims For Loans Acquired Before May
14, 2006 Are Time-Barred.**

Alternatively, RFC's contracts with Defendants contain choice-of-law provisions

requiring application of either the law of Minnesota[24] or New York.[25]  In the event that these

choice-of-law provisions govern the choice of procedural law, then Plaintiff's breach-of-contract

---

[23] Equitable tolling also is inapplicable here because Plaintiff does not allege, as it must, the
existence of a fiduciary relationship between RFC and any of the Defendants.  *See In re Tysons
Food, Inc.*, 919 A.2d 563, 585 (Del. Ch. 2007) ("Equitable tolling stops the statute from running
while a plaintiff has reasonably relied upon the competence and good faith of a fiduciary.").

claim for any loans acquired by RFC before May 14, 2006 is time-barred pursuant to the six-year

statutes of limitations applicable under Minnesota and New York law.

Both Minnesota and New York law require "that an action for breach of contract be

'commenced within six years' of the breach." *Embrace Home Loans*, 2014 WL 2766114, at *2

(quoting Minn. Stat. § 541.05, subd. 1); *Jacobson v. Bd. of Trs. of Teachers Ret. Ass'n*, 627

N.W.2d 106, 110 (Minn. Ct. App. 2001) (internal quotation marks omitted); *Lehman XS Trust,*

*Series 2006-4N ex rel. U.S. Bank Nat'l Ass'n v. Greenpoint Mortg. Funding, Inc.*, 991 F. Supp.

2d 472 (S.D.N.Y. 2014); *ACE Sec. Corp. v. DB Structured Prods., Inc.*, 977 N.Y.S.2d 229, 230

(1st Dep't 2013). Even assuming that RFC's May 14, 2012 bankruptcy filing tolled the statute of

limitations for these claims, *see* n.22, *supra,* any contract claim for loans sold more than six

years earlier—*i.e.*, before May 14, 2006—is time-barred under Minnesota and New York law.

Multiple Minnesota district courts have reached this result in parallel actions brought by

RFC. Thus, in *Embrace Home Loans*, the federal district court dismissed as time-barred RFC's

breach-of-contract claim arising out of loans sold before May 14, 2006. 2014 WL 2766114, at

*2–4. Likewise, in *Mortgage Access*, the federal district court dismissed RFC's contract claims

---

[24] Minnesota law allegedly governs the contracts pursuant to which RFC acquired loans from
Defendants HSBC Mortgage Corp. (HSBC Am. Compl., Ex. A ¶ 12), Summit Financial
Mortgage, LLC (Summit Am. Compl., Ex. A ¶ 12), CMG Mortgage, Inc. (CMG Am. Compl.,
Ex. A ¶¶ 12–13, Primary Capital Advisors (PCA Am. Compl., Ex. A ¶ 10), Honor Bank (Honor
Am. Compl., Ex. A ¶ 13), Cadence Bank (Cadence Am. Compl., Ex. A ¶ 13), First Mariner Bank
(First Mariner Am. Compl., Ex. A ¶ 12), Mortgage Investors Group, Inc. (MIG Am. Compl., Ex.
A ¶ 12), and Synovus Mortgage Corp. (Synovus Am. Compl., Ex. A ¶ 10).

[25] New York law allegedly governs the contracts pursuant to which RFC acquired loans from
Defendants SunTrust Mortgage, Inc. (SunTrust Am. Compl. & SunTrust Sec. Am. Compl., Ex.
A at 4), Greenpoint Mortgage Funding (Greenpoint Sec. Am. Compl., Ex. A at 38), and UBS
Real Estate Securities, Inc. (UBS Sec. Am. Compl., Ex. A at 38). RFC allegedly acquired loans
from Defendant PHH Mortgage Corp. pursuant to two contracts: one governed by New York,
and one governed by Minnesota law. PHH Am. Compl., Ex. A at 4, 89.

"relating to loans sold or assigned prior to May 14, 2006" as time-barred under Minnesota's six-year statute of limitations.  2014 WL 3577403, at *5.

Plaintiff in fact is collaterally estopped from challenging the conclusion that its contract claims for loans issued before May 14, 2006 are time-barred under Minnesota law.  These claims are identical to claims that were dismissed in *Embrace Home Loans* and *Mortgage Access*, and Plaintiff is collaterally estopped from asserting the same claims here.  Courts "appl[y] federal common law to determine the preclusive effect of a previous federal court judgment;" where "the earlier federal court judgment is in a diversity case, federal law incorporates the rules of preclusion applied by the State in which the [earlier] rendering court sits."  *Pricaspian Dev. Corp. (Tex.) v. Royal Dutch Shell, plc*, No. 08 Civ. 9726, 2009 WL 1564110, at *6 (S.D.N.Y. June 3, 2009) (internal quotation marks omitted).  In Minnesota, "[t]he doctrine of collateral estoppel mandates that once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits . . . involving a party to the prior litigation."  *Haavisto v. Perpich*, 520 N.W.2d 727, 731 (Minn. 1994) (internal quotation marks omitted).  Four factors must be present for collateral estoppel to apply:

> (1) the issues in the prior and present adjudication must be identical; (2) there must have been a final adjudication on the merits; (3) the estopped party must have been a party or in privity with a party to the prior adjudication; (4) and the estopped party must have been given a fair and full opportunity to be heard on the adjudicated issue.

*VanGelder v. Johnson*, 827 N.W.2d 430, 436 (Minn. Ct. App. 2012) (internal quotation marks omitted).[26]

---

[26] In Minnesota, "finality exists for purposes of collateral estoppel" during the pendency of an appeal.  *In re Dairy Dozen-Thief River Falls, LLP*, Nos. A09-936, -1406, 2010 WL 2161781, at *8 (Minn. Ct. App. June 1, 2010) (citing *Am. Druggists Ins. v. Thompson Lumber Co.*, 349 N.W.2d 569, 572 (Minn. Ct. App. 1984) ("an appeal . . . does not vacate or annul the judgment appealed from," and collateral estoppel applies based on the judgment "until it is reversed."

Under the doctrine of collateral estoppel, a plaintiff is barred from re-litigating issues it lost in a prior proceeding against other defendants; it is not "material that [defendants in the second proceeding] were not parties to the [prior proceeding]." *Aufderhar v. Data Dispatch, Inc.*, 452 N.W.2d 648, 652 (Minn. 1990). "Even though a defendant in the proceeding before the court was not a party to the earlier proceeding, Minnesota permits a defendant to invoke collateral estoppel in the subsequent litigation commenced by a plaintiff who had been the claimant in the earlier proceeding." *Id.* at 650; *Milsap v. Special Sch. Dist. No. 1*, No. C8-99-79, 1999 WL 391859, at *3–4 (Minn. Ct. App. June 15, 1999) (barring claim against defendants not present in prior proceeding based on collateral estoppel); *see also Macon v. United States*, No. 3:05 cv 1721, 2006 WL 3041104, at *2 (D. Conn. Oct. 23, 2006) (dismissing claims as time-barred under Rule 12(b)(6) based on plaintiff's attempt "to relitigate his previously dismissed claims against new defendants"); *Cent. Bank Denver, N.A. v. Mehaffy, Rider, Windholz & Wilson*, 940 P.2d 1097, 1101–05 (Colo. App. 1997) (plaintiff's claims against defendants who "were not parties" to prior proceeding were time-barred based on prior adjudication). Collateral estoppel fully applies where, as here, the first adjudication is resolved on a motion to dismiss. *See Milsap*, 1999 WL 391859, at *1, *3–4.

All of the elements of collateral estoppel are present here. First, the issue in the prior and present cases—whether Plaintiff's contract claim arising out of loans sold before May 14, 2006 is time-barred under Minnesota law—is identical.[27] Second, there has been a final adjudication

---

(internal quotation marks omitted)); *see also Elliot & Callan, Inc. v. Crofton*, No. 07-CV-3391, 2009 WL 3297506, at *3 n.3 (D. Minn. Oct. 13, 2009) (same).

[27] Even Plaintiff's responsive argument—that its claim is not time-barred because Defendant "violated its continuing obligations" under Section A201(M) of the Client Guide "by failing to provide RFC with" "information that materially affected the loans sold," and that "breaches of this continuing obligation allegedly occurred post-sale"—is the same, and likewise has been

of this claim on the merits. *See Embrace Home Loans*, 2014 WL 2766114, at *8 (dismissing

RFC's contract claims for loans sold before May 14, 2006); *Mortg. Access*, 2014 WL 3577403,

at *6 (same). Third, Plaintiff was a party, or in privity with a party, in the prior adjudication.

Fourth, Plaintiff had a fair and full opportunity to be heard on the adjudicated issue. Thus, not

only are Plaintiff's contract claims for loans issued before May 14, 2006 time-barred under

Minnesota law, but Plaintiff is collaterally estopped from asserting otherwise.

## III.    THE AMENDED COMPLAINTS FAIL TO SATISFY THE PLEADING REQUIREMENTS OF *IQBAL* AND *TWOMBLY*.

Finally, the Amended Complaints fail to state a claim under the threshold pleading

requirements of Federal Rule of Civil Procedure 8 and the decisions of the Supreme Court in

*Ashcroft v. Iqbal* and *Bell Atlantic v. Twombly*. It is fundamental that a plaintiff must allege facts

sufficient to "give the defendant fair notice of what the . . . claim is and the grounds upon which

it rests." *Twombly*, 550 U.S. at 555 (alteration in original) (internal quotation marks omitted).

Rule 8 "requires that plaintiff allege facts sufficient to place the defendant on notice of the nature

and scope of the claims against it." *Torchlight Loan Servs., LLC v. Column Fin., Inc.*, No. 11

Civ. 7426, 2012 WL 3065929, at *5 (S.D.N.Y. July 25, 2012). The complaint also must set forth

facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

Although the plausibility standard is "not akin to a probability requirement," it "asks for more

than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal

quotation marks omitted). To that end, a plaintiff must allege "more than 'facts that are merely

consistent with a defendant's liability.'" *Gracey v. J.P. Morgan Chase & Co.* (*In re Amaranth

Natural Gas Commodities Litig.*), 730 F.3d 170, 180 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at

678). "[L]abels and conclusions" or "formulaic recitation[s] of the elements of a cause of

---

rejected by Minnesota courts. *Compare, e.g., Embrace Home Loans*, 2014 WL 2766114, at *3,
*with* Summit Am. Compl. ¶ 20.

action" do not render allegations plausible. *Twombly*, 550 U.S. at 555. Nor can a complaint simply tender "'naked assertion[s]'" devoid of "'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (citation omitted). Rather, a plaintiff is required to plead "'enough facts to state a claim to relief that is plausible on its face,'" and thereby "'nudge[] [its] claims'. . . 'across the line from conceivable to plausible.'" *Id*. at 680, 697 (quoting *Twombly*, 550 U.S. at 570).

Notwithstanding that Plaintiff was afforded the opportunity to remedy its pleading defects by filing Amended Complaints, its operative pleadings lack the factual detail necessary to meet the standard of Rule 8 as set forth in *Iqbal* and *Twombly*.

*First*, Plaintiff's basic allegation repeated throughout its Amended Complaints is that there were "widespread" defects in the loans sold to RFC by each Defendant. *See, e.g.*, HSBC Am. Compl. ¶ 47. Yet, with respect to the overwhelming majority of loans allegedly sold by Defendants to RFC, the Amended Complaints are completely silent; they fail to state any facts whatsoever. Plaintiff's allegation of "widespread" defects is conclusory given that they allege no facts whatsoever concerning the vast majority of loans.

Plaintiff seeks to remedy this deficiency through additional conclusory pleading, asserting that "in many" unidentified instances Defendants violated representations and warranties made to RFC, and that unidentified internal reviews by RFC found that unspecified loans it purchased "contained widespread violations of the Client Guide." *See, e.g.*, HSBC Am. Compl. ¶ 47. These allegations, however, are themselves completely conclusory. The purported results of Plaintiff's internal "review" concerns only a small fraction of loans sold by each Defendant, and each Amended Complaint recites but a handful of allegedly defective loans from

"internal" reviews.  With regard to more than four in five loans sold by Defendants to RFC,

Plaintiff fails to make a single non-conclusory allegation of defect or loss.

Plaintiff, predictably, will argue "that multiple courts have faced pleadings similar to

RFC's Amended Complaints and have determined that loan-by-loan pleading is unnecessary and

perhaps even unwarranted," and cite the decision in *Ace Securities Corp. Home Equity Loan

Trust v. DB Structured Products, Inc.*, No. 13 Civ. 1689, - - - F. Supp. 2d - - - , 2014 WL

1116758 (S.D.N.Y. Mar. 20, 2014).  *Embrace Home Loans*, 2014 WL 2766114, at *5.  However,

as Judge Magnuson held in *Embrace Home Loans*, Plaintiff's "reliance on *Ace* is misplaced."  *Id.*

> The parties in *Ace* are an investor in a mortgage-backed security and the sponsor
> of the securitization. (*Ace* Compl. ¶ 1.) The *Ace* complaint alleges that the
> plaintiff investor undertook "an exhaustive (and expensive) *loan-by-loan forensic
> review" of the 3,386 mortgage loans* that were pooled to create the mortgage-
> backed security (*id.* ¶ 2) *and provided the defendant with "loan-by-loan
> supporting detail" regarding the more than 1,000 loans the forensic review
> determined were defective*. (*Id.*) In other words, although the *Ace* complaint did
> not list each defective loan and its defect or defects in the body of the complaint,
> the defendant knew before the complaint was filed specifically what loans in the
> pool were alleged to be defective and likely knew why each loan was allegedly
> defective.  This is a far cry from the allegations in the Amended Complaint here.

*Id.* (emphases added).  In other words, in *Ace*, the complaint provided defendants with "loan-by-

loan supporting detail" concerning the alleged defects in more than 1,000 loans.  Here, in

contrast, the Amended Complaints uniformly lack such information, and Plaintiff apparently

seeks to plead breaches by extrapolation.  In the 13 Amended Complaints collectively, Plaintiff

provides loan-level detail on fewer than 100 of the more than 100,000 loans it acquired from

Defendants—*i.e.*, less than 1/10 of 1%.  *See, e.g.*, HSBC Am. Compl. ¶ 48.[28]  Other than those

roughly 100 loans and loans for which Plaintiff alleges "findings" from its "AVM" and "owner-

---

[28] *See also* Greenpoint Sec. Am. Compl. ¶ 50; UBS Sec. Am. Compl. ¶ 47; Summit Am. Compl.
¶ 52; CMG Am. Compl. ¶ 51; PCA Am. Compl. ¶ 51; Honor Am. Compl. ¶ 52; Cadence Am.
Compl. ¶ 52; First Mariner Am. Compl. ¶ 52; MIG Am. Compl. ¶ 52; Synovus Am. Compl. ¶
52; PHH Am. Compl. ¶ 52; SunTrust Am. Compl. ¶ 52; SunTrust Sec. Am. Compl. ¶ 51.

occupancy review," *see*, *e.g.*, *id.* ¶¶ 42, 45, Plaintiff fails to identify any loan in any

securitization or whole loan pool that allegedly is defective or why it was defective.

     *Second*, the Amended Complaints offer even fewer allegations linking any alleged defect

in any loan with RFC's purported losses and liabilities.  In order to "nudge[] [its] claims across

the line from conceivable to plausible," *Twombly*, 550 U.S. at 570, Plaintiff must plausibly allege

in each complaint in non-conclusory terms not only the existence of a defect, but that the

defective loans sold by a particular defendant—as opposed to loans originated by RFC's own

affiliates or sold by scores of other correspondent lenders to RFC—caused RFC to incur loss.

The Amended Complaints fail to contain any such allegation.  Instead, Plaintiff relies on the

conclusory, generalized assertion that RFC was sued "about its role" in securitizations, some

unidentified portion of which "included loans" sold to RFC by Defendants.  *See*, *e.g.*, HSBC

Am. Compl. ¶¶ 63–65.  Plaintiff acknowledges, however, that only a small fraction of the loans

that RFC placed into the securitizations involved in these lawsuits were provided by any

individual Defendant. [29]  And Plaintiff does not allege how many, if any, of the loans reviewed

---

[29] *Compare* HSBC Am. Compl. ¶ 4 ("sold over 8,800 mortgage loans, with an original principal balance in excess of $2.9 billion") *with id.* ¶¶ 69–70 ("was responsible for over 2,450 of the loans" in "lawsuits [that] involved . . . a combined original principal balance of more than $100 billion"); *compare* UBS Sec. Am. Compl. ¶ 3 ("sold over 2,200 mortgage loans, with an original principal balance in excess of $685 million") *with id.* ¶¶ 71–72 ("was responsible for over 1,000 of the loans" in "lawsuits [that] involved . . . a combined original principal balance of more than $100 billion"); *compare* Summit Am. Compl. ¶ 4 ("sold over 5,600 mortgage loans, with an original principal balance in excess of $288 million") *with id.* ¶¶ 73–74 ("was responsible for over 300 of the loans" in "lawsuits [that] involved . . . a combined original principal balance of more than $100 billion"); *compare* CMG Am. Compl. ¶ 4 ("sold over 9,200 mortgage loans, with an original principal balance in excess of $3.1 billion") *with id.* ¶¶ 74–75 ("was responsible for over 400 of the loans" in "lawsuits [that] involved . . . a combined original principal balance of more than $100 billion"); *compare* PCA Am. Compl. ¶ 4 ("sold over 3,900 mortgage loans, with an original principal balance in excess of $252 million") *with id.* ¶¶ 75–76 ("was responsible for over 625 of the loans" in "lawsuits [that] involved . . . a combined original principal balance of more than $100 billion"); *compare* Honor Am. Compl. ¶ 4 ("sold over 4,200 mortgage loans, with an original principal balance in excess of $190 million") *with id.* ¶¶ 77–78

by RFC were defective or caused loss to RFC relating to a securitization. Plaintiff fails to allege

any facts suggesting any connection between specific loans, terms of contracts allegedly

breached, and RFC's alleged losses. As Judge Magnuson held in *Embrace Home Loans*,

Plaintiff's Amended Complaints "simply assert, without more, that an unspecified number of

loans were in breach of [Defendants'] obligations," which "is insufficient" to state a claim as a

matter of law. 2014 WL 2766114, at *6 (internal quotation marks omitted). As in *Embrace

Home Loans*, this Court should dismiss the Amended Complaints. *Id.*

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court: (1) dismiss

Plaintiff's claim for indemnification with respect to securities law claims and claims for

---

("was responsible for approximately 1,000 or more of the loans" in "lawsuits [that] involved . . . a combined original principal balance of more than $100 billion"); *compare* Cadence Am. Compl. ¶ 4 ("sold over 35,000 mortgage loans, with an original principal balance in excess of $526 million") *with id.* ¶¶ 78–79 ("was responsible for over 5,850 of the loans" in "lawsuits [that] involved . . . a combined original principal balance of more than $100 billion"); *compare* First Mariner Am. Compl. ¶ 4 ("sold over 3,300 mortgage loans, with an original principal balance in excess of $843 million") *with id.* ¶¶ 76–77 ("was responsible for over a dozen of the loans" in "lawsuits [that] involved . . . a combined original principal balance of more than $100 billion"); *compare* MIG Am. Compl. ¶ 4 ("sold over 100 mortgage loans, with an original principal balance in excess of $34 million") *with id.* ¶¶ 75–76 ("was responsible for approximately 68 of the loans" in "lawsuits [that] involved . . . a combined original principal balance of more than $100 billion"); *compare* Synovus Am. Compl. ¶ 4 ("sold over 2,000 mortgage loans, with an original principal balance in excess of $360 million") *with id.* ¶¶ 69–70 ("was responsible for over 220 of the loans" in "lawsuits [that] involved . . . a combined original principal balance of more than $100 billion"); *compare* PHH Am. Compl. ¶ 4 ("sold over 3,500 mortgage loans, with an original principal balance in excess of $945 million") *with id.* ¶¶ 71–72 ("was responsible for over 300 of the loans" in "lawsuits [that] involved . . . a combined original principal balance of more than $100 billion"); *compare* SunTrust Am. Compl. ¶ 4 ("sold over 10,000 mortgage loans, with an original principal balance in excess of $3.5 billion") *with id.* ¶¶ 71–72 ("was responsible for over 7,400 of the loans" in "lawsuits [that] involved . . . a combined original principal balance of more than $100 billion"); *compare* SunTrust Sec. Am. Compl. ¶ 4 ("sold over 20,000 mortgage loans, with an original principal balance in excess of $6.6 billion") *with id.* ¶¶ 69–70 ("was responsible for over 6,200 of the loans" in "lawsuits [that] involved . . . a combined original principal balance of more than $100 billion").

intentional misconduct; (2) dismiss Plaintiff's contract claims as time-barred; and (3) dismiss

Plaintiff's contract and indemnification claims as insufficiently pled.

Dated: September 8, 2014

Respectfully submitted,


  /s/ Matthew V. Johnson
R. Hackney Wiegmann (hwiegmann@wc.com)
Andrew W. Rudge (arudge@wc.com)
Matthew V. Johnson (mjohnson@wc.com)
Jesse Smallwood (jsmallwood@wc.com)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
(202) 434-5000
(202) 434-5029 (fax)

*Attorneys for Defendant HSBC Mortgage
Corp.(USA)*


  /s/ Cameron S. Matheson
James A. Murphy (jmurphy@mmlawus.com)
Cameron S. Matheson (cmatheson@mmlawus.com)
Theodore R. Snyder (tsnyder@mmlawus.com)
MURPHY & MCGONIGLE, PC
1185 Avenue of the Americas
21st Floor
New York, NY 10036
(212) 880-9999

*Attorneys for Defendants GreenPoint Mortgage
Funding, Inc., Summit Financial Mortgage LLC,
and Summit Community Bank, Inc.*


  /s/ Scott D. Musoff
Scott D. Musoff (scott.musoff@skadden.com)
Robert A. Fumerton
Alexander C. Drylewski
SKADDEN, ARPS, SLATE, MEAGHER & FLOM
LLP
Four Times Square
New York, NY 10036
(212) 735-3000
(212) 735-2000 (fax)

*Attorneys for Defendant UBS Real Estate Securities,
Inc.*


  /s/ John O'Shea Sullivan
John O'Shea Sullivan (ssullivan@burr.com)
BURR & FORMAN LLP
171 17th Street, N.W.
Suite 1100
Atlanta, GA 30363
(404) 685-4268
(404) 214-7924 (fax)

*Attorney for Defendant Primary Capital Advisors,
LLC*

 /s/ Alissa M. Nann
Richard J. Bernard (rbernard@foley.com)
Alissa M. Nann (anann@foley.com)
FOLEY & LARDNER LLP
90 Park Avenue
New York, NY 10016
(212) 338-3586
(212) 687-2329 (fax)

*Attorneys for Defendant CMG Mortgage, Inc.*

 /s/ Richard Levy, Jr.
Richard Levy, Jr. (rlevy@pryorcashman.com)
PRYOR CASHMAN LLP
7 Times Square
New York, NY 10036-3569
(212) 421-4100
(212) 326-0806 (fax)

*Attorney for Defendants Primary Capital Advisors LLC and Synovus Mortgage Corp.*

 /s/ Susan Jill Rice
Susan Jill Rice (jrice@nmichlaw.com)
ALWARD FISHER RICE ROWE & GRAF, PLC
202 E. State Street
Suite 100
Traverse City, MI 49684
(231) 346-5405
(231) 941-9679 (fax)

*Attorney for Defendant Honor Bank*

 /s/ Mark S. Finkelstein
Mark S. Finkelstein (mfinkelstein@smfadlaw.com)
Carlos A. Mattioli (cmattioli@smfadlaw.com)
George A. Shannon, Jr. (gshannon@smfadlaw.com)
SHANNON, MARTIN, FINKELSTEIN,
ALVARADO & DUNNE, PC
1001 McKinney
Suite 1100
Houston, TX 77002
(713) 646-5503
(713) 752-0337 (fax)

*Attorneys for Defendant Cadence Bank, N.A.*

 /s/ John H. Bae
John H. Bae (jhbae@mintz.com)
Dominic J. Picca (djpicca@mintz.com)
Kaitlin R. Walsh (krwalsh@mintz.com)
MINTZ LEVIN COHN FERRIS GLOVSKY & POPEO
666 Third Avenue
New York, NY 10017
(212) 935-3000
(212) 983-3115 (fax)

*Attorneys for Defendant Cadence Bank, N.A.*

 /s/ Joel L. Perrell, Jr.
Joel L. Perrell, Jr. (jperrell@milesstockbridge.com)
Kristen M. Siracusa
(ksiracusa@milesstockbridge.com)
MILES & STOCKBRIDGE, P.C.
100 Light Street
Baltimore, MD 21202
(410) 727-3762
(410) 385-3700 (fax)

*Attorneys for Defendant First Mariner Bank*

/s/ Greg Chambers
James W. Brody (jbrody@amlg.com)
Greg Chambers (gchambers@amlg.com)
American Mortgage Law Group
75 Rowland Way, Suite 350
Novato, CA 94945
(415) 878-0030
(415) 878-0035 (fax)

*Attorneys for Defendant CMG Mortgage, Inc.*

/s/ Roland P. Reynolds
Roland P. Reynolds (rreynolds@pldlawyers.com)
PALMER, LOMBARDI & DONOHUE, LLP
515 South Flower Street
Suite 2100
Los Angeles, CA 90071
(213) 688-0430
(213) 688-0440 (fax)

*Attorney for Defendant Mortgage Investors Group, Inc.*

/s/ Brent D. Hitson
Victor L. Hayslip (vhayslip@burr.com)
Brent D. Hitson (bhitson@burr.com)
BURR & FORMAN LLP
420 North 20th Street
Suite 3400
Birmingham, AL 35203
(205) 251-3000
(205) 244-5656 (fax)

*Attorneys for Defendant Synovus Mortgage Corp.*

/s/ Tessa Katherine Somers
David Monro Souders (souders@thewbkfirm.com)
Tessa Katherine Somers (somers@thewbkfirm.com)
WEINER BRODSKY KIDER PC
1300 19th Street, N.W.
Fifth Floor
Washington, DC 20036
(202) 628-2000
(202) 628-2011 (fax)

*Attorneys for Defendant PHH Mortgage Corp.*

/s/ Daniel F. Markham
Daniel F. Markham (dmarkham@gibbonslaw.com)
Daniel S. Weinberger
(dweinberger@gibbonslaw.com)
GIBBONS P.C.
One Pennsylvania Plaza
New York, NY 10119
(212) 613-2000
(212) 554-9632 (fax)

*Attorneys for Defendant PHH Mortgage Corp.*

/s/ John Doherty
John P. Doherty (john.doherty@alston.com)
Jennifer Susan Kozar
James S. D'Ambra, Jr.
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016
(212) 210-9400
(212) 210-9444 (fax)

*Attorneys for Defendant SunTrust Mortgage, Inc.*