**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE RESCAP LIQUIDATING TRUST MORTGAGE PURCHASE LITIGATION | Case No. 12-12020 (MG) (Ch. 11) Adv. Proc. No. 14-07900 (MG) |

*This document relates to*:

ResCap Liquidating Trust v. HSBC Mortg. Corp. (USA), Adv. Proc. No. 14-01915 (MG)

ResCap Liquidating Trust v. GreenPoint Mortg. Funding, Inc., Adv. Proc. No. 14-01916 (MG)

Residential Funding Co. v. UBS Real Estate Secs., Inc., Adv. Proc. No. 14-01926 (MG)

ResCap Liquidating Trust v. Summit Fin. Mortg. LLC, Adv. Proc. No. 14-01996 (MG)

ResCap Liquidating Trust v. First Mariner Bank, N.A., Adv. Proc. No. 14-02003 (MG)

ResCap Liquidating Trust v. Mortg. Investors Grp., Inc., Adv. Proc. No. 14-02004 (MG)

ResCap Liquidating Trust v. SunTrust Mortg. Inc., Adv. Proc. No. 13-1820 (MG)

**PLAINTIFF'S MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANTS' COLLECTIVE MOTION TO DISMISS**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................1

BACKGROUND ........................................................................................................3

ARGUMENT .............................................................................................................7

I.    DEFENDANTS' "FRAUD AND SECURITIES LAW DEFENSE"
      MISCHARACTERIZES THE LAW AND REQUIRES RESOLUTION OF
      COMPLEX FACTUAL QUESTIONS....................................................................8

      A.    Indemnification For Settled Fraud Claims Is Permissible .....................9

      B.    Indemnification For Settled Securities Claims Involves The Complex Factual
            Question Of RFC's Innocence ...............................................................11

      C.    Identification Of Any Purportedly Non-Indemnifiable Claims Requires A
            Factual Determination...........................................................................13

II.   THE BREACH OF CONTRACT CLAIMS ARE TIMELY ...........................................15

      A.    The Contract Claims Are Subject To Minnesota's Six-Year Statute Of
            Limitations, Not Delaware's Three-Year Statute, And Are Timely....................15

      B.    Regardless Of Whether The Delaware Statute Is Applicable, The Claims For
            All Loans, Including Those Sold Prior To May 14, 2006, Are Timely Under
            The Continuing Obligation Doctrine .....................................................17

            1.    Defendants' Knowledge Of Defects Creates A Question Of Fact
                  Not Appropriate For Resolution On A Motion To Dismiss ....................18

            2.    Under Minnesota Law, The Client Guide Extended RFC's Statute
                  Of Limitations.........................................................................20

            3.    Defendants Cannot Avoid The Continuing Obligation Doctrine .............21

      C.    Collateral Estoppel Does Not Bar The Claims On Pre-May 14, 2006 Loans........23

III.  THE COMPLAINTS SATISFY THE REQUIREMENTS OF *IQBAL/TWOMBLY* .........25

      A.    The Complaints Plead Facially Plausible Claims .................................25

      B.    Plaintiff Is Not Required To Plead The Alleged Defects in Each And Every
            One Of The Large Number of Loans At Issue In These Actions .........................27

      C.    The Complaints Sufficiently Plead The Connection Between Loans Defects
            and Losses.............................................................................31

CONCLUSION.......................................................................................32

# TABLE OF AUTHORITIES

**Page**

## Cases

*Ace Sec. Corp. v. DB Structured Prods., Inc.*,
No. 13-cv-1869, 2014 WL 1116758 (S.D.N.Y. March 20, 2014) ...................19, 28, 29, 30, 31

*Airco Alloys Div. v. Niagara Mohawk Power Corp.*,
76 A.D.2d 68 (4th Dep't 1980) ......................................................................................18

*Allen v. Dairy Farmers of Am., Inc.*,
748 F. Supp. 2d 323 (D. Vt. 2010) .................................................................................19

*Allen v. Egan*,
303 F. Supp. 2d 71 (D. Conn. 2004) ..............................................................................19

*Am. Civil Liberties Union of Minn. v. Tarek ibn Ziyad Acad.*,
788 F. Supp. 2d 950 (D. Minn. 2011) ............................................................................10

*Anderson News, LLC v. Am. Media, Inc.*,
680 F.3d 162 (2d Cir. 2012) .......................................................................................7, 25

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..........................................................................................3, 7, 25, 31

*Assured Guar. Mun. Corp. v. Flagstar Bank FSB*,
920 F. Supp. 2d 475 (S.D.N.Y. 2013) ...........................................................................29

*Aufderhar v. Data Dispatch, Inc.*,
452 N.W.2d 648 (Minn. 1990) .......................................................................................24

*Barbagallo v. Marcum LLP*,
No. 11-CV-1358, 2012 WL 1664238 (E.D.N.Y. May 11, 2012) ...................................14

*Bell Atlantic v. Twombly*,
550 U.S. 544 (2007) ..........................................................................................3, 7, 25, 31

*Bice v. Robb*,
324 Fed. App'x 79 (2d Cir. 2009) ..................................................................................19

*Blagman v. Apple Inc.*,
No. 12-cv-5453, 2013 WL 2181709 (S.D.N.Y. May 20, 2013) .................................7, 25

*Brinckerhoff v. JAC Holding Corp.*,
263 A.D.2d 352 (1st Dep't 1999) ...................................................................................16

*Brown-Wilbert, Inc. v. Copeland Buhl & Co., PLLP*,
732 N.W.2d 209 (Minn. 2007) .......................................................................................23

*In re Burger*,
125 B.R. 894 (Bankr. D. Del. 1991) ..............................................................................17

*CBS Corp. v. Eaton Corp.*,
   No. 07-cv-11344, 2010 WL 1375169 (S.D.N.Y. Mar. 30, 2010) ............................................9

*CIFG Assur. N. Am., Inc. v. Goldman Sachs & Co.*,
   No. 652286/2011, 2012 WL 1562718 (Sup. Ct. N.Y. Cnty. May 1, 2012) ...........................28

*CSX Transp., Inc. v. Mass. Bay Transp. Auth.*,
   No. 06-40211, 2011 WL 3207770 (D. Mass. July 27, 2011) .................................................14

*Cent. Bank Denver, N.A. v. Mehaffy, Rider, Windholz & Wilson*,
   940 P.2d 1097 (Colo. Ct. App. 1997) ....................................................................................24

*Clifford Chance LLP v. Indian Harbor Ins. Co.*,
   14 Misc. 3d 1209(A) (Sup. Ct. N.Y. Cnty. 2006)
   *aff'd*, 41 A.D.3d 214 (1st Dep't 2007) ...................................................................................13

*Collins v. Envtl. Sys. Co.*,
   3 F.3d 238 (8th Cir. 1993) .....................................................................................................20

*Complaint of Am. Exp. Lines, Inc.*,
   568 F. Supp. 956 (S.D.N.Y. 1983) .........................................................................................15

*Convent of the Visitation Sch. v. Cont'l Cas. Co.*,
   707 F. Supp. 412 (D. Minn. 1989) .........................................................................................14

*Credit Suisse First Boston, LLC v. Intershop Commc'ns AG*,
   407 F. Supp. 2d 541 (S.D.N.Y. 2006) ....................................................................................11

*Deephaven Capital Mgmt. v. Schnell*,
   No. 06-844, 2007 WL 101821 (D. Minn. Jan. 8, 2007)..........................................................13

*In re Del-Val Fin. Corp. Sec. Litig.*,
   868 F. Supp. 547 (S.D.N.Y. 1994) .........................................................................................14

*Donaldson Lufkin & Jenrette Secs. Corp. v. Star Techs., Inc.*,
   148 Misc. 2d 880 (Sup. Ct. N.Y. Cnty. 1990), *aff'd on reh'g*,
   150 Misc.2d 126 (Sup. Ct. N.Y. Cnty. 1991), *aff'd mem.*,
   180 A.D.2d 495 (1st Dep't 1991) .......................................................................................9, 11

*Eichenholtz v. Brennan*,
   52 F.3d 478 (3d Cir. 1995)......................................................................................................12

*FDIC v. Cohen*,
   No. 95 Civ. 683, 1996 WL 87248 (S.D.N.Y. Feb. 29, 1996) .................................................16

*Faulkner v. Arista Records LLC*,
   602 F. Supp. 2d 470 (S.D.N.Y. 2009).....................................................................................18

*Fernandez v. Chertoff*,
   471 F.3d 45 (2d Cir. 2006)) ......................................................................................................7

*Fireman's Fund Ins. Co. v. W. Nat. Mut. Grp.*,
   851 F. Supp. 1361 (D. Minn. 1994)........................................................................................10

*First Golden Bancorporation v. Weiszmann*,
    942 F.2d 726 (10th Cir. 1991) ........................................................................................12

*Friedman v. Hartmann*,
    787 F. Supp. 411 (S.D.N.Y. 1992) ...................................................................................9

*Fromer v. Yogel*,
    50 F. Supp. 2d 227 (S.D.N.Y. 1999).........................................................................12, 13

*GML, Inc. v. Cinque & Cinque, P.C.*,
    No. 106942/01, 2005 WL 5960011 (Sup. Ct. N.Y. Cnty. Sept. 29, 2005) ......................16

*Gabriel Capital, L.P. v. Natwest Fin., Inc.*,
    137 F. Supp. 2d 251 (S.D.N.Y. 2000)..............................................................................12

*Gibbs-Alfano v. Burton*,
    281 F.3d 12 (2d Cir. 2002)................................................................................................10

*Global Fin. Corp. v. Triarc Corp.*,
    93 N.Y.2d 525 (1999) .......................................................................................................16

*Globus v. Law Research Service, Inc.*,
    418 F.2d 1276 (2d Cir. 1969)............................................................................................11

*Green v. Beer*,
    No. 06-cv-4156, 2009 WL 3401256 (S.D.N.Y. Oct. 22, 2009)..........................................7

*Greenwald v. Am. Medcare Corp.*,
    666 F. Supp. 489 (S.D.N.Y. 1987) ...................................................................................11

*H. S. Equities, Inc. v. Hartford Acc. & Indem. Co.*,
    661 F.2d 264 (2d Cir. 1981).............................................................................................14

*Hapoalim B.M. v. Bank of America Corp.*,
    No. 12-CV-4316, 2012 WL 6814194 (C.D. Cal. Dec. 21, 2012) .....................................28

*Hauschildt v. Beckingham*,
    686 N.W.2d 829 (Minn. 2004)..........................................................................................24

*Heizer Corp. v. Ross*,
    601 F.2d 330 (7th Cir. 1979) ...........................................................................................14

*Heraeus Metal Processing v. PGP Indus.*,
    No. 06-00428, 2006 WL 4682143 (Sup. Ct. N.Y. Cnty. Oct. 31, 2006) ..........................16

*Hillstrom v. Kenefick*,
    No. 04-3820, 2004 WL 2823222 (D. Minn. Dec. 9, 2004) ..............................................20

*Johnson v. First Nat'l Bank of Montevido*,
    719 F.2d 270 (8th Cir. 1983) ...........................................................................................15

*Kennedy v. Josephthal & Co.*,
    No. 82-913, 1983 WL 1314 (D. Mass. May 9, 1983).......................................................12

*King v. Gibbs*,
   876 F.2d 1275 (7th Cir. 1989) ................................................................12, 13

*Koppers Co. v. Aetna Cas. & Sur. Co.*,
   98 F.3d 1440 (3d Cir. 1996).........................................................................14

*Kosowsky v. Williard Mountain, Inc.*,
   90 A.D.3d 1127 (3d Dep't 2011) .................................................................22

*Litwin v. Blackstone Grp., L.P.*,
   634 F.3d 706 (2d Cir. 2011)...........................................................................7

*In re Livent Sec. Litig.*,
   193 F. Supp. 2d 750 (S.D.N.Y. 2002)..........................................................12

*Loreley Fin. (Jersey) No., Ltd. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
   117 A.D.3d 463 (1st Dep't 2014) .................................................................17

*MIG, Inc. v. Paul, Weiss, Rifkind, Wharton & Garrison, L.L.P.*,
   701 F. Supp. 2d 518 (S.D.N.Y. 2010), *aff'd*, 410 F. App'x 408 (2d Cir. 2011).....................16

*Macon v. United States*,
   No. 05CV1721, 2006 WL 3041104 (D. Conn. Oct. 23, 2006) ............................................24

*McCleod v. Travelers Indem. Co.*,
   No. 12-cv-176, 2012 WL 5210945 (S.D.N.Y. Oct. 19, 2012)................................................15

*Milsap v. Special Sch. Dist. No. 1*,
   No. C8-99-79, 1999 WL 391859 (Minn. Ct. App. June 15, 1999)........................................24

*Moore v. Medtronic, Inc.*,
   No. 99-2066, 2001 WL 1636248 (D. Minn. July 30, 2001) ................................................18, 19

*N.J. Carpenters Health Fund v. Royal Bank of Scotland Group, PLC*,
   709 F.3d 109 (2d Cir. 2013).............................................................................7

*Odette v. Shearson, Hammill & Co.*,
   394 F. Supp. 946 (S.D.N.Y. 1975) ....................................................................9

*Okla. Police Pension & Ret. Sys. v. U.S. Bank Nat'l Ass'n*,
   291 F.R.D. 47 (S.D.N.Y. 2013) .......................................................................28

*In re Olympia Brewing Co. Sec. Litig.*,
   674 F. Supp. 597 (N.D. Ill. 1987) .....................................................................13

*Oxbow Calcining USA Inc. v. Am. Indus. Partners*,
   96 A.D.3d 646 (1st Dep't 2012) .....................................................................17

*Parkhill v. Minn. Mut. Life Ins. Co.*,
   995 F. Supp. 983 (D. Minn. 1998)...................................................................15

*Peggy Rose Revocable Trust v. Eppich*,
   640 N.W.2d 601 (Minn. 2002).......................................................................20

v

*Pfizer, Inc. v. Stryker Corp.*,
    385 F. Supp. 2d 380 (S.D.N.Y. 2005)..................................................................13

*Portfolio Recovery Assocs., LLC v. King*,
    14 N.Y.3d 410 (2010) ......................................................................................17

*Pub. Serv. Mut. Ins. Co. v. Goldfarb*,
    53 N.Y.2d 392 (1981) ........................................................................................9

*Pricaspian Dev. Corp. v. Total S.A.*,
    397 Fed. App'x 673 (2d Cir. 2010)....................................................................16

*RFC v. Embrace Home Loans, Inc.*,
    No. 13-3457, 2014 WL 2766114 (D. Minn. June 18, 2014).....................21, 22, 23, 24, 29, 31

*Reiss v. Fin. Performance Corp.*,
    97 N.Y.2d 195 (2001) ......................................................................................21

*Robb Evans & Assocs. L.L.C. v. Sun Am. Life Ins.*,
    No. 10 Civ. 5999, 2012 WL 488257 (S.D.N.Y. Feb. 14, 2012) ..........................16

*Roseberg v. Steen*,
    363 N.W.2d 102 (Minn. Ct. App. 1985) ............................................................23

*Schaffer ex rel. Lasersight Inc. v. CC Invs. LDC*,
    286 F. Supp. 2d 279 (S.D.N.Y. 2003)................................................................12

*Scottsdale Insurance Co. v. RiverBank*,
    815 F. Supp. 2d 1074 (D. Minn. 2011)..............................................................10

*Seghers v. Deloitte & Touche USA LLP*,
    17 Misc. 3d 1118(A) (Sup. Ct. N.Y. Cnty. Aug. 13, 2007)...............................16

*Semtek Int'l Inc. v. Lockheed Martin Corp.*,
    531 U.S. 497 (2001) ..........................................................................................23

*Shamrock Assocs. v. Sloane*,
    738 F. Supp. 109 (S.D.N.Y. 1990) ....................................................................16

*Smith v. Mattia*,
    No. 4498, 2010 WL 412030 (Del. Ch. Feb. 1, 2010) ........................................17

*St. Paul Fire & Marine Ins. Co. v. C.J.*,
    No. A03-328, 2004 WL 614548 (Minn. Ct. App. Mar. 30, 2004).......................10

*St. Paul Fire & Marine Ins. Co. v. Perl*,
    415 N.W.2d 663 (Minn. 1987)..........................................................................10

*State v. Lemmer*,
    736 N.W.2d 650 (Minn. 2007)..........................................................................23

*TIG Ins. Co. v. Weil, Gotshal & Manges LLP*,
    No. 600944/05, 2005 WL 5959978 (Sup. Ct. N.Y. Cnty. Nov. 10, 2005) ............16

*Taylor v. Sturgell*,
    553 U.S. 880 (2008) .......................................................................................23

*Verizon Directories, Corp. v. Continuum Health Partners, Inc.*,
    74 A.D.3d 416 (1st Dep't 2010) .................................................................16

*Woori Bank v. Merrill Lynch*,
    923 F. Supp. 2d 491 (S.D.N.Y. 2013) ........................................................16

### Statutes

11 U.S.C. § 108(a) ...........................................................................................2, 15

11 U.S.C. § 1107(a) ...............................................................................................15

Fed. R. Civ. P. 8 ...................................................................................3, 27, 31, 32

Fed. R. Civ. P. 8(a)(2) ..........................................................................7, 25, 29, 32

Fed. R. Civ. P. 10b-5 .............................................................................................14

Fed. R. Civ. P. 12(b)(6) ...........................................................................7, 11, 19

Fed. R. Civ. P. 54(b) ..............................................................................................23

**DOCUMENTS CITED AND TERMS REFERENCED**

| | |
|---|---|
| **Ahmad Decl.** | Declaration of N. Mahmood Ahmad in support of Defendants' Motion to Dismiss, No. 14-07900-mg, Dkt. 17 (Bankr. S.D.N.Y. Sep. 8, 2014). |
| **Amended Complaints** | First Amended Complaint, *Trust v. HSBC*, No. 14-01915-mg, Dkt. 27 (Bankr. S.D.N.Y. July 24, 2014) ("HSBC Am. Compl."); Second Amended Complaint, *Trust v. GreenPoint*, No. 14-01916-mg, Dkt. 20 (Bankr. S.D.N.Y. July 24, 2014) ("GreenPoint Second Am. Compl."); First Amended Complaint, *Trust v. Mortgage Investors*, No. 14-02004-mg, Dkt. 18 (Bankr. S.D.N.Y. July 24, 2014) ("Mortgage Investors Am. Compl."); Second Amended Complaint, *RFC v. UBS*, No. 14-01926-mg, Dkt. 33 (Bankr. S.D.N.Y. July 24, 2014) ("UBS Second Am. Compl."); First Amended Complaint, *Trust v. First Mariner*, No. 14-02003-mg, Dkt. 28 (Bankr. S.D.N.Y. July 25, 2014) ("First Mariner Am. Compl."); First Amended Complaint, *Trust v. Summit*, No. 14-01996-mg, Dkt. 30 (Bankr. S.D.N.Y. July 25, 2014) ("Summit Am. Compl."); Second Amended Complaint, *Trust v. SunTrust*, No. 13-01820-mg, Dkt. 11 (Bankr. S.D.N.Y. Aug. 8, 2014) ("SunTrust Second Am. Compl."). |
| **Americash Order** | *RFC v. Americash*, No. 13-cv-3460, Dkt. 58 (D.Minn. July 21, 2014) (Doty, J.), attached as Ex. U to Nesser Decl. |
| **Ark-La-Tex Order** | *RFC v. Ark-La-Tex Financial Services, LLC*, No. 13-cv-03448, Dkt. 66 (D.Minn. October 15, 2014) (Frank, J.), attached as Ex. FF to Nesser Decl. |
| **Bankruptcy** | *In re ResCap Bankruptcy*, No. 12-12020-mg (Bankr. S.D.N.Y.) |
| **Bankruptcy Plan** | *In re ResCap Bankruptcy*, No. 12-12020-mg, Dkt. 6064 (Bankr. S.D.N.Y.  Dec. 11, 2013) |
| **Br.** | Defendants' Memorandum of Law in Support of Their Collective Motion to Dismiss the Amended Complaints, No. 14-adv-7900-mg, Dkt. 18 (Bankr. S.D.N.Y. Sep. 8, 2014). |
| **Broadview Order** | *RFC v. Broadview Mortg. Corp.*, No. 13-3463, Dkt. 64 (D.Minn. Aug. 19, 2014) (Montgomery, J.), attached as Ex. Y to Nesser Decl. |
| **Cherry Creek Order** | *RFC v. Cherry Creek Mortg. Co.*, No. 13-3449, Dkt. 57 (D.Minn. Sep. 15, 2014) (Ericksen, J.), attached as Ex. BB to Nesser Decl. |
| **Client Guide** | Attached as Exhibit B (various versions submitted as sub-parts of Exhibit B) to Amended Complaints of HSBC, Mortgage Investors, First Mariner, SunTrust, and Summit. |
| **Cornerstone Order** | *RFC v. Cornerstone Home Lending, Inc.*, No. 13-cv-3504, Dkt. 41 (D.Minn. Aug. 6, 2014) (Kyle, J.), attached as Ex. X to Nesser Decl. |
| **Community West Order** | *RFC v. Community West Bank, N.A.*, No. 13-3468, Dkt. 59 (D. Minn. Oct. 14, 2014) (Tunheim, J.), attached as Ex. DD to Nesser Decl. |

| | |
|---|---|
| **Confirmation Order** | *In re ResCap Bankruptcy*, No. 12-12020-mg, Dkt. 6065 (Bankr. S.D.N.Y.  Dec. 11, 2013) |
| **Defendants** | HSBC Mortgage Corp. ("HSBC"); GreenPoint Mortgage Funding, Inc. ("GreenPoint"); Mortgage Investors Group, Inc. ("Mortgage Investors"); UBS Real Estate Securities, Inc. ("UBS"); First Mariner Bank ("First Mariner"); Summit Financial Mortgage, LLC f/k/a Summit Financial, LLC and Summit Community Bank, Inc. f/k/a Shenandoah Valley Bank, N.A. ("Summit"); SunTrust Mortgage Inc. ("SunTrust") |
| **First Guaranty Order** | *RFC v. First Guaranty Mortg. Corp.*, No. 13-3475, Dkt. 37 (D.Minn. Aug. 20, 2014) (Kyle, J.), attached as Ex. Z to Nesser Decl. |
| **First Mortgage Order** | *RFC. v. First Mortg. Corp.*, No. 13-cv-3490, Dkt. 48 (Kyle, J.), attached as Ex. W to Nesser Decl. |
| **Gateway R&R** | R&R, *RFC v. Gateway Bank, F.S.B.*, No. 13-cv-3518, Dkt. 64 (D.Minn. May 30, 2014) (adopted by Davis, J.), attached as Ex. P to Nesser Decl. |
| **GreenPoint MLPWA** | Mortgage Loan Purchase And Warranties Agreement between RFC and GreenPoint, dated as of December 16, 2005, attached as Ex. A to GreenPoint Am. Compl. |
| **Mortgage Access Order** | *RFC v. Mortgage Access Corp.*, No. 13-cv-3499, Dkt. 59 (D.Minn. July 21, 2014) (Doty, J.), attached as Ex. T to Nesser Decl. |
| **Mortgage Outlet Transcript** | *RFC v. The Mortgage Outlet, Inc.*, No. 13-cv-3447, Dkt. 51 (D.Minn. June 24, 2014) (Schiltz, J.), attached as Ex. S to Nesser Decl. |
| **Mortgage Outlet Order** | *RFC v. The Mortgage Outlet, Inc.*, No. 13-cv-3447, Dkt. 52 (D.Minn. Oct. 1, 2014) (Schiltz, J.), attached as Ex. CC to Nesser Decl. |
| **Motion to Dismiss** | Defendants' Collective Motion to Dismiss the Amended Complaints, No. 14-adv-7900-mg, Dkt. 16 (Bankr. S.D.N.Y. Sep. 8, 2014). |
| **Nesser Decl.** | Declaration of Isaac Nesser in support of RFC's Opposition to Defendants' Motion to Dismiss, No. 14-07900 (Bankr. S.D.N.Y. Oct. 23, 2014), filed contemporaneously herewith |
| **Plaintiff** | In actions against GreenPoint, HSBC, Mortgage Investors, First Mariner, Summit, and SunTrust, the Trust, as successor in interest to RFC;<br>In the action against UBS, RFC, by and through its successor in interest, the Trust |
| **RFC** | Residential Funding Company, LLC |
| **RMBS** | Residential Mortgage-Backed Securities |
| **Seller Contract** | Attached as Exhibit A to Amended Complaints of HSBC, Mortgage Investors, First Mariner, and Summit |
| **SouthTrust Order** | *RFC v. SouthTrust Mortgage Corp., et al.*, No. 13-cv-3524, Dkt. 79 (D.Minn. July 21, 2014) (Doty, J.), attached as Ex. V to Nesser Decl. |

| **Stearns Order** | *RFC v. Stearns Lending, Inc.*, No. 13-3516, Dkt. 53 (D. Minn. Aug. 22, 2014) (Montgomery, J.), attached as Ex. AA to Nesser Decl. |
|---|---|
| **Terrace R&R** | R&R, *RFC v. Terrace Mortgage Co.*, No. 13-cv-3517, Dkt. 67 (D.Minn. May 30, 2014) (adopted by Davis, J.), attached as Ex. R to Nesser Decl. |
| **Trust** | ResCap Liquidating Trust |
| **UBS Ex. C** | Exhibit C to UBS Second Amended Complaint (UBS Second Am. Compl. ¶ 36), sent to UBS on September 22, 2014, attached as Ex. GG to Nesser Decl. |
| **UBS MSPWA** | Master Seller's Purchase And Warranties Agreement between RFC and UBS, dated as of May 12, 2005, attached as Ex. A to UBS Second Am. Compl. |
| **Wallick R&R** | R&R, *RFC v. Wallick & Volk, Inc.*, No. 13-cv-3512, Dkt. 67 (D.Minn. May 30, 2014) (adopted by Davis, J.), attached as Ex. Q to Nesser Decl. |

The Trust, as successor in interest to RFC, respectfully submits this memorandum of law in opposition to the collective Motion to Dismiss filed by Defendants.

## PRELIMINARY STATEMENT

Defendants collectively sold more than $12.3 billion dollars' worth of loans to RFC, many of which were defective. Those defective loans caused RFC to incur millions of dollars of losses, and ultimately contributed to driving RFC into bankruptcy before this Court. In selling the loans to RFC, Defendants made numerous representations and warranties regarding the quality and characteristics of the loans, and agreed to sweeping indemnification provisions requiring Defendants to make RFC whole for Defendants' breaches of those representations and warranties. By this action, now being prosecuted on RFC's behalf by the Trust for the benefit of RFC's creditors, RFC seeks to be made whole for Defendants' violations of their contractual obligations.

Defendants have moved to dismiss on several grounds: three in the Motion to Dismiss filed on behalf of all Defendants, and additional grounds set forth in five supplemental briefs brought on behalf of six of the Defendants, which are addressed in separate contemporaneous opposition briefs filed by Plaintiff. Importantly, numerous Minnesota courts have already rejected many of the same arguments in numerous pending lawsuits brought by RFC against other correspondent lenders. Defendants' arguments fail for many of the same reasons stated in those prior decisions, as discussed below.

*First*, Defendants—with the exception of HSBC and UBS—essentially seek an advisory opinion that Plaintiff's indemnification claims are barred to the extent the underlying settlements for which Plaintiff seeks indemnification were based on asserted violations of securities laws and common law fraud. This argument is at best premature, requiring resolution of significant factual issues not appropriate for a motion to dismiss. Defendants concede that certain of Plaintiff's claims are indemnifiable and that Plaintiff's indemnification claim may proceed to the extent based on such

indemnifiable claims. Nor can Defendants dispute that common law fraud claims are *also* indemnifiable because there has been no judgment as to RFC's liability for intentional misconduct. To prevail on their defense, Defendants must demonstrate that: (i) Plaintiff is seeking indemnification for liabilities that were caused by non-indemnifiable securities claims; and (ii) to the extent the underlying liabilities could be allocated either to non-indemnifiable securities claims or to indemnifiable claims, what allocation should be made. Plaintiff is also entitled to assert an "actual innocence" defense with respect to the settled alleged securities violations. None of these complex factual questions is appropriate for resolution on a motion to dismiss.

*Second*, Defendants argue that the breach of contract claims—but not the indemnity claims— are untimely under Delaware's three-year statute of limitations, which they argue should apply under New York's borrowing statute. Defendants are wrong. New York's borrowing statute "borrows" a shorter statute of limitations only from the jurisdiction where Plaintiff sustained its injury, which, in this case, was Minnesota, where RFC had its principal place of business. Minnesota's statute of limitations is six years, not three. Defendants effectively concede that Plaintiff's breach of contract claim as to all loans sold on or after May 14, 2006, is timely as a matter of law under the six-year statute of limitations, pursuant to the 2-year "extender" in section 108(a) of the Bankruptcy Code. *See* 11 U.S.C. §§ 108(a), 1107. Regardless of whether the Delaware statute of limitations applies, moreover, the contract claims for *all* loans, including those sold prior to May 14, 2006, are timely because Defendants are under a continuing obligation, which obligation Defendants have breached, to notify RFC of any issues that may materially affect the loans, even after sale of the loans to RFC. Factual questions concerning Defendants' knowledge of such issues preclude resolution of statute of limitations arguments at the pleading stage. In any event, Defendants effectively waived a statute of limitations defense in the Client Guide under Minnesota law. Finally, collateral estoppel based on

2

two District of Minnesota decisions also does not apply to bar Plaintiff's claims because no final

judgment has been entered in those cases, and there is no identity of the issues because the statute of

limitations analyses are highly fact-dependent.  In fact, other Minnesota courts *rejected* originators'

argument that the claims relating to the pre-May 14, 2006, loans were untimely.

    *Third*, Defendants argue that the Amended Complaints fail to satisfy *Iqbal/Twombly*.

Defendants are wrong because the Amended Complaints provide detailed allegations regarding the

representations and warranties at issue and Defendants' breaches of them.  Plaintiff is not required to

plead the alleged defect in each and every loan at issue.  Particularly in RMBS cases—and especially

cases as large as the ones before this Court, which together involve approximately 42,300 loans sold

to RFC with an original principal balance of more than $12.3 billion—courts do not require the

plaintiff to allege in the initial pleading each and every breach in each and every loan.  This has been

the square holding of dozens of cases throughout the country.  Indeed, even in RMBS litigation

involving fraud claims that must be pled with particularity, courts have not required plaintiffs to

plead the specific defects in each and every one of the thousands of loans involved.  All that is

required is a short and plain statement of Plaintiff's claims consistent with the requirements of

Federal Rule of Civil Procedure 8.  The claims are more than sufficiently pled in the Amended

Complaints.  Defendants' Motion to Dismiss must be denied.

## BACKGROUND

    Defendants originated and sold residential mortgage loans to RFC.  *See, e.g.*, HSBC Am.

Compl. ¶¶ 1, 4.[1]  As Defendants knew, RFC pooled the loans purchased from Defendants and other

correspondent lenders and sold the pooled loans into special purpose securitization trusts, which

issued mortgage-backed securities to investors.  *Id.* ¶¶ 20-22.

---

[1]  For ease of reference, Plaintiff cites to the HSBC Amended Complaint as illustrative of the
allegations against Defendants, and also cites to the other Amended Complaints where necessary.

Defendants underwrote the loans that they sold to RFC, and understood that RFC generally would not be re-underwriting the loans. *Id.* ¶ 19. As part of their sale of loans to RFC, Defendants made numerous material representations and warranties to RFC regarding the loans. *Id.* ¶¶ 23(a)-(m), 24. For all Defendants except UBS and GreenPoint, those representations and warranties are set forth in the "Client Guide," which contains the terms and conditions of the agreement between the parties, and is incorporated into the Seller Contract. *Id.* ¶¶ 16-17; *see also id.*, Ex. B (attaching excerpts). Representations and warranties by GreenPoint are set forth in the GreenPoint MLPWA, § 9.1. Representations and warranties by UBS are set forth in the UBS MSPWA, § 3.02. UBS, GreenPoint, and SunTrust sold loans to RFC under contracts governed by New York law[2]; the remainder of Defendants' contracts with RFC are governed by Minnesota law.

The Client Guide provides that Defendants' failure to comply with its representations and warranties to RFC or any other requirements constitutes an "Event of Default." HSBC Am. Compl. ¶¶ 25-26. The Client Guide also provides numerous non-exclusive, cumulative remedies available to RFC in case of an Event of Default. *Id.* ¶¶ 27-29. For example, RFC may demand that Defendant repurchase defective loans. *Id.* ¶ 28. Alternatively, RFC can recover all losses, costs, and expenses it has incurred as the result of an Event of Default. *Id.* ¶ 30. RFC can also assert any remedy allowed by law or equity. *Id.* ¶ 27. Finally, RFC is entitled to obtain indemnification pursuant to the Client Guide, including as against all losses, liabilities, and damages arising from Defendants' breach of representations and warranties and other obligations. *Id.* ¶ 32.

The GreenPoint MLPWA (§ 9.3) and the UBS MSPWA (§ 3.03) also provide that failure to comply with the representations and warranties constitutes a breach of the governing contract. Under the two contracts, RFC has the right to seek repurchase, substitution, or payment in the event

---

[2]  *See* SunTrust Second Am. Compl. Ex. A, § 9; GreenPoint Second Am. Compl. § 31; and UBS Second Am. Compl. Ex. A § 5.02.

of a breach of representations and warranties.  *See* GreenPoint Second Am. Compl. ¶ 27; UBS

Second Am. Compl. ¶ 27.  GreenPoint and UBS also agreed to broad indemnification provisions in

the MLPWA and the MSPWA, respectively, pursuant to which those Defendants are required to

indemnify RFC for all liabilities and losses arising from Defendants' breach of representations and

warranties and other obligations.  *See* GreenPoint Am. Compl. ¶ 28; UBS Second Am. Compl. ¶ 28.

All together, Defendants sold more than 42,300 loans, with an original principal balance in

excess of $12.3 billion to RFC.[3]  RFC pooled and sold these loans into hundreds of RMBS trusts.[4]  A

preliminary identification of the specific loans originated by each Defendant that were securitized,

including their original principal balance, the securitization in which each loan was included, and the

date each Defendant sold the loan to RFC, is provided with each Amended Complaint.[5]  Defendants

sold additional loans to RFC that RFC sold to whole loan purchasers, many of which are also listed

in exhibits to the Amended Complaints.[6]

Over time, many of the loans Defendants sold to RFC defaulted or became seriously

delinquent and internal reviews conducted by RFC determined that thousands of the loans sold to

RFC by Defendants violated the Client Guide and/or other representations or warranties made by

Defendants.  HSBC Am. Compl. ¶¶ 46-47.  Specific examples of defective loans each Defendant

---

[3]  *See* HSBC Am. Compl. ¶¶ 4, 18, 35; GreenPoint Second Am. Compl. ¶¶ 4, 18, 35; Mortgage
Investors Am. Compl. ¶¶ 4, 19, 37; UBS Second Am. Compl. ¶¶ 4, 20, 32; First Mariner Am.
Compl. ¶¶ 4, 19, 37; Summit Am. Compl. ¶¶ 4, 19, 37; SunTrust Second Am. Compl. ¶¶ 4, 19, 37.

[4]  *See id*.

[5]  *See* HSBC Am. Compl. Ex. C-1; SunTrust Second Am. Compl. Ex. C-1; GreenPoint Second Am.
Compl. Ex. B-1; UBS Second Am. Compl. Ex. B-1; Mortgage Investors Am. Compl. Ex. C-1;
Summit Am. Compl. Ex. C-1; First Mariner Am. Compl. Ex. C-1.

[6]  *See* HSBC Am. Compl. Ex. C-2; SunTrust Second Am. Compl. Ex. C-2; GreenPoint Second Am.
Compl. Ex. B-2; UBS Second Am. Compl. Ex. B-2; Mortgage Investors Am. Compl. Ex. C-2;
Summit Am. Compl. Ex. C-2; First Mariner Am. Compl. Ex. C-2.

sold to RFC are contained in each Amended Complaint.[7]  RFC also conducted forensic reviews to assess Defendants' compliance with representations and warranties, provided Defendants with the results of these analyses, *id.* ¶¶ 37-45, and attached detailed lists of defective loans as exhibits to the Amended Complaints, specifying the representations and warranties each loan breached.[8]

Beginning in 2008, RFC faced a growing number of claims and lawsuits stemming from the defective loans that it purchased from Defendants and others. *Id.* ¶¶ 50-78.  In May 2012, RFC and certain of its affiliates filed for Chapter 11 bankruptcy protection before this Court.  *Id.* ¶ 72.  Hundreds of proofs of claims were filed in the bankruptcy, and RFC and its affiliates settled many of these claims and lawsuits in the bankruptcy proceedings for allowed claims totaling billions of dollars and has also paid millions of dollars in attorneys' fees.  *Id.* ¶¶ 73, 76-77.

RFC's Amended Complaints assert at least two claims against each Defendant.  Count One of each Amended Complaint asserts a contract claim arising from each Defendant's breach of representations and warranties as to loans sold to RFC.  *Id.* ¶¶ 79-86.  Count Two of each Amended Complaint asserts a claim for indemnification for liabilities and losses RFC has incurred as a result of the defective loans each Defendant sold to RFC.  *Id.* ¶¶ 87-90.[9]  Those claims are being prosecuted for the benefit of RFC's creditors by the Trust, which has succeeded to all of RFC's rights and now controls RFC.  *Id.* ¶¶ 11-12.

---

[7]  *See* HSBC Am. Compl. ¶ 48; GreenPoint Second Am. Compl. ¶ 50; UBS Second Am. Compl. ¶ 59; SunTrust Second Am. Compl. ¶ 51; Mortgage Investors Am. Compl. ¶ 52; Summit Am. Compl. ¶ 52; First Mariner Am. Compl. ¶ 52.

[8]  *See* HSBC Am. Compl., Ex. D; GreenPoint Second Am. Compl., Ex. C; Mortgage Investors Am. Compl., Ex. D; First Mariner Am. Compl., Ex. D; Summit Am. Compl., Ex. D; SunTrust Second Am. Compl., Ex. D. *See also* UBS Second Am. Compl. ¶¶ 33-41 (detailing Plaintiff's AVM and borrower tax records review and the resulting findings).  The list "identifying the [UBS] loans in the AVM review and the findings connected with these loans," UBS Second Am. Compl. ¶ 36, was sent to UBS on September 22, 2014.  Nesser Decl. Ex. GG.

[9]  There is a third count against Defendant Summit for guaranty.  Summit Am. Compl. ¶¶ 95-98.

## **ARGUMENT**

Under Federal Rule of Civil Procedure 12(b)(6), this Court must accept the facts alleged in the Amended Complaints as true and draw all reasonable inferences in RFC's favor. *N.J. Carpenters Health Fund v. Royal Bank of Scotland Group, PLC*, 709 F.3d 109, 119 (2d Cir. 2013) (citing *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 715 (2d Cir. 2011)).

The Amended Complaints must also satisfy the standards set forth in *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Under *Twombly* and *Iqbal*, "to survive a motion to dismiss … a claim must contain 'sufficient factual matter … to state a claim to relief that is plausible on its face.'" *Blagman v. Apple Inc.*, No. 12-cv-5453, 2013 WL 2181709, at *1 (S.D.N.Y. May 20, 2013) (quoting *Iqbal*, 556 U.S. at 678). The plausibility requirement is satisfied when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *N.J. Carpenters*, 709 F.3d at 120 (quoting *Iqbal*, 556 U.S. at 678). "'[D]etermining whether a complaint states a plausible claim for relief will be a context specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Green v. Beer*, No. 06-cv-4156, 2009 WL 3401256, at *2 (S.D.N.Y. Oct. 22, 2009) (quoting *Iqbal*, 556 U.S. at 679).

The Second Circuit has observed that *Twombly* and *Iqbal* did not abrogate the notice pleading standard of Rule 8(a)(2), which requires only that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." *Anderson News, LLC v. Am. Media, Inc.*, 680 F.3d 162, 182 (2d Cir. 2012). A complaint is sufficient so long as it "'give[s] the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Ultimately, the relevant inquiry on a motion to dismiss "is not whether a plaintiff is likely to prevail, but whether he is entitled to offer evidence to support his claims." *Blagman*, 2013 WL 2181709 at *2 (quoting *Fernandez v. Chertoff*, 471 F.3d 45, 51 (2d Cir. 2006)).

7

The Amended Complaints meet these standards, and Defendants' motion should be denied, as discussed below.

## I.    DEFENDANTS' "FRAUD AND SECURITIES LAW DEFENSE" MISCHARACTERIZES THE LAW AND REQUIRES RESOLUTION OF COMPLEX FACTUAL QUESTIONS

Defendants—all except UBS and HSBC—argue that the complaints' indemnification claims should be dismissed "to the extent" that "the purported $10 billion in allowed claims in the global settlement in the RFC bankruptcy proceeding includes claims alleging that RFC violated the securities laws or committed fraud." Br. 10.  Defendants are wrong.  *First*, there is no merit to Defendants' contention that New York and Minnesota law bar indemnification for settled fraud claims.  To the contrary, the law of both States permits indemnification for settled fraud claims where there has been no finding of liability, which is the case here.  *Second*, there is no merit to Defendants' contention that in the Second Circuit settled securities law claims are never indemnifiable.  Rather, in the Second Circuit settled securities law claims are indemnifiable where the party seeking indemnity is actually innocent.  While Defendants urge the Court to conclude that RFC is not innocent (without presenting any evidence to support the assertion), on a motion to dismiss the Court must draw all inferences in favor of RFC.  *Third*, the complaints allege that the loans at issue were the subject of not only securities law claims and fraud claims, but *also* other types of claims that give rise to indemnity.  Defendants concede that the indemnity claim will proceed as to the loans that were the subject of other types of claims—and, critically, Defendants have failed to demonstrate that there are any loans that were not the subject of other types of claims.  Defendants may attempt to prove that this is so at later stages in the proceeding, but on this motion to dismiss, the allegation that Plaintiff is seeking indemnity for multiple types of underlying claims (and not only securities and fraud claims) must be accepted as true.

## A.   Indemnification For Settled Fraud Claims Is Permissible

Defendants incorrectly conflate indemnification for securities claims with indemnification for fraud claims. "[I]ndemnification for violations of the federal securities laws is a matter of federal, not state law," *Odette v. Shearson, Hammill & Co.*, 394 F. Supp. 946, 963 (S.D.N.Y. 1975), even if indemnification is based in contract, *Donaldson Lufkin & Jenrette Secs. Corp. v. Star Techs., Inc.*, 148 Misc.2d 880, 882 (Sup. Ct. N.Y. Cnty. 1990), *aff'd on reh'g*, 150 Misc.2d 126 (Sup. Ct. N.Y. Cnty. 1991), *aff'd mem.*, 180 A.D.2d 495 (1st Dep't 1991).   For indemnity claims based on violations of state laws, in contrast, "the Court must … ascertain which state's substantive law applies to the [indemnity] claims." *Friedman v. Hartmann*, 787 F. Supp. 411, 420 (S.D.N.Y. 1992). Here, because the indemnity claims are based on Defendants' contractual agreements with RFC, the law of New York applies to the indemnity claims based on violation of common law against UBS, SunTrust, and GreenPoint, and the law of Minnesota applies to indemnity claims against the remainder of Defendants based on underlying common law claims.

It is well established, including by Defendants' own authority, that indemnification is available under New York and Minnesota law for state law fraud claims as long as there was no finding of intentional misconduct. *See CBS Corp. v. Eaton Corp.*, No. 07-cv-11344, 2010 WL 1375169, at *2 (S.D.N.Y. Mar. 30, 2010) (cited by Br. 13) (under New York law, granting plaintiff summary judgment for contractual indemnification for costs in defending against fraud action that was dismissed on summary judgment because plaintiff was never found by the finder of fact to have acted intentionally or fraudulently); *see also Pub. Serv. Mut. Ins. Co. v. Goldfarb*, 53 N.Y.2d 392, 400-01 (1981) ("Where no finding of an intent to *injure* has been made, nothing in the public policy of this State precludes indemnity …."). As the Second Circuit held in *Gibbs-Alfano v. Burton*, 281 F.3d 12, 21 (2d Cir. 2002), "in the absence of a judgment of intentional conduct on the part of the …

9

Defendants, we do not find any reason under New York public policy to hold the Indemnification Clause unenforceable."

Similarly, under Minnesota law, the bar against indemnification of fraud claims does not apply where there "has never been a finding of illegal or even intentional misconduct." *St. Paul Fire & Marine Ins. Co. v. Perl*, 415 N.W.2d 663, 667 (Minn. 1987); *see also Am. Civil Liberties Union of Minn. v. Tarek ibn Ziyad Acad.*, 788 F. Supp. 2d 950, 967-68 (D. Minn. 2011) (same) (cited in Br. 13). Importantly, Minnesota courts have applied this principle to settling defendants, holding that because settling parties have "never been adjudged … liable by reason of willful misconduct," they are entitled to contractual indemnification. *Fireman's Fund Ins. Co. v. W. Nat. Mut. Grp.*, 851 F. Supp. 1361, 1368-69 (D. Minn. 1994).

The cases Defendants cite for the proposition that indemnification for fraud claims is barred are irrelevant because they involved actual findings or admissions of liability. For example, in *Scottsdale Insurance Co. v. RiverBank*, 815 F. Supp. 2d 1074, 1083 (D. Minn. 2011), the purported indemnitee pled guilty to charges for theft and intentional misrepresentation and the court held the insurance company did not have to defend or indemnify under an exclusion in the applicable policy. And *St. Paul Fire & Marine Ins. Co. v. C.J.*, No. A03-328, 2004 WL 614548 (Minn. Ct. App. Mar. 30, 2004), involved a court judgment that deemed debtor's misconduct intentional. Thus, because there has been no determination or admission of liability for intentional misconduct here, fraud claims against RFC are indemnifiable under applicable New York and Minnesota law.

10

**B.      Indemnification For Settled Securities Claims Involves The Complex Factual Question Of RFC's Innocence**

Defendants also argue that securities law claims are never indemnifiable. That is wrong. As courts in this Circuit have long held,[10] an indemnitee seeking indemnification for settled securities claims "is entitled to an opportunity to prove that he was without fault and is therefore entitled to indemnity" and a claim may not be dismissed under Rule 12(b)(6) unless it is clear that is impossible.[11]  *See Greenwald v. Am. Medcare Corp.*, 666 F. Supp. 489, 493 (S.D.N.Y. 1987) (internal quotation marks omitted). In *Donaldson Lufkin & Jenrette Secs. Corp.*, 148 Misc.2d 880, for example, an underwriter sought summary judgment based on a contractual indemnity clause following settlement of a securities fraud class action. Applying federal law, the court acknowledged that "[h]ere, of course, we have neither a finding of fault nor of innocence" and refused to grant summary judgment without granting plaintiff "an opportunity to prove that he was without fault and is therefore entitled to indemnity." *Id*. at 884-85. In fact, Defendants' own authority, *Credit Suisse First Boston, LLC v. Intershop Commc'ns AG*, 407 F. Supp. 2d 541, 547 (S.D.N.Y. 2006) (cited in Br. 11), confirms that a "party [that] actually demonstrates that it is without fault" may be entitled to indemnification for settled securities claims.

The case law Defendants cite is wholly inapposite. In *Globus v. Law Research Service, Inc.*, 418 F.2d 1276, 1288 (2d Cir. 1969), a jury determined that the indemnitee violated securities laws—section 17(a) of the Securities Act and Section 10(b) of the Securities Exchange Act—because the indemnitee had actual knowledge of material misstatements in a registration statement. In *In re*

---

[10]   Federal law controls the availability for indemnification of federal securities laws claims, as discussed *supra*.

[11]   Defendants argue that the Complaints do not allege that RFC was innocent of the securities claims. Br. 14. But it is the Defendants who bear the burden of establishing which of the specific claims at issue, if any, are not subject to indemnification. *See* Part III.C, *infra*. There was no reason to raise a claim of actual innocence based on the allegations in the Amended Complaints.

*Livent Sec. Litig.*, 193 F. Supp. 2d 750, 754 (S.D.N.Y. 2002) (Br. 12), defendants attempted to assert

(untimely) cross- and third-party claims for indemnification in an action involving securities fraud

allegations only, which claims the court held were prohibited because defendants were either going

to be found not liable for securities fraud, in which case there would be no liability to indemnify, or

they would be found liable, in which case indemnification would be unavailable. *See also Gabriel*

*Capital, L.P. v. Natwest Fin., Inc.*, 137 F. Supp. 2d 251, 268 (S.D.N.Y. 2000) (Br. 12) (third party

claim for indemnification not permitted because "the only claims asserted against NatWest Finance

require a finding of fault"); *Kennedy v. Josephthal & Co.*, No. 82-913, 1983 WL 1314 (D. Mass.

May 9, 1983) (Br. 11) (prohibiting indemnification sought for securities and fraud liability). This

line of cases is wholly inapplicable here, where there was no finding of liability, since RFC settled

the underlying claims.[12]

Defendants also cite other out-of-circuit authority, such as *First Golden Bancorporation v.*

*Weiszmann*, 942 F.2d 726, 728 (10th Cir. 1991) (Br. 11), which held that implied indemnification is

not available for a settled claim of a violation of Section 16(b) of the Securities Act, and *Eichenholtz*

*v. Brennan*, 52 F.3d 478, 484 (3d Cir. 1995) (Br. 12), which held that a non-settling defendant

underwriter's contractual indemnity violated public policy. A court in the Southern District of New

York has already distinguished both cases on the ground that "the parties" in those cases "all shared

fault to some extent." *Fromer v. Yogel*, 50 F. Supp. 2d 227, 238 n.8 (S.D.N.Y. 1999). *Fromer* also

distinguished *King v. Gibbs*, 876 F.2d 1275, 1282 (7th Cir. 1989), cited by Defendants (Br. 11), on

the ground that, contrary to the view of the Seventh Circuit, "the Second Circuit has not yet adopted

---

[12]  *Schaffer ex rel. Lasersight Inc. v. CC Invs. LDC*, 286 F. Supp. 2d 279 (S.D.N.Y. 2003) (cited by
Br. 11), is also inapposite. That court held, in the context of a Section 16(b) action by a shareholder
against an insider trader, that an automatic stay as a result of the nominal defendant corporation's
bankruptcy was not warranted because the corporation would not have to indemnify the trader for
violations of Section 16(b). *Id*. at 283.

th[e] view" that "indemnity is unavailable even to a party without fault." *Fromer*, 50 F. Supp. 2d at

238 n.8.[13] *Deephaven Capital Mgmt. v. Schnell*, No. 06-844, 2007 WL 101821 (D. Minn. Jan. 8,

2007) (Br. 12), addressed the wholly unrelated question whether indemnity could be *implied* for a

violation for Section 16(b) of the Securities Act.

### C.   Identification Of Any Purportedly Non-Indemnifiable Claims Requires A Factual Determination

Defendants acknowledge that the claims for indemnification should proceed with respect to

indemnifiable claims but do not attempt to meet their burden of identifying the non-indemnifiable

claims at issue.  They argue in their Motion to Dismiss only that "[m]ore than two billion dollars in

purportedly allowed claims for which Plaintiff seeks indemnification resulted from the settlement of

securities or fraud claims against RFC." Br. 2.  But it is the indemnitor (i.e., Defendants) that has the

burden of proving what amount, if any, should be subtracted to account for RFC's settlement of

federal securities claims.  As courts have held in the insurance context, the "party seeking indemnity

has the initial burden to establish that an expense was incurred in the defense of a covered claim,"

*Pfizer, Inc. v. Stryker Corp.*, 385 F. Supp. 2d 380, 386 (S.D.N.Y. 2005), which initial burden

Plaintiff met by pleading the indemnification obligations in the Amended Complaints, *see, e.g.*,

HSBC Am. Compl. ¶ 32.  "Once such proof is introduced, the burden of showing that all or a

specific portion of it was incurred in defense of a non-covered claim is on the defendant." *Pfizer,

Inc.*, 385 F. Supp. at 386 (internal quotation marks and alterations omitted).  If the defendant's

allocation is challenged, the question would be decided by a trier of fact (or on summary judgment).

*See Clifford Chance LLP v. Indian Harbor Ins. Co.*, 14 Misc. 3d 1209(A), at *3 (Sup. Ct. N.Y. Cnty.

2006) *aff'd*, 41 A.D.3d 214 (1st Dep't 2007) ("Insurers are entitled to allocate loss, or settlement

---

[13]   *In re Olympia Brewing Co. Sec. Litig.*, 674 F. Supp. 597, 622 (N.D. Ill. 1987), another case from
a district court in the Seventh Circuit cited by Defendants (Br. 12) is inapposite because it involved
indemnification for money damages paid for intentional violations of securities laws.

costs, between covered and non-covered claims, or parties, where there is a factual basis for the allocation," and the reasonableness of the allocation is a question for the trier of fact.); *see also H. S. Equities, Inc. v. Hartford Acc. & Indem. Co.*, 661 F.2d 264, 272 (2d Cir. 1981) (similar).

A similar question is involved in the cases governed by Minnesota law. *See, e.g.*, *Convent of the Visitation Sch. v. Cont'l Cas. Co.*, 707 F. Supp. 412, 416 (D. Minn. 1989) ("the court may interpret a settlement agreement and determine the allocation of payments between claims which are insured and claims which are uninsured"). And other courts have also held in the context of insurer denials of coverage based on public policy concerns that "when an insurer relies on public policy to deny coverage of a claim, the insurer must bear the burden" of proof of the non-covered loss. *Koppers Co. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1447 (3d Cir. 1996); *see also CSX Transp., Inc. v. Mass. Bay Transp. Auth.*, No. 06-40211, 2011 WL 3207770, at *10 (D. Mass. July 27, 2011) (the "indemnitor[] will bear the burden of establishing that the settlement did not properly allocate damages" as between permissible claims and those in violation of state public policy).

Again, cases on which Defendants rely, such as *Barbagallo v. Marcum LLP*, No. 11-CV-1358, 2012 WL 1664238 (E.D.N.Y. May 11, 2012), which involved claims for indemnification for intentional misconduct, did not require the complex determinations called for by Defendants' arguments here. Similarly, *Heizer Corp. v. Ross*, 601 F.2d 330, 330 (7th Cir. 1979), involved a demand for indemnity subsequent to a judgment creating liability under Rule 10b-5. *See also In re Del-Val Fin. Corp. Sec. Litig.*, 868 F. Supp. 547, 551 (S.D.N.Y. 1994) (cited in Br. 11) (summary judgment on indemnification appropriate because "the facts regarding the terms of the partial settlement and the contribution and indemnification cross-claims brought by the defendants are not disputed"). Here, where the question of identifying RFC's liabilities with respect to non-indemnifiable claims is in dispute, it may not be determined on a motion to dismiss.

## II.    THE BREACH OF CONTRACT CLAIMS ARE TIMELY

### A.    The Contract Claims Are Subject To Minnesota's Six-Year Statute Of Limitations, Not Delaware's Three-Year Statute, And Are Timely

Defendants argue that the complaint's contract claims—but not the indemnity claims[14]—are untimely under Delaware's three-year statute of limitations.  Br. 15.  Defendants are wrong.  New York's borrowing statute does not require application of Delaware's statute of limitations.  RFC suffered its injury in Minnesota, where it had its principal place of business.  *See* HSBC Am. Compl. ¶ 12.  Minnesota's statute of limitations is six years, *see Parkhill v. Minn. Mut. Life Ins. Co.*, 995 F. Supp. 983, 990 n.9 (D. Minn. 1998), and Defendants effectively concede that the claims for post-May 14, 2006, loans are timely under a six-year statute.[15]

New York's borrowing statute, CPLR § 202, provides that another jurisdiction's shorter statute of limitations applies only when the "cause of action accrued" in the other jurisdiction.[16]

---

[14]  It is hornbook law that "on actions for indemnification the statute of limitations does not begin to run until the liability becomes fixed."  *Complaint of Am. Exp. Lines, Inc.*, 568 F. Supp. 956, 965 (S.D.N.Y. 1983) (quotation marks omitted).

[15]  Defendants obliquely hint that claims for post-May 14, 2006, loans may be untimely under a six-year statute of limitations in a footnote, Br. 17 n.21, on the ground that it is "far from certain" that bankruptcy tolling provisions apply.  Defendants are plainly wrong.  As long as a claim was timely when a bankruptcy petition was filed, the longer of the applicable statute of limitations or two years from filing applies.  *See* 11 U.S.C. § 108(a).  Here, the bankruptcy proceeding was voluntarily commenced on May 14, 2012.  11 U.S.C. § 1107(a), in turn, expressly provides a chapter 11 debtor in possession (which RFC was at the time this case was filed) "all of the rights [as relevant herein] of a trustee serving in a case under this chapter."  *See also Johnson v. First Nat'l Bank of Montevido*, 719 F.2d 270, 278, n.11 (8th Cir. 1983) ("[like] the trustee, it is generally agreed that the debtor-in-possession is also entitled to the statute's privileges," including the right to a two-year extension under § 108(a)).  RFC has already prevailed on this issue in companion cases.  *See, e.g.*, Stearns Order at 9; Americash Order at 12; Mortgage Access Order at 13; Gateway R&R at 30-32; Wallick R&R at 10-11.

[16]  Defendants argue that a court should choose the shorter statute of limitations as between a non-resident's place of incorporation and its principal place of business.  Br. 16.  That is wrong.  The statute mandates application of the laws of *New York or* "the place … where the cause of action accrued."  There is only *one* place outside of New York where a party's injury can have accrued.  *McCleod v. Travelers Indem. Co.*, No. 12-cv-176, 2012 WL 5210945, at *1 (S.D.N.Y. Oct. 19,

"[A] cause of action accrues at the time and in the place of the injury." *Global Fin. Corp. v. Triarc Corp.*, 93 N.Y.2d 525, 529 (1999). Economic harm in particular is sustained where the plaintiff "resides and sustains the economic impact of the loss." *Id.* "Under the New York borrowing statute, a business's principal place of business constitutes the sole residency of that business entity." *Woori Bank v. Merrill Lynch*, 923 F. Supp. 2d 491, 494-95 (S.D.N.Y. 2013) (collecting cases); *see also Brinckerhoff v. JAC Holding Corp.*, 263 A.D.2d 352, 353 (1st Dep't 1999) ("[T]he applicable Statute of Limitations is that of Georgia, since that is where [the company] had its principal office."); *Heraeus Metal Processing v. PGP Indus.*, No. 06-00428, 2006 WL 4682143, at *10 (Sup. Ct. N.Y. Cnty. Oct. 31, 2006) ("principal place of business determines residency under CPLR § 202"); *TIG Ins. Co. v. Weil, Gotshal & Manges LLP*, No. 600944/05, 2005 WL 5959978, at *10 (Sup. Ct. N.Y. Cnty. Nov. 10, 2005) (plaintiff's claims accrued in state of its principal place of business, not incorporation).[17] Because RFC was a resident of Minnesota—its principal place of business—that is where it sustained injury for the purposes of New York's borrowing statute.

Defendants' one case, *Verizon Directories, Corp. v. Continuum Health Partners, Inc.*, 74 A.D.3d 416 (1st Dep't 2010) (cited in Br. 16) is inapposite. That court held that the mere fact that a plaintiff was authorized to do and did extensive business in New York did not make it a resident of New York for purposes of the borrowing statute. *Id.* And at the very least, the allegation that RFC's

---

2012) (cited in Br. 15-16) is not to the contrary and did not involve similar circumstances; the case was about a "car accident in New Jersey."

[17] *Accord Pricaspian Dev. Corp. v. Total S.A.*, 397 Fed. App'x 673, 675–76 (2d Cir. 2010) (claim accrued at plaintiff's residence, which was its principal place of business); *Robb Evans & Assocs. L.L.C. v. Sun Am. Life Ins.*, No. 10 Civ. 5999, 2012 WL 488257, at *3 (S.D.N.Y. Feb. 14, 2012) (same); *MIG, Inc. v. Paul, Weiss, Rifkind, Wharton & Garrison, L.L.P.*, 701 F. Supp. 2d 518, 531 (S.D.N.Y. 2010), *aff'd*, 410 F. App'x 408 (2d Cir. 2011) (same); *FDIC v. Cohen*, No. 95 Civ. 683, 1996 WL 87248, at *3 (S.D.N.Y. Feb. 29, 1996) (same); *Shamrock Assocs. v. Sloane*, 738 F. Supp. 109, 113 (S.D.N.Y. 1990) (same); *Seghers v. Deloitte & Touche USA LLP*, 17 Misc. 3d 1118(A), at *5 (Sup. Ct. N.Y. Cnty. Aug. 13, 2007) (same); *GML, Inc. v. Cinque & Cinque, P.C.*, No. 106942/01, 2005 WL 5960011, at *4 (Sup. Ct. N.Y. Cnty. Sept. 29, 2005) (same).

principal place of business was Minnesota raises a fact issue that cannot be resolved on a motion to

dismiss. *See Oxbow Calcining USA Inc. v. Am. Indus. Partners*, 96 A.D.3d 646, 651 (1st Dep't

2012) ("Any ruling on whether the borrowing statute applies would require a factual determination

as to the principal residency of [plaintiff] and its subsidiaries, which is inappropriate on motion to

dismiss."); *see also Loreley Fin. (Jersey) No., Ltd. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,

117 A.D.3d 463, 502 (1st Dep't 2014) ("Because there is an issue of fact as to where plaintiff

sustained loss, the motion court correctly denied defendants['] statute of limitations motion, with

leave to move for summary judgment later."). Defendants' motion should be denied.

> **B.    Regardless Of Whether The Delaware Statute Is Applicable, The Claims For All Loans, Including Those Sold Prior To May 14, 2006, Are Timely Under The Continuing Obligation Doctrine**

Regardless of whether Delaware's shorter statute of limitation applies (which it does not), the

contract claims for all loans—including those sold to RFC before May 14, 2006—would still be

timely under the continuing obligation doctrine, which is law in Delaware,[18] and New York and

Minnesota, as discussed below. Multiple Minnesota courts have rejected the argument that the

breach of contract claims, including with respect to pre-May 14, 2006 loans, are untimely.[19] As pled

in the Amended Complaints, the contracts between RFC and Defendants impose an ongoing

obligation on Defendants to inform RFC of any Events of Default and/or breaches of which they

---

[18]    As Defendants acknowledge, Br. 19 n.22, if this Court were to hold that Delaware's shorter statute of limitations applies, it must also borrow Delaware's tolling provision, *Portfolio Recovery Assocs., LLC v. King*, 14 N.Y.3d 410, 416 (2010), which provides that, "in cases of continuous contract and continuing breach, the statute begins to run only when full damages can be ascertained and recovered," *In re Burger*, 125 B.R. 894, 902 (Bankr. D. Del. 1991); *Smith v. Mattia*, No. 4498, 2010 WL 412030, at *4 (Del. Ch. Feb. 1, 2010) (same).

[19]    *See* Broadview Order at 13-14 (refusing to dismiss claims with respect to pre-May 14, 2006 loans because "it is relatively plausible to infer Defendants, at least in some cases, knew about deficient or improperly high-risk loans at or after the time of sale"); Stearns Order at 9 (same); First Mortgage Order at 3-4 (same); Gateway Order at 32-33 (same).

become aware, even where that knowledge is acquired after the loan is sold. At a minimum, Defendants' knowledge creates a question of fact not appropriate for resolution on a motion to dismiss. Separately, in the Client Guides incorporated into contracts governed by Minnesota law, Defendants contractually waived the "default" statute of limitations applicable to an action for breach of representations and warranties. Defendants' statute of limitations argument must be rejected.

      1.    *Defendants' Knowledge Of Defects Creates A Question Of Fact Not Appropriate For Resolution On A Motion To Dismiss*

The Amended Complaints specifically allege that Defendants represented to RFC that they would "promptly notify" RFC of "any occurrence, act, or omission" that would "materially affect" the loans. HSBC Am. Compl. ¶ 23(b) (quoting Client Guide § A201(M)). The Client Guide provides: "[Defendant] will comply with all provisions of this Client Guide and the Program Documents, and *will promptly notify* GMAC-RFC of any occurrence, act, or omission regarding [Defendant], the Loan, the Mortgaged Property or the Mortgagor of which [Defendant] has *knowledge*, which … may materially affect [Defendant], the Loan, the Mortgaged Property, or the Mortgagor." Client Guide § A201(M) (emphases added). The GreenPoint MLPWA also provides that if the Seller discovers "a breach of any of the … representations and warranties, [it] shall give prompt written notice" to RFC. GreenPoint MLPWA § 9.3 & GreenPoint Second Am. Compl. ¶ 19 (alleging continuing obligations with respect to GreenPoint); *see also* UBS Second Am. Compl. ¶ 21 & UBS MSPWA § 3.03 (same with respect to UBS). That constitutes a continuing obligation for which the statute of limitations begins again with each breach. *See Faulkner v. Arista Records LLC*, 602 F. Supp. 2d 470, 478 (S.D.N.Y. 2009) ("If a contract requires continuing performance over a period of time, each successive breach may begin the statute of limitations running anew."); *Airco Alloys Div. v. Niagara Mohawk Power Corp.*, 76 A.D.2d 68 (4th Dep't 1980) (same); *Moore v.*

18

*Medtronic, Inc.*, No. 99-20662001 WL 1636248, at *2 (D. Minn. July 30, 2001) ("Where a contract

provides for continuing performance over a period of time, each breach may begin the running of the

statute anew such that accrual occurs continuously.") (internal citation omitted).

A statute of limitations defense is an affirmative defense as to which Defendants bear the

burden of proof. *See Allen v. Dairy Farmers of Am., Inc.*, 748 F. Supp. 2d 323, 354 (D. Vt. 2010)

("A statute of limitations analysis is generally riddled with questions of fact which *the Defendants*

must establish in order to bar Plaintiffs' claims."). In order for Defendants to prevail on this defense,

Defendants would need to prove at least two issues of fact: (1) that Defendants did not have

knowledge of any defects in the loans at issue, contrary to what Plaintiff pled, *see, e.g.*, HSBC Am.

Compl. ¶ 19,[20] and (2) for the loans sold under the Client Guide, that the defective loans have

reached the end of their "life," as discussed below. Defendants have not provided the Court with any

such evidence, nor could they. Such evidence might be appropriate on a motion for summary

judgment or at trial (following discovery on issues including Defendants' knowledge)—not on a

motion to dismiss. *See Allen*, 748 F. Supp. 2d at 354 ("Because of [defendants'] fact-intensive

burden, affirmative defenses such as the statute of limitations are generally not resolved with a

motion to dismiss under Rule 12(b)(6).") (alterations and internal quotation marks omitted); *see also*

*Bice v. Robb*, 324 Fed. App'x 79, 81 (2d Cir. 2009) (reversing dismissal because question of whether

statute of limitations had run "turns on a number of unresolved issues of fact that would benefit from

discovery"); *Allen v. Egan*, 303 F. Supp. 2d 71, 79 (D. Conn. 2004) ("Determining whether the

events comprising the basis for [plaintiff's] claim are part of a single, continuing course of conduct is

fact-intensive, and therefore inappropriate [to resolve] at this stage of the proceedings.").

---

[20]  *See Ace Secs. Corp. v. HSBC*, No. 13-cv-1869, 2014 WL 1116758, at *12 (S.D.N.Y. Mar. 20, 2014) ("By alleging that [defendant] conducted due diligence on loan pools that suffered from obvious and widespread breaches, Plaintiff has adequately alleged that [defendant] discovered those breaches.").

Moreover, several Minnesota courts have rejected the argument that the claims as to pre-May 14, 2006 loans are untimely.  In the Gateway Order at 32-33, for example, the court held that "there remains a question of fact as to whether RFC's breach of contract claim based on these loans is barred by the statute of limitations"; specifically, "the dates upon which Gateway discovered the Event of Default, and its duty to notify RFC of this event was triggered, is an issue that will have to be ascertained during discovery."  *See also* First Mortgage Order at 3-4 ("timeliness determination cannot be made at this juncture, as it requires the consideration of evidence beyond the pleadings"); Broadview Order at 13-14 (refusing to dismiss claims with respect to pre-May 14, 2006 loans because "it is relatively plausible to infer Defendants, at least in some cases, knew about deficient or improperly high-risk loans at or after the time of sale"); Stearns Order at 9 (same).

  2. *Under Minnesota Law, The Client Guide Extended RFC's Statute Of Limitations*

Separately, the Client Guide states that RFC's "remedies for breach of the representations, warranties and covenants shall survive the sale and delivery of the Loan to [RFC] … and will continue in full force and effect for the remaining life of the Loans."  Client Guide § A209(C). Under Minnesota law, this provision extends the statute of limitations applicable to the instant contract claims.  *See Hillstrom v. Kenefick*, No. 04–3820, 2004 WL 2823222, at *4 (D. Minn. Dec. 9, 2004) ("[P]arties are free to adopt a contractual limitations period that differs from the relevant statute of limitations, provided the limitations period is reasonable."); *see also Collins v. Envtl. Sys. Co.*, 3 F.3d 238, 241 (8th Cir. 1993) ("It is clear that under Minnesota law, parties to a contract may waive a statute of limitations."); *Peggy Rose Revocable Trust v. Eppich*, 640 N.W.2d 601, 606 (Minn. 2002) (same).  Thus, at least those Defendants who sold loans under the Client Guide and whose contracts are governed by Minnesota law have waived the "default" statute of limitations defense by agreeing that RFC's remedies will "continue … for the remaining life of the Loans."

3.      *Defendants Cannot Avoid The Continuing Obligation Doctrine*

Defendants' three reasons as to why the continuing obligation doctrine should not apply are

unavailing.

*First*, that the "representations and warranties … are made *as of each Funding Date*,'" Br. 17

(emphasis in original) (quoting Client Guide A200 ¶ 4), is beside the point.  That provision may not

be read to invalidate other contractual clauses, including Defendants' continuing obligation to notify

RFC of any breaches, and the provision that the representations and warranties continue after the

sale and for the life of the loans.  "[C]ourts may not by construction add or excise terms, nor distort

the meaning of those used and thereby make a new contract for the parties under the guise of

interpreting the writing."  *Reiss v. Fin. Performance Corp.*, 97 N.Y.2d 195, 199 (2001) (internal

quotation marks omitted).  Defendants' reliance on Minnesota District Judge Magnuson's decision in

*Embrace Home Loans* is unavailing here.  *See RFC v. Embrace Home Loans, Inc.*, No. 13-3457,

2014 WL 2766114, *3 (D. Minn. June 18, 2014).  Judge Magnuson held therein that "[n]owhere …

in the Amended Complaint, does RFC mention any continuing obligations or contend that Embrace

breached those continuing obligations."  *Id*.  In contrast, *every single one* of the Amended

Complaints contains an allegation that Defendants breached their continuing obligation to RFC.[21]  In

any event, respectfully, Judge Magnuson is incorrect that there is any internal inconsistency between

the provisions:  even if Defendants breached their respective contracts "when [they] sold each

allegedly defective loan to RFC," *id*., Defendants also *continually* breached the contracts by failing

to notify RFC of those breaches.

---

[21]   HSBC Am. Compl. ¶ 19; GreenPoint Second Am. Compl. ¶ 19; UBS Second Am. Compl. ¶ 21;
SunTrust Second  Am. Compl. ¶ 20; Mortgage Investors Am. Compl. ¶ 20; Summit Am. Compl.
¶ 20; First Mariner Am. Compl. ¶ 20.

*Second*, and along similar lines, there is no inconsistency between the continuing obligation placed on Defendants by the governing contracts and the allegation that Defendants had engaged in "initial" underwriting of the loans. Whether Defendants knew or may have known of the defects during their initial underwriting or diligence, or whether they acquired any "new information" following their initial review of the loans, Br. 18, are not only factual questions not appropriate for resolution on a motion to dismiss, but also are inapposite. Even if Defendants acquired such knowledge at the initial reunderwriting stage, that does not absolve them of their responsibility to promptly notify RFC of the defects following the sale of the loans to RFC and, respectfully, both Judge Magnuson in *Embrace Home* Loans and Judge Doty in the Mortgage Access Order, erred in finding any such inconsistency.

*Third*, Defendants' equitable estoppel argument is a red herring. The doctrine of equitable estoppel prevents a defendant from relying on the statute of limitations defense "when the plaintiff was prevented from commencing a timely action by reasonable reliance on the defendant's fraud, misrepresentation or other affirmative misconduct." *Kosowsky v. Williard Mountain, Inc.*, 90 A.D.3d 1127, 1130 (3d Dep't 2011). Defendants argue that Plaintiff "essentially asserts that equitable estoppel or tolling bars Defendants from raising the statute of limitations." Br. 18. That is not true. Plaintiff does not argue that it was prevented from filing a timely action because of Defendants' misconduct.[22] Rather, the claims are timely, *inter alia*, because the express terms of the Client Guide (and analogous provisions of the GreenPoint and UBS contracts) created a continuing obligation for Defendants to notify RFC of material loan defects, which they have never fulfilled. In any event, factual questions raised by Defendants on this issue, such as RFC's "access to

---

[22]   Because the doctrine of equitable estoppel is not at issue, this Court need not decide whether New York's, Minnesota's, or Delaware's formulation of the doctrine would apply.

[Defendants'] loan files," Br. 19, or the point at which RFC could have "on [its] own discovered the alleged breaches," Br. 20, are inappropriate for resolution on a motion to dismiss.

### C.    Collateral Estoppel Does Not Bar The Claims On Pre-May 14, 2006 Loans

Lastly, Defendants argue that collateral estoppels bars the contract claims concerning loans originated before May 14, 2006, based on two decisions of Minnesota district courts, *Embrace Home Loans* and *Mortgage Access*.  In each case, the court granted in part and denied in part correspondent lenders' motions to dismiss, holding that the claims as to loans  sold or assigned prior to May 14, 2006, are untimely.  No final judgment has been entered in those cases, however, and the heavily factual issues are not identical to those here.  Thus, collateral estoppel does not apply.  Other Minnesota courts have also rejected this very same "untimeliness" argument.

Under Minnesota law,[23] four elements are required for collateral estoppel to apply: "(1) the issue is identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue."  *Roseberg v. Steen*, 363 N.W.2d 102, 106 (Minn. Ct. App. 1985) (alteration omitted).  "[C]ollateral estoppel" does not apply "if its application would work an injustice on the party to be estopped."  *State v. Lemmer*, 736 N.W.2d 650, 659 (Minn. 2007).

"[A] judgment becomes final when it is entered in the district court ...."  *Brown-Wilbert, Inc. v. Copeland Buhl & Co., PLLP*, 732 N.W.2d 209, 221 (Minn. 2007).  Indisputably, no judgment has been entered in either case under Fed.R.Civ.P. 54(b).  Both cases were dismissed only in part; an

---

[23]    Minnesota law governs this inquiry because the prior decisions on which Defendants rely were rendered by Minnesota federal courts sitting in diversity.  *See Taylor v. Sturgell*, 553 U.S. 880, 891 n.4 (2008) ("For judgments in diversity cases, federal law incorporates the rules of preclusion applied by the State in which the rendering court sits.") (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001)).

amended complaint has already been filed in *Embrace Home Loans*.  *See* Second Am. Compl., No. 13-3457, Dkt. 58 (D. Minn. Sep. 30, 2014).  No appeal has been taken from either case.[24]  Thus, there is no final judgment to which res judicata effect attaches.  In contrast, in all of the cases Defendants cite, final judgments *were actually entered*.  *See Aufderhar v. Data Dispatch, Inc.*, 452 N.W.2d 648, 651 (Minn. 1990) (prior final judgment in arbitration); *Milsap v. Special Sch. Dist. No. 1*, No. C8-99-79, 1999 WL 391859, at *2 (Minn. Ct. App. June 15, 1999) (prior final judgment affirmed on appeal); *Macon v. United States*, No. 05CV1721, 2006 WL 3041104, at *2 (D. Conn. Oct. 23, 2006) (prior final appealed-from judgment); *Cent. Bank Denver, N.A. v. Mehaffy, Rider, Windholz & Wilson*, 940 P.2d 1097, 1101 (Colo. Ct. App. 1997) (prior final certified judgment).

Separately, there is no identity of the issues as between the two Minnesota decisions and the actions here.  "The issue on which collateral estoppel is to be applied must be the same as that adjudicated in the prior action …."  *Hauschildt v. Beckingham*, 686 N.W.2d 829, 837 (Minn. 2004). As described above, the applicability of the continuing obligation doctrine, and thus the timeliness of contract claims concerning the pre-May 14, 2006 loans, depends on factual questions:  (1) whether Defendants did not have knowledge of any defects in the loans at issue, and (2) for loans sold under the Client Guide, whether the defective loans have reached the end of their "life."  *See supra*, 20. Because the Defendants are different, as are the loans, the questions at issue in the Minnesota actions are not identical to the questions at issue here, and thus collateral estoppel does not apply.

Finally, again, multiple Minnesota courts have rejected the argument that the breach of contract claims, including with respect to pre-May 14, 2006 loans, are untimely.[25]  Defendants'

---

[24]  Defendants argue in a footnote that a judgment retains preclusive effect "during the pendency of an appeal," Br. 22 n.26, but that is irrelevant here, where there was no judgment entered in the first place.

[25]  *See* Broadview Order at 13-14; Stearns Order at 9 (same); First Mortgage Order at 3-4 (same); Gateway Order at 32-33 (same).

suggestion that collateral estoppel bars arguments here that some Minnesota courts have accepted and other Minnesota courts have rebuffed is illogical and should be rejected.

## III.    THE COMPLAINTS SATISFY THE REQUIREMENTS OF *IQBAL*/*TWOMBLY*

### A.    The Complaints Plead Facially Plausible Claims

Finally, Defendants argue that the Amended Complaints fail to meet the requirements of *Iqbal/Twombly*.  Defendants are wrong.  All that is required by Fed. R. Civ. P. 8(a)(2) is a "short and plain statement of the claim showing that the pleader is entitled to relief," *Anderson News*, 680 F.3d at 182; also, the factual allegations must be "plausible on [their] face," *Blagman*, 2013 WL 2181709, at *1.  The allegations in the Amended Complaints plainly satisfy this standard.  The Amended Complaints contain numerous factual allegations supporting its claims, including those specifically addressing Defendants and the defective loans they sold to RFC:

- Defendants originated and sold residential mortgage loans to RFC.  *See, e.g.*, HSBC Am. Compl. ¶¶ 4, 18.

- Defendants made numerous material representations and warranties to RFC regarding the loans.  *Id*., ¶¶ 5, 23(a)-(m).

- The terms and conditions of RFC's agreements with each Defendant, including the representations and warranties, are contained in either a "Client Guide," *id*., ¶ 17 & Ex. B-1 through B-31 (attaching excerpts from Client Guide); the GreenPoint MLPWA, GreenPoint Second Am. Compl. ¶ 4 & Ex. A; or the UBS MSPWA, UBS Second Am. Compl. ¶ 18 & Ex. A.

- The Client Guides provide that Defendants' failure to comply with their representations and warranties or any other requirements constitute an "Event of Default."  *See, e.g.*, HSBC Am. Compl. ¶¶ 25-26.

- The GreenPoint MLPWA and the UBS MSPWA also expressly provide that failure to comply with the representations and warranties contained therein constitutes a breach of that contract.  *See* GreenPoint Second Am. Compl ¶ 27; UBS Second Am. Compl. ¶ 27.

- The Client Guides, GreenPoint MLPWA and UBS MSPWA provide that numerous non-exclusive, cumulative remedies are available to RFC in the event that Defendants breached any of the representations and warranties.  *See, e.g.*, HSBC Am.

Compl. ¶¶ 27-28; GreenPoint Second Am. Compl ¶ 27; UBS Second Am. Compl. ¶ 27.

- Under the Client Guides, RFC may demand that the relevant Defendants repurchase defective loans but is not required to do so.  If repurchase is not feasible, RFC can still recover all losses, costs, and expenses it has incurred as the result of an Event of Default.  RFC can also assert any remedy allowed by law or equity.  *See, e.g.*, HSBC Am. Compl. ¶ 27-28.

- Under the GreenPoint MLPWA and the UBS MSPWA, RFC has the right to seek repurchase, substitution, or payment in the event of a breach of representations and warranties.  *See* GreenPoint Second Am. Compl. ¶ 27; UBS Second Am. Compl. ¶ 27.

- Defendants also agreed to broad indemnification provisions in the Client Guides, GreenPoint MLPWA and the UBS MSPWA pursuant to which Defendants are required to indemnify RFC for all liabilities and losses arising from Defendants' breach of representations and warranties and other obligations.  *See* HSBC Am. Compl. ¶ 32; GreenPoint Am. Compl. ¶¶ 28-30; UBS Second Am. Compl. ¶ 28.

- Defendants collectively sold billions of dollars worth of loans to RFC, which RFC pooled and sold into hundreds of RMBS Trusts.  *See* HSBC Am. Compl. ¶¶ 18, 35; GreenPoint Second Am. Compl. ¶¶ 18, 35; Mortgage Investors Group Am. Compl. ¶¶ 19, 37; UBS Second Am. Compl. ¶¶ 20, 32; First Mariner Am. Compl. ¶¶ 19, 37; Summit Am. Compl. ¶¶ 19, 37; SunTrust Second Am. Compl. ¶¶ 19, 37.

- Over time, many of the loans Defendants sold to RFC defaulted or become seriously delinquent.  *See, e.g.*, HSBC Am. Compl. ¶ 46.  These delinquency and default rates exceed what would normally be expected in a given population of loans.  *Id.*  Internal reviews conducted by RFC determined that many of the loans sold to RFC by Defendants violated the Client Guides, GreenPoint MLPWA, UBS MSPWA, and/or other representations and warranties made by Defendants, resulting in breaches under these agreements.  *Id.* ¶ 47; GreenPoint Second Am. Compl. ¶ 48; UBS Second Am. Compl. ¶ 45.

- Several examples of defective loans sold by Defendants to RFC are contained in the Amended Complaints.  *See, e.g.*, HSBC Am. Compl.¶ 48(a)-(e).

- Beginning in 2008, RFC faced a growing number of claims and lawsuits stemming from the defective loans it purchased from Defendants.  *Id.* ¶¶ 53-73. Various bond insurers, trustees and institutional investors made repurchase demands and/or filed lawsuits against RFC.  *Id.*  All of the lawsuits alleged that the loans RFC sold into RMBS securitizations were defective in a variety of ways, including, among other things, borrower fraud, missing or inaccurate documentation, fraudulent or inflated appraisals, and failure to comply with state and federal law.  *Id.* ¶ 68.  The lawsuits involved RMBS securitizations containing loans sold to RFC by Defendants.  *Id.* ¶¶ 62-66.

26

- RFC filed for bankruptcy protection in May 2012 before this Court. *Id*. ¶ 72. In the bankruptcy proceedings, hundreds of proofs of claims were filed by insurers, trustees and investors alleging that loans in the RMBS securitizations were defective for the same reasons as alleged in the pre-bankruptcy lawsuits. *Id*. ¶ 73(a)-(e).

- RFC settled many of these claims and lawsuits in the bankruptcy proceedings for allowed claims totaling billions of dollars. *Id*. ¶¶ 76-77.

- RFC also paid millions of dollars in attorneys' fees to defend against, negotiate, and ultimately settle claims relating to allegedly defective loans. *Id*. ¶ 78.

- These losses and exposures stem in part from Defendants' breaches of representations and warranties to RFC with respect to loans Defendants sold to RFC. *Id*. ¶¶ 76-78.

Accepting these allegations as true and drawing all reasonable inferences in favor of Plaintiff, as this Court must, the complaints clearly state claims that are plausible on their face: Defendants made numerous material representations and warranties to RFC concerning the loans Defendants sold to RFC; Defendants contractually agreed to various remedies for any breach of their representations and warranties, including broad indemnification provisions; Defendants' loans in fact contained numerous breaches of the representations and warranties; and RFC has been damaged as a result of Defendants' breaches. Those specific factual allegations go far beyond the minimum notice pleading requirement of Rule 8, and clearly and specifically support plausible claims.

**B.    Plaintiff Is Not Required To Plead The Alleged Defects in Each And Every One Of The Large Number of Loans At Issue In These Actions**

Defendants also suggest that the Amended Complaints should have plead breaches of each loan Defendants sold RFC. Br. 25. Yet, Defendants collectively sold over 42,300 loans with an original principal balance of over $12.3 billion to RFC over the course of the relationships alleged in the Amended Complaints.[26] The loans at issue in the HSBC suit alone had a value of more than $2.9

---

[26]    *See* HSBC Am. Compl. ¶¶ 4, 18, 35; GreenPoint Second Am. Compl. ¶¶ 4, 18, 35; Mortgage Investors Am. Compl. ¶¶ 4, 19, 37; UBS Second Am. Compl. ¶¶ 4, 20, 32; First Mariner Am. Compl. ¶¶ 4, 19, 37; Summit Am. Compl. ¶¶ 4, 19, 37; SunTrust Second Am. Compl. ¶¶ 4, 19, 37.

27

billion and were sold into more than 165 RMBS trusts. HSBC Am. Compl. ¶¶ 18, 35. In other RMBS litigation where, as here, a large number of loans are involved, courts have routinely refused to require plaintiffs to set forth in the complaint each and every breach for every one of the dozens, hundreds or even thousands of loans involved, and for good reason.

This principle was recently confirmed by the Southern District of New York in another RMBS case involving defective loans. *See Ace Sec. Corp. v. DB Structured Prods., Inc.*, No. 13-cv-1869, 2014 WL 1116758 (S.D.N.Y. March 20, 2014). In *Ace*, the defendant argued that the complaint should be dismissed because the plaintiff had not alleged specific defects regarding each loan at issue. The court rejected this contention, noting that "several courts have found that, as a matter of pleading sufficiency, a complaint for repurchase need not contain specific allegations regarding each loan at issue." *Id.* at *13 (citing cases) (internal quotation marks omitted).

Numerous other courts have reached the same conclusion both under the liberal notice pleading standards applicable to contract claims, and even under the heightened pleading standards for fraud claims (which are not applicable here). *See Okla. Police Pension & Ret. Sys. v. U.S. Bank Nat'l Ass'n*, 291 F.R.D. 47, 66-67 (S.D.N.Y. 2013) ("allegations … render plausible the plaintiff's claims that the issuer breached its obligations" even though "plaintiff has failed to allege the specific facts necessary to show that any of the mortgages … were in fact defective") (internal quotation marks omitted); *Hapoalim B.M. v. Bank of America Corp.*, No. 12-CV-4316, 2012 WL 6814194, at *7 (C.D. Cal. Dec. 21, 2012) ("There is no need to allege that the specific loans backing a plaintiff's securities contained underwriting defects …."); *see also CIFG Assur. N. Am., Inc. v. Goldman Sachs & Co.*, No. 652286/2011, 2012 WL 1562718 (Sup. Ct. N.Y. Cnty. May 1, 2012) (under the "liberal notice pleading standards" for contract claims, the "complaint need not make specific representations as to each of the individual loans"), *aff'd in relevant part*, 106 A.D.3d 437, 438 (1st Dep't 2013)

28

("Notice of breach was sufficiently alleged."); *Assured Guar. Mun. Corp. v. Flagstar Bank FSB*, 920 F. Supp. 2d 475, 513 (S.D.N.Y. 2013) ("To the extent that [loan seller] argues that it must be notified as to each loan as to which a material breach is claimed with sufficient specificity to allow [loan seller] to identify the loan and investigate the alleged breach, this requirement inappropriately places the burden of notification on [loan purchasers].").

In Plaintiff's other actions against correspondent lenders, 9 judges in 31 cases have already held that complaints substantially similar to those here satisfy applicable pleading standards. *See, e.g.*, Mortgage Access Order at 8-10 (RFC had "sufficiently alleged breach of the warranties."); Broadview Order at 9-12 (RFC's pleadings were sufficient and noting "RFC will not be required to plead with loan-by-loan specificity in the cases at issue here). Requiring such specificity in cases involving hundreds or thousands of loans contravenes the requirement of pleading a 'short and plain statement' of claims.").[27] That is further support for the conclusion that the liberal pleading standard of Rule 8(a)(2) has been satisfied here.

Relying on Judge Magnuson's outlier decision in *Embrace Home Loans, Inc.*, 2014 WL 2766114, Defendants argue this case is distinguishable from *Ace* on the ground that the Amended Complaints do not contain a comparable amount of loan-level detail. That is incorrect for two reasons. *First*, the complaint before Judge Magnuson in *Embrace Home Loans* did not allege an extensive forensic review. *See* Am. Compl. ¶¶ 36-45, *Embrace Home Loans*, No. 13-3457, Dkt. 27 (Mar. 28, 2014). By contrast, the complaints before this Court allege the results of extensive

---

[27] *See also* Americash Order 7, 9; SouthTrust Order 7-9; Gateway R&R 22, 27-28; Terrace R&R 15-16, 20; Wallick R&R 6; Mortgage Outlet Tr. 75-78; Mortgage Outlet Order 5; Stearns Order 6; First Mortgage Order 4-5; Cornerstone Order 2; Community West Order at 26-34; Cherry Creek Order at 4; First Guaranty Order at 1; Ark-La-Tex Order at 5.

forensic reviews of the loans at issue and includes details of those reviews.[28]  The  forensic reviews were designed to assess Defendants' compliance with representations and warranties about the subject properties' appraised values and owner-occupancy rates with respect to the loans at issue. *See, e.g.*, HSBC Am. Compl. ¶ 37.  They consisted of AVMs and examinations of borrowers' tax records with respect to the underlying loans.  *Id*.[29]  The complaints also provide Defendants with the results of those analyses in detailed lists of defective loans in the exhibits to the Amended Complaints, which specify the representations and warranties the loan breached.[30]  In total, the complaints provide Defendants with an itemized account of *7,820 loans that breached the representations and warranties* in some way—allegations that were not present in the complaints that Judge Magnuson considered.[31]  *Second*, Judge Magnuson erred in his reading of *Ace*, in holding that "the plaintiff" in *Ace* purportedly undertook a forensic review and provided the defendant with a list of allegedly defective loans prior to filing suit.  *Embrace Home Loans*, 2014 WL 2766114, at *5. Actually, the plaintiff in *Ace* had not done any independent review of the loans at all—or even a sampling of the loans.  Rather, "an unnamed 'Certificateholder'" had asserted that there were defects in a list of loans.  *Ace*, 2014 WL 1116758, at *4.  And the *Ace* court explicitly stated that it was not

---

[28]  HSBC Am. Compl. ¶¶ 37-45; GreenPoint Second Am. Compl. ¶¶ 37-45; Mortgage Investors Am. Compl. ¶¶ 39-47; First Mariner Am. Compl. ¶¶ 39-47; Summit Am. Compl. ¶¶ 39-47; SunTrust Second Am. Compl. ¶¶ 39-47; UBS Second Am. Compl. ¶¶ 33-41.

[29]  "AVM is a tool in the mortgage industry that considers objective criteria such as the sale prices of comparable properties … to determine the true market value of the property in question at a specific point in time."  HSBC Am. Compl. ¶ 38.  The tax records review "investigated HSBC's representations as to the owner-occupancy status of the loans HSBC sold to RFC."  *Id*. ¶ 42.

[30]  That detailed list is attached to each Amended Complaint as Exhibit D, except GreenPoint, *see* GreenPoint Second Am. Compl., Ex. C; and UBS, *see supra* n.8 & UBS Ex. C.

[31]  *See* HSBC Am. Compl., Ex. D; GreenPoint Second Am. Compl., Ex. C; Mortgage Investors Am. Compl., Ex. D; First Mariner Am. Compl., Ex. D; Summit Am. Compl., Ex. D; SunTrust Second Am. Compl., Ex. D.  UBS Ex. C lists an additional 761 loans.

considering, and did not need to consider, the alleged list of loans prepared by the unnamed, non-party, certificateholder. *Id.* at *12.

In sum, the Complaints make numerous factual detailed allegations, including the allegations that an investigation of Defendants' loans sold to RFC revealed breaches of the applicable representations and warranties. *See* HSBC Am. Compl. ¶¶ 47-48(a)-(e). The liberal pleading standard of Rule 8 applies and other courts have already found that Plaintiff sufficiently alleged its claims under *Iqbal* and *Twombly*. Drawing all reasonable inferences in Plaintiff's favor, as this Court must, these allegations are more than sufficient to establish plausible claims against Defendants.

### C.     The Complaints Sufficiently Plead The Connection Between Loans Defects and Losses

Defendants also contend that the complaints fail to allege a link between the defects in their loans and RFC's losses and liabilities. That is not correct. The Complaints make several factual allegations establishing such a connection. Specifically, they allege that RFC was subjected to a growing number of claims and lawsuits in 2008 stemming from defective loans sold by Defendants to RFC. *See, e.g.*, HSBC Am. Compl. ¶¶ 53-71. The Complaints further allege that the lawsuits claimed that loans sold by RFC into RMBS securitizations were defective in a number of ways, including, among other things, borrower fraud, missing or inaccurate documentation, fraudulent or inflated appraisals and failure to comply with state and federal law. *Id*. ¶ 68. The Complaints also provide specific examples of such lawsuits involving securitizations backed by the Defendants' loans. *Id.* ¶¶ 62-66. And they further allege that hundreds of proofs of claims were filed in the bankruptcy proceeding before this Court alleging similar claims related to purportedly defective loans in RFC RMBS securitizations. *Id*. ¶ 73(a)-(e). RFC ultimately settled these claims and lawsuits in the bankruptcy proceedings for billions of dollars. *Id*. ¶¶ 76-77. The Complaints also

allege that RFC incurred millions of dollars in attorneys' fees to defend against, negotiate and settle these claims.  *Id.* ¶ 78.  Finally, the Complaints allege these losses and liabilities are attributable in part to Defendants' breaches of representations and warranties made with respect to loans they sold to RFC.  *Id.* ¶¶ 76-78.

These allegations plausibly identify how RFC's losses are linked to the defective loans sold by Defendants to RFC and give Defendants fair notice of the claims at issue.  That is all Rule 8(a)(2) requires.  To the extent Defendants suggest that the Complaints should have connected alleged losses with defects in specific loans, again, loan-specific allegations are not required in RMBS cases of this magnitude.  The Complaints' allegations are more than sufficient to satisfy the liberal pleading standard under Rule 8.[32]

**CONCLUSION**

Defendants' Motion to Dismiss should be denied.

DATED:   New York, NY                    QUINN EMANUEL URQUHART &
         October 23, 2014                  SULLIVAN, LLP

                                      By:   /s/ Isaac Nesser
                                           Peter E. Calamari
                                           David Elsberg
                                           Isaac Nesser
                                           Yelena Konanova
                                         51 Madison Avenue, 22nd Floor
                                           New York, New York  10010
                                           Telephone:  (212) 849 7000
                                           Facsimile:  (212) 849-7100
                                           PeterCalamari@quinnemanuel.com
                                           DavidElsberg@quinnemanuel.com
                                           IsaacNesser@quinnemanuel.com
                                           YelenaKonanova@quinnemanuel.com

                                         *Attorneys for Plaintiff*

---

[32]   Summit and First Mariner note that the complaints against them were filed some number of minutes after midnight on July 25, 2014—a delay that was not prejudicial and as to which defendants seek no relief.