**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE RESCAP LIQUIDATING TRUST MORTGAGE PURCHASE LITIGATION | Case No. 12-12020 (MG) (Ch. 11) <br> Adv. Proc. No. 14-07900 (MG) |
| *This document relates to:* <br><br> ResCap Liquidating Trust v. GreenPoint Mortg. Funding, Inc., Adv. Proc. No. 14-01916 (MG) <br><br> ResCap Liquidating Trust v. Summit Fin. Mortg. LLC, Adv. Proc. No. 14-01997 (MG) | |

**PLAINTIFF'S MEMORANDUM OF LAW**
**IN OPPOSITION TO GREENPOINT AND SUMMIT'S**
**<u>INDIVIDUAL MOTION TO DISMISS</u>**

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...........................................................................................................1

ARGUMENT ..........................................................................................................................................2

I.   RFC'S RIGHT TO PURSUE ITS CLAIMS AGAINST GREENPOINT AND
     SUMMIT WAS NOT ASSIGNED AWAY IN THE SECURITIZATIONS ......................2

     A.   Defendants' Motion Is Procedurally Improper ........................................................2

     B.   The Securitization Documents Confirm That RFC Did Not Assign Away
          Its Right To Sue Defendants ....................................................................................4

     C.   Courts Have Rejected Similar Arguments In Analogous Circumstances ................7

II.  THE SOLE REMEDY PROVISION DOES NOT BAR MONETARY
     RECOVERY ..........................................................................................................................8

CONCLUSION ....................................................................................................................................10

# TABLE OF AUTHORITIES

**Page**

## Cases

*ACE Sec. Corp. Home Equity Loan Trust, Series 2007-HE v. DB Structured Prods., Inc.*,
No. 13-cv-1869, 2014 WL 1116758 (S.D.N.Y. March 20, 2014) .............................................9

*Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*,
No. 11-cv-2375, 2011 WL 5335566 (S.D.N.Y. Oct. 31, 2011) ...............................................10

*Assured Guar. Mun. Corp. v. UBS Real Estate Sec., Inc.*,
No. 12CV1579, 2012 WL 3525613 (S.D.N.Y. Aug. 15, 2012) .................................................5

*In re Bank of New York Mellon*,
42 Misc. 3d 1237(A) (Sup. Ct. N.Y. Cnty. 2014) ......................................................................8

*California Public Emps.' Ret. Sys. v. Shearman & Sterling*,
95 N.Y.2d 427 (2000) .............................................................................................................7, 8

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002) .......................................................................................................3

*Cortec Industries, Inc. v. Sum Holding L.P.*,
949 F.2d 42 (2d Cir. 1991) .........................................................................................................4

*Deutsche Alt-A Sec. Mortg. Loan Trust, Series 2006-OA1 v. DB Structured Prods., Inc.*,
958 F. Supp. 2d 488 (S.D.N.Y. 2013) .......................................................................................9

*Home Equity Mortg. Trust Series 2006-5 v. DLJ Mortg. Capital, Inc.*,
No. 653787/2012, 2013 WL 5314331 (Sup. Ct. N.Y. Cnty. Sept. 18, 2013) ...........................9

*Int'l Equity Investments, Inc. v. Opportunity Equity Partners, Ltd.*,
472 F. Supp. 2d 544 (S.D.N.Y. 2007) .......................................................................................6

*LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*,
180 F. Supp. 2d 465 (S.D.N.Y. 2001) .......................................................................................8

*Nomura Asset Acceptance Corp. Alternative Loan Trust v. Nomura Credit & Capital, Inc.*,
No. 653390/2012, 2014 WL 2890341 (Sup. Ct. N.Y. Cnty. June 26, 2014) ......................9, 10

*North Fork Bank v. Cohen & Krassner*,
44 A.D.3d 375 (1st Dep't 2007) ................................................................................................8

*Prod. Res. Grp., L.L.C. v. Martin Prof'l*,
907 F. Supp. 2d 401 (S.D.N.Y. 2012) ....................................................................................2, 6

*Saco I Trust 2006-5 v. EMC Mortgage, LLC*,
No. 651820/2012, 2014 WL 2451356 (Sup. Ct. N.Y. Cnty. May 29, 2014) .............................9

*Stewardship Credit Arbitrage Fund, LLC v. Charles Zucker Culture Pearl Corp.*,
31 Misc.3d 1223(A) (Sup. Ct. N.Y. Cnty. May 4, 2011) ..........................................................8

*U.S. Bank Nat'l Ass'n v. DLJ Mortg. Capital, Inc.*,
   42 Misc.3d 1213(A) (Sup. Ct. N.Y. Cnty. Jan. 15, 2014) ..........................................................9

*U.S. Bank Nat'l Ass'n v. Nesbitt Bellevue Prop. LLC*,
   859 F. Supp. 2d 602 (S.D.N.Y. 2012).......................................................................................8

# Documents Cited and Terms Referenced

| | |
|---|---|
| **2005-KS4 Assignment Agreement** | Assignment and Assumption Agreement by and between RFC and Residential Asset Securities Corporation regarding the RASC Series 2005-KS4 Trust, Residential Asset Mortgage Products, Inc., dated May 5, 2005, attached as Exhibit G to Nesser Decl. |
| **2005-KS4 ProSupp** | Excerpt of Prospectus Supplement for RASC Series 2005-KS4 Trust, dated May 2, 2005, attached as Ex. F to Nesser Decl. |
| **2005-KS4 PSA** | Excerpt of Series Supplement, Pooling and Servicing Agreement regarding the RASC Series 2005-KS4 Trust, dated April 1, 2005, attached as Ex. E to Nesser Decl. |
| **2006-QA11 Assignment Agreement** | Assignment and Assumption Agreement by and between RFC and RALI regarding the RALI Series 2006-QA11 Trust, dated December 28, 2006, attached as Exhibit A to the Declaration of Theodore Snyder in Support of Defendants' Motion to Dismiss, No. 14-adv-7900-mg, Dkt. 13 (Bankr. S.D.N.Y. Sep. 8, 2014) ("Snyder Decl.") |
| **2006-QA11 ProSupp** | Excerpt of Prospectus Supplement for RALI Series 2006-QA11 Trust, dated December 21, 2006, attached in relevant part as Ex. J to Nesser Decl. |
| **2006-QA11 PSA** | Excerpt of Series Supplement, Pooling and Servicing Agreement regarding the RALI Series 2006-QA11 Securitization, dated December 1, 2006, attached as Exhibit B to Snyder Declaration |
| **2007-SP2 Assignment Agreement** | Assignment and Assumption Agreement by and between RFC and Residential Asset Mortgage Products, Inc., regarding the RAAC Series 2007-SP2 Trust, dated July 11, 2007, attached as Ex. N to Nesser Decl. |
| **2007-SP2 ProSupp** | Excerpt of Prospectus Supplement for RAAC Series 2007-SP2 Trust, dated July 9, 2007, attached as Ex. M to Nesser Decl. |
| **Br.** | Defendants GreenPoint and Summit's Memorandum of Law in Support of Their Motion to Dismiss the Amended Complaints, No. 14-adv-7900-mg, Dkt. 13. |
| **Broadview Order** | *RFC v. Broadview Mortg. Corp.*, No. 13-3463, Dkt. 64 (D. Minn. Aug. 19, 2014) (Montgomery, J.), attached as Ex. Y to Nesser Decl. |
| **Client Contract** | Client Contract between RFC and Summit, attached as Ex. A to Summit Amended Complaint |
| **Client Guide** | Client Guide governing Summit's sale of loans to RFC, attached as Ex. B1 to B31 to Summit Amended Complaint |
| **Defendants** | GreenPoint and Summit |
| **GreenPoint** | GreenPoint Mortgage Funding, Inc. |
| **GreenPoint Second Am. Compl. or SAC** | GreenPoint Second Amended Complaint, No. 14-1916-mg, Dkt. 20 (Bankr. S.D.N.Y. July 24, 2014) |
| **GreenPoint Minn. Order** | *RFC v. GreenPoint*, No. 13-cv-03538, Dkt. 70 (D. Minn. Oct. 15, 2014) |
| **GreenPoint MLPWA** | Mortgage Loan Purchase And Warranties Agreement between |

|  | RFC and GreenPoint, dated as of December 16, 2005, attached as Ex. A to GreenPoint Amended Complaint |
|---|---|
| **Mortgage Outlet Order** | *RFC v. The Mortgage Outlet, Inc*., No. 13-cv-3447, Dkt. 52 (D.Minn. Oct. 1, 2014) (Schiltz, J.), attached as Ex. CC to Nesser Decl. |
| **Nesser Decl.** | Declaration of Isaac Nesser in support of RFC's Opposition to Collective Motion to Dismiss, No. 14-07900 (Bankr. S.D.N.Y. Oct. 23, 2014), filed contemporaneously herewith |
| **RALI** | Residential Accredit Loans, Inc. |
| **RFC** | Residential Funding Company LLC |
| **Summit** | Summit Financial Mortgage, LLC |
| **Summit Am. Compl.** | Summit Amended Complaint, No. 14-1996-mg, Dkt. 30 (Bankr. S.D.N.Y. July 25, 2014) |
| **Trust** | ResCap Liquidating Trust |

The Trust, as successor in interest to RFC, respectfully submits this memorandum of law in opposition to the Motion to Dismiss filed by GreenPoint and Summit.

## PRELIMINARY STATEMENT

GreenPoint makes two arguments in its supplemental motion to dismiss; Summit joins the first one only. Each should be rejected. *First*, Defendants argue that, for all securitized loans at issue (not the whole loans), RFC assigned its claims against Defendants to securitization trusts. That is wrong and has been rejected by Minnesota courts.[1] The argument depends on an incomplete picture of the underlying transactions—just two documents for one securitization, 2006-QA11 (there are 62 securitizations at issue)—and on facts and documents not properly before the Court on a motion to dismiss. This entire aspect of the motion to dismiss is premature—a disguised summary judgment motion—and should be denied as such. Moreover, the plain language of the cited documents and the transaction structure refute Defendants' argument. In 2006-QA11, RFC assigned only certain *loans*, not any of RFC's rights against Defendants or any other loan originator under the contracts that underlie the claims here, as confirmed by the 2006-QA11 Prospectus Supplement. Under certain other agreements in securitizations at issue here, which Defendants ignore, RFC's retention of its right to sue Defendants is even more explicit. In any event, it would make no sense for RFC to assign to the trusts its rights for indemnification from Defendants, which rights are meant to protect RFC, *inter alia*, from suits by the securitization trusts. Defendants' argument also fails under New York law, which governs the Assignment Agreement, as courts have held that the language used in that Agreement is insufficient to transfer causes of action.

*Second*, GreenPoint argues that the sole remedy provision in the GreenPoint MLWPA bars claims for monetary damages. Numerous courts have rejected that argument in construing

---

[1] GreenPoint Minn. Order at 6; Broadview Order at 17-18; Mortgage Outlet Order at 14-15.

materially identical sole remedy provisions. Those courts have held that claims for money damages are permitted where repurchase is or may be impossible, like here, where the loans have been sold.

## ARGUMENT

**I.     RFC'S RIGHT TO PURSUE ITS CLAIMS AGAINST GREENPOINT AND SUMMIT WAS NOT ASSIGNED AWAY IN THE SECURITIZATIONS**

Defendants argue that RFC assigned away its claims against Defendants when it sold certain of the subject mortgage loans (not the whole loans alleged in the FAC) as part of the securitization process. This argument is improper on a motion to dismiss, is refuted by the plain language and the structure of the transactions, and has been rejected by New York courts. It must be rejected here.[2]

### A.     Defendants' Motion Is Procedurally Improper

Defendants present an incomplete picture of the relevant securitization transactions. The instant actions against Defendants involve 62 different trusts into which the 3,881 securitized loans identified in the Complaints were placed. *See* GreenPoint Second Am. Compl. ¶¶ 4, 35; Ex. B-1; Summit Am. Compl. ¶¶ 4, 37; Ex. C-1. Yet, Defendants purport to extrapolate from one Assignment Agreement in one RMBS trust, 2006-QA11, which contained 249 GreenPoint loans and no Summit loans at all, that RFC assigned away its rights against GreenPoint and Summit in all the securitizations. That is untenable.[3] The transaction documents Defendants rely upon also reference numerous related agreements, none of which is before the Court. Those documents would have to be considered, if the Court chooses to consider the documents submitted by Defendants. *See Prod.*

---

[2] In a footnote referencing SunTrust's motion to dismiss in No. 13-adv-1820, GreenPoint argues that RFC lacked standing to commence this action because its claims had already been assigned to the Trust. Br. 2 n.2. GreenPoint is wrong—the claims did not transfer until after RFC sued GreenPoint, and the Trust in any event can continue prosecuting this action as the "real party in interest." RFC incorporates its arguments in opposition to SunTrust's motion.

[3] Defendants list 28 securitizations in a footnote and assert that those securitizations contain "[i]dentical assignment language," Br. 5 n.7, but do not attach the documents. In any event, only 22 of the 29 Trusts at issue in GreenPoint are listed, and only one of the 33 Trusts in Summit.

2

*Res. Grp., L.L.C. v. Martin Prof'l*, 907 F. Supp. 2d 401, 413 (S.D.N.Y. 2012) ("When interpreting contracts, it is accepted that separate agreements executed contemporaneously and that are part of a single transaction are to be read together."). Defendants' premature and procedurally improper argument based on two transaction documents from one securitization must be rejected.

A Minnesota district court, considering *this exact argument by GreenPoint* against RFC has just held "that the issues presented by Plaintiff's purported assignment of its claims against Defendant are premature." GreenPoint Minn. Order at 6; *see also* Broadview Order at 17-18 ("[T]he issue of RFC's right to enforce the Client Contracts goes beyond RFC's allegations. Whether RFC assigned away or retained its rights in the Client Contracts will depend on the discovery and evaluation of the relevant agreements"; "whether RFC is the proper entity to enforce such agreements will require an evaluation of evidence beyond the pleadings."); *see also* Mortgage Outlet Order at 14-15 (whether, "RFC assigned its rights under its contracts with defendants … is not an issue of standing …. The Court does not have before it all of the relevant purchase agreements, and therefore it would be premature to rule on defendants' argument at this time."). This Court should reach the same conclusion.

Moreover, the motion to dismiss is procedurally improper as it relies on documents outside the pleadings and should be denied as a premature motion for summary judgment. The Second Circuit has held that "a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession [of the document by the plaintiff] is not enough." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (emphasis in original); *see also id.* at 154 (when "presented with matters outside the pleadings," court has "two options": "exclude[] the extrinsic documents" or "convert the motion to one for summary judgment"). Here, Plaintiff did not

3

rely on the "terms and effect" of the transaction documents proffered by Defendants in drafting its Amended Complaints and those transaction documents are not integral to the Complaints. Defendants' authority, *Cortec Industries v. Sum Holding*, 949 F.2d 42 (2d Cir. 1991), in fact, requires that Defendants' motion, to the extent it relies on those documents, be denied as an improper and premature summary judgment motion. In *Cortec*, the court held that a defendant may rely upon "a prospectus upon which [plaintiff] solely relies and which is integral to the complaint," or, on "a motion to dismiss a complaint alleging securities fraud, … [on] public disclosure documents required by law to be and which actually have been filed with the SEC." *Id*. at 47. Here, Plaintiff did not "solely rel[y]" on the transaction documents in preparing the Amended Complaints, and the Amended Complaints do not allege securities fraud; thus, the documents may not be considered.

### B. The Securitization Documents Confirm That RFC Did Not Assign Away Its Right To Sue Defendants

Even if it were appropriate to consider the extraneous transaction documents Defendants submitted with their motion to dismiss, which it is not, Defendants' arguments fail on their merits. Defendants argue, based on a provision of the 2006-QA11 Assignment Agreement, that RFC assigned away in the securitizations its rights against Defendants. Not so. The plain language and the transaction structure demonstrate that RFC did not assign the rights against Defendants under the 2006-QA11 (or any similarly-phrased) Assignment Agreement. Moreover, in other agreements in certain securitizations at issue—e.g., 2007-SP2 and 2005 KS4, which Defendants ignore—RFC's reservation of rights to sue correspondents under the Client Guide was even more explicit.

*First*, under agreements like the one Defendants cite, 2006-QA11, RFC assigned to the trusts the mortgage loans only. *See* 2006-QA11 Assignment Agmt. ¶ 2 (RFC assigned to RALI only the "right, title and interest in and to the Mortgage Loans"); 2006-QA11 PSA § 2.01 (RALI assigned the

4

"Mortgage Loans" to the Trustee).[4] "Mortgage Loans" are defined to include the underlying loan documents and agreements such as the note, mortgage, and mortgage file only. 2006-QA11 PSA § 2.01.[5] That definition comports with the definition of "loan" under New York law, as a transaction in which a borrower incurs debt for personal purposes, secured by a mortgage on real estate that contains a home. RPAPL § 1304. The definition of "Mortgage Loans" includes no reference to the Seller Contracts (including the GreenPoint MLWPA and Summit Client Contract) or the Client Guide, let alone any of RFC's legal rights or remedies under them. *See* 2006-QA11 PSA § 2.01. Thus, the trusts received from RALI only RFC's rights in *each loan transaction* in the typical sense of that term, meaning a transaction between a borrower and a lender for money in exchange for collateral. Because the borrowers never even saw the Client Guide, RFC's rights under the Client Guide were not assigned to the trusts through an assignment of "loans."

Moreover, the Assignment Agreement states that the assignment *does include* certain rights "arising from" a defined list of "Assigned Contracts." 2006-QA11 Assignment Agmt. ¶ 2. The Seller Contracts (including the GreenPoint MLPWA, and the Summit Client Contract and the Client Guide) are *not* included in the definition of "Assigned Contracts."[6] Thus, RFC's rights under Seller Contracts were not assigned by the Assignment Agreement. *See Assured Guar. Mun. Corp. v. UBS Real Estate Sec., Inc.*, No. 12CV1579, 2012 WL 3525613, at *3 (S.D.N.Y. Aug. 15, 2012) (discussing contract interpretation principle that the express mention of one thing excludes others).

*Second*, the Series 2006-QA11 Prospectus Supplement confirms RFC did not assign its rights

---

[4] RALI could not have assigned to the securitization trusts under the PSA more rights than RALI itself received from RFC under the Assignment Agreement.

[5] Definitions of capitalized terms are contained in the 2006-QA11 PSA. *See* 2006-QA11 Assignment Agreement ¶ 1.

[6] The Assigned Contracts are "Credit Support Pledge Agreement"; the "Funding and Pledge Agreement among the Mortgagor or other Person pledging the related Pledged Assets"; and the "Additional Collateral Agreement." 2006-QA11 Assignment Agr. ¶ 2.

5

against Defendants.[7] It explicitly states RFC "will not assign" the representations RFC received from loan sellers such as Defendant to the securitization trusts.[8] The transaction documents for the one securitization Defendants feature refute the argument that RFC assigned its rights.

*Third*, Defendants ignore that in assignment agreements in other securitizations containing Defendants' loans, RFC even more expressly retained its rights against Defendants. *See, e.g.*, 2007-SP2 Assignment Agmt. ¶ 6 ("[N]otwithstanding the assignment … RFC shall have the concurrent right to exercise remedies and pursue indemnification upon a breach by a Seller under any Seller Contract of any of its representations and warranties.").[9] The 2007-SP2 Prospectus Supplement (at S-42) likewise confirms RFC "will not assign" Defendants' representations and warranties.[10]

Finally, Defendants represented in the Client Guide that they were aware RFC could securitize the loans, and would indemnify RFC if Defendants' misstatements harmed RFC. GreenPoint Second Am. Compl. ¶¶ 22, 30-31 (citing GreenPoint MLPWA §§ 9.2(k), 14); Summit Am. Compl. ¶¶ 23, 33 (citing Client Guide A202(II); 206(D); 212). Defendants' interpretation here is thus implausible and commercially unreasonable: The purpose of the Client Guide's indemnity provision was to protect RFC against suits by loan purchasers. It makes no sense that RFC would sell that indemnification right to the very same purchasers who assert indemnifiable claims.

---

[7] The 2006-QA11 Prospectus Supplement must be considered together with the Assignment Agreement and the PSA submitted by Defendants, if those documents are to be considered by the Court. *See Prod. Res. Grp., LLC*, 907 F. Supp. 2d at 413; *Int'l Equity Investments, Inc. v. Opportunity Equity Partners, Ltd.*, 472 F. Supp. 2d 544, 554 n.83 (S.D.N.Y. 2007) (court must look to "the context within which [the] contract was formed") (citation omitted).

[8] *See* 2006-QA11 ProSupp, at S-38 ("Residential Funding *will not assign* to the depositor, and consequently the depositor will not assign to the trustee for the benefit of the certificateholders, any of the representations and warranties made by the sellers or the right to require the related seller to repurchase any such mortgage loan in the event of a breach of any of its representations and warranties.") (emphasis added).

[9] *See also* 2005-KS4 Assignment Agreement ¶ 6 (same).

[10] *See also* 2005-KS4 ProSupp at S-21 (same).

6

### C.    Courts Have Rejected Similar Arguments In Analogous Circumstances

The securitization documents are governed by New York law.[11] In similar circumstances, New York courts have considered and rejected the same argument that Defendants make. For example, in *California Public Employees' Retirement System ("CalPERS") v. Shearman & Sterling*, 95 N.Y.2d 427 (2000), non-party Equitable originated and closed commercial property loans pursuant to a "Correspondent Agreement," and entered into an "Omnibus Assignment of Loan Documents" in which it assigned all of its "right, title and interest in, to and under the [loan] documents" to plaintiff CalPERS. *Id.* at 431-32. Plaintiff CalPERS alleged that this assignment of "all" of Equitable's rights permitted it to assert any claims Equitable had arising from the Correspondent Agreement. The New York Court of Appeals soundly rejected this argument:

> The claim alleged here—that Shearman & Sterling prepared a defective note by materially altering the prepayment and acceleration provisions of the standard form note and the terms of the commitment—does not arise from the note itself or from the loan documents. Rather, CalPERS' claim against Shearman & Sterling is premised on the firm's failure to prepare loan documents for Equitable that complied with the terms of the Correspondent Agreement. Thus, while "all" of Equitable's rights to and under the loan documents were assigned to CalPERS, "all" in this case does not include the right to assert Equitable's claims, whatever they may be, against Shearman & Sterling arising from the firm's failure to observe the specifications of the Correspondent Agreement[.]

*Id.* at 436. As the court noted, the "Omnibus Assignment refers only to rights and interests under the loan documents … between Equitable and [the borrower] …. The assignment did not include a cause of action arising outside the loan documents themselves." *Id.* at 435-36.

Here, as in *Shearman*, RFC sold and assigned in the securitizations its "right, title and interest in, to and under" the subject loans. *Shearman* makes clear that this "assignment" was merely an assignment of RFC's rights to the subject loans, *not* an assignment of any causes of action outside the loans, e.g., under the Seller Contracts. Defendants' authority is in accord. In

---

[11] *See* 2006-QA11 PSA § 11.04; 2007-SP2 Assignment Agreement ¶ 7; 2005-KS4 PSA § 11.04.

7

*Stewardship Credit Arbitrage Fund, LLC v. Charles Zucker Culture Pearl Corp.*, 31 Misc.3d 1223(A) (Sup. Ct. N.Y. Cnty. May 4, 2011), defendants argued that the relevant agreements "only assigned to plaintiffs the rights … 'under the documents evidencing the Loans'" but not "causes of action arising outside of those documents." *Id.* at *3. The court rejected this argument based on the assignment language, which, in contrast to the language at issue here, assigned "*the Assignor's rights under the Credit Agreement, ... and each document and instrument related to the foregoing (collectively, the Credit Documents) ....*" *Id.* (emphasis in original).[12]

## II.   THE SOLE REMEDY PROVISION DOES NOT BAR MONETARY RECOVERY

GreenPoint also argues that the sole remedy provision bars claims for monetary relief[13] and limits RFC to performance. Br. 9. Wrong. In denying motions to dismiss sought on the same basis as GreenPoint's, and construing materially identical sole remedy provisions, courts consistently hold

---

[12] Defendants' other authority is similarly unavailing. In *In re Bank of New York Mellon.*, 42 Misc. 3d 1237(A) (Sup. Ct. N.Y. Cnty. 2014), the contract explicitly transferred to the trust "the Depositor's right to require each Seller to cure any breach of a representation or warranty made in this Agreement by such Seller or to repurchase or substitute for any affected Mortgage Loan." *Id.* at *14. In *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 180 F. Supp. 2d 465, 466, 471 (S.D.N.Y. 2001), the trustee sued the seller of the loan and the depositor for breaches of representations and warranties made to the trustee in connection with the formation of the REMIC trust. That is analogous to the suits RFC settled in the Bankruptcy, but it does not bear at all on RFC's right to sue originators like Defendants. *U.S. Bank Nat'l Ass'n v. Nesbitt Bellevue Prop. LLC*, 859 F. Supp. 2d 602, 605 (S.D.N.Y. 2012) involved the question whether the trustee needed to join the special servicer in a suit "to appoint a receiver for the defendants' properties because of the defendants' default on loans for which the properties were collateral"; it had nothing to do with transfer of representations and warranties in a trust. Finally, *North Fork Bank v. Cohen & Krassner*, 44 A.D.3d 375 (1st Dep't 2007) does not help Defendants because it cannot be read to overrule *Shearman*, which was decided by a higher court, and because in *North Fork*, the claim deemed to be assigned was a claim that the borrower and its counsel had made misrepresentations to the lender in documents submitted in the loan application, so the assigned claim was part and parcel of the loan documents exchanged between the borrower and lender. That has no application here, because the Client Guide was not part of the loan documents exchanged between the borrower and lender.

[13] GreenPoint does not assert that the sole remedy provision in any way affects RFC's indemnification claim. Nor could it, because Defendants explicitly agreed to broad indemnification provisions in the MLPWA. SAC ¶¶ 28-31 (citing MLPWA §§ 9.3, 13.1, 14).

8

that the sole remedy provision "permit[s] money damages where repurchase is or may be impossible." *ACE Sec. Corp. Home Equity Loan Trust, Series 2007-HE v. DB Structured Prods., Inc.,* No. 13-cv-1869, 2014 WL 1116758, at *8 (S.D.N.Y. March 20, 2014); *Nomura Asset Acceptance Corp. Alternative Loan Trust v. Nomura Credit & Capital, Inc.*, No. 653390/2012, 2014 WL 2890341, at *7 (Sup. Ct. N.Y. Cnty. June 26, 2014) (damages claims sustained under sole remedy provisions where repurchase impossible) (citing cases). Repurchase is impossible here because the loans GreenPoint sold to RFC, RFC subsequently securitized or sold. SAC ¶¶ 3, 18. And GreenPoint's own authorities hold that a plaintiff may obtain monetary relief consistent with the sole remedy provision in such circumstances. *U.S. Bank Nat'l Ass'n v. DLJ Mortg. Capital, Inc.*, 42 Misc.3d 1213(A), at *4 (Sup. Ct. N.Y. Cnty. 2013) ("Where a loan cannot be repurchased … the remedy is an award of damages equal to the repurchase amount, consistent with the sole remedy provision."); *Saco I Trust 2006-5 v. EMC Mortgage, LLC,* No. 651820/2012, 2014 WL 2451356, at *5 (Sup. Ct. N.Y. Cnty. May 29, 2014) ("Plaintiff is entitled to 'repurchase of the Defective Loans or damages in the amount of the repurchase price.'").[14]

The Complaints' claims to monetary relief are "consistent … with long-standing equitable precepts" that "where the granting of equitable relief [of specific performance] appears to be impossible or impracticable, equity may award damages in lieu of the desired equitable remedy." *Nomura*, 2014 WL 2890341, at *10 (quotation marks and citation omitted); *ACE Secs. Corp.*, 2014 WL 1116758, at * 8 (similar). It is also consistent with the MLPWA's express terms. The MLPWA's "sole remedy provision [itself] effectively establishes a contractual damages amount in

---

[14] GreenPoint's remaining case, *Home Equity Mortg. Trust Series 2006-5 v. DLJ Mortg. Capital, Inc.*, No. 653787/2012, 2013 WL 5314331, at *9 (Sup. Ct. N.Y. Cnty. Sept. 18, 2013), considered only the specialized remedies of consequential and rescissory damages, which are "premature to strike" "at the pleadings stage." *Deutsche Alt-A Sec. Mortg. Loan Trust, Series 2006-OA1 v. DB Structured Prods., Inc.*, 958 F. Supp. 2d 488, 506 (S.D.N.Y. 2013) (citing cases).

9

the form of the Purchase Price." *Nomura*, 2014 WL 2890341, at *8 (citation omitted); MLPWA § 9.3 (repurchase to be "at the Repurchase Price"). Section 17 of the MLPWA provides that "[a]ll rights and remedies of [RFC] are distinct from, and cumulative with, any other rights or remedies … afforded by law or equity," which "may be exercised concurrently, independently or successively." Because "the provisions of a contract … should be read as a whole and every effort should be made to give them consistent meaning in their overall context," these provisions compel the conclusion that Plaintiff may obtain monetary relief in lieu of specific performance of GreenPoint's repurchase obligation. *See Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*, No. 11-cv-2375, 2011 WL 5335566, at *5 (S.D.N.Y. Oct. 31, 2011) (reading such provisions together and ordering damages despite sole remedy provision).

## CONCLUSION

Defendants' motion to dismiss should be denied.

DATED:  New York, NY  
          October 23, 2014

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By:  /s/ Isaac Nesser  
     Peter E. Calamari  
     David Elsberg  
     Isaac Nesser  
     Yelena Konanova  
     51 Madison Avenue, 22nd Floor  
     New York, New York 10010  
     Telephone: (212) 849 7000  
     Facsimile: (212) 849-7100  
     PeterCalamari@quinnemanuel.com  
     DavidElsberg@quinnemanuel.com  
     IsaacNesser@quinnemanuel.com  
     YelenaKonanova@quinnemanuel.com

*Attorneys for Plaintiff*