Hearing Date: Nov. 20, 2014 at 2pm
Opposition Deadline:  Nov. 13, 2014
Reply Deadline:  Nov. 18, 2014

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE RESCAP LIQUIDATING TRUST MORTGAGE PURCHASE LITIGATION | Case No. 12-12020 (MG) (Ch. 11) Adv. Proc. No. 14-07900 (MG) |

*This document relates to*:

Residential Funding Co. v. SunTrust Mortg. Inc., Adv. Proc. No. 13-01820 (MG)

Residential Funding Co. v. HSBC Mortg. Corp. (USA), Adv. Proc. No. 14-01915 (MG)

Residential Funding Co. v. Greenpoint Mortg. Funding, Inc., Adv. Proc. No. 14-01916 (MG)

ResCap Liquidating Trust v. Summit Fin. Mortg. LLC, Adv. Proc. No. 14-01996 (MG)

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS**
**MOTION *IN LIMINE* REGARDING STATISTICAL SAMPLING**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................1

ARGUMENT ......................................................................................................4

I.      DR. SNOW IS A QUALIFIED STATISTICS EXPERT .......................................5

II.     SAMPLING IS RELEVANT AND WILL BE HELPFUL TO THE FACTFINDER ........6

III.    SAMPLING IS WELL ACCEPTED AND RELIABLE......................................10

        A.      Sampling Is Scientifically Valid And Widely Used ...............................10

        B.      Sampling Is Widely Used In Litigation—Particularly In Matters Involving
                Mortgages.....................................................................................12

        C.      Dr. Snow's Sampling Methodology Is Reliable .....................................15

IV.     THE COURT SHOULD SET A SCHEDULE FOR DISCLOSURE OF ANY
        REBUTTAL SAMPLES OR SAMPLING METHODOLOGIES....................................17

CONCLUSION.......................................................................................................18

# TABLE OF AUTHORITIES

**Page**

## Cases

*Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*,
   920 F. Supp. 2d 475 (S.D.N.Y. 2013) ........................................................................... 2, 14

*Assured Guar. Mun. Corp. v. UBS Real Estate Sec. Inc.*,
   No. 12-cv-1579 (S.D.N.Y. Apr. 1, 2013). ..................................................................... 2

*Daubert v. Merrell Dow Pharms.*,
   509 U.S. 579 (1993) .......................................................................................................... 4, 10

*Deutsche Bank Nat'l Trust Co. v. WMC Mortgage, LLC*,
   2014 WL 3824333 (D. Conn. Aug. 4, 2014) ................................................................... 2

*Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.*,
   2012 WL 6000885 (S.D.N.Y. Dec. 3, 2012) ............................................................ 2, 10, 14

*Financial Guaranty Insurance Co. v. Countrywide Home Loans, Inc.*,
   No. 650736/09 (N.Y. Sup. Ct. Dec. 11, 2009) ............................................................... 6

*Home Equity Mortgage Trust Series 2006-1, et al. v. DLJ Mortgage Capital, Inc.*,
   No. 156016/2012 (N.Y. Sup. Ct. Nov. 19, 2013) ...................................................... 3, 6, 13

*Integrated Circuits Unlimited, Inc. v. E.F. Johnson Co.*,
   691 F. Supp. 630 (E.D.N.Y. 1988) ................................................................................. 13

*Johnson v. Big Lots Stores, Inc.*,
   2008 WL 1930681 (E.D. La. Apr. 29, 2008) ................................................................. 16

*MASTR Adjustable Rate Mortgages Trust 2006-OA2, et. al., v. UBS Real Estate Securities, Inc.*,
   No. 12-cv-07322 (S.D.N.Y. Apr. 1, 2013) ..................................................................... 2, 14

*MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*,
   2010 WL 5186702 (N.Y. Sup. Ct. Dec. 22, 2010) ........................................................ 3, 13

*Massachusetts Mut. Life Ins. Co. v. Residential Funding Co., LLC*,
   989 F. Supp. 2d 165 (D. Mass. 2013) ............................................................................ 2, 14

*In re Massachusetts Life Ins. Co. Litig.*,
   No. 11-cv-30039 (D. Mass. Mar. 5, 2013) ..................................................................... 2

*McIntire v. China MediaExpress Holdings, Inc.*,
   --- F. Supp. 2d ---, 2014 WL 4049896 (S.D.N.Y. Aug. 15, 2014) .............................. 4, 5

*Nat'l Credit Union Admin. Bd. v. Goldman Sachs & Co.*,
   No. 2:11-cv-06521-GW-JEM (C.D. Cal. Feb. 10, 2014) ............................................. 2, 14

*Nat'l Credit Union Admin. Bd. v. Morgan Stanley & Co.*,
    No. 13-cv-6705 (DLC) (S.D.N.Y. Apr. 30, 2014) ...............................................2, 14

*Nat'l Credit Union Admin. Bd. v. RBS Securities, Inc.*,
    2014 WL 1745448 (D. Kan. Apr. 30, 2014)...................................................2, 14

*Pruchniewski v. Leavitt*,
    2006 WL 2331071 (M.D. Fla. Aug. 10, 2006) ...................................................... 16

*In re Residential Capital, LLC*,
    No. 12-12020-mg (S.D.N.Y. Oct. 14, 2014) ............................................................ 1

*Rosado v. Wyman*,
    322 F. Supp. 1173 (E.D.N.Y. 1970) .................................................................... 12

*SACO I Trust 2006-5 v. EMC Mortgage LLC.*,
    No. 651820/2012 (N.Y. Sup. Ct. Dec. 20, 2013) .................................................. 6

*Schuldt Chiropractic Wellness Center v. Sebelius*,
    2014 WL 247972 (D. Neb. Jan. 22, 2014) ............................................................ 12

*Sunset Taxi Co., Inc. v. Blum*,
    73 A.D.2d 691 (2d Dep't 1979) ........................................................................... 12

*Syncora Guar. Inc. v. EMC Mortg. Corp.*,
    2011 WL 1135007 (S.D.N.Y. Mar. 25, 2011) ..................................................3, 14

*Texpor Traders, Inc. v. Trust Co. Bank*,
    720 F. Supp. 1100 (S.D.N.Y. 1989) .................................................................... 13

*United States v. Lahey Clinic Hosp.*,
    399 F.3d 1 (1st Cir. 2005) .................................................................................... 12

*United States v. United Shoe Mach. Corp.*,
    110 F. Supp. 295 (D. Mass. 1953) ...................................................................... 12

*Wald v. Costco Wholesale Corp.*,
    2005 WL 425864 (S.D.N.Y. Feb. 22, 2005) .......................................................... 4

*In re Washington Mut. Mortgage Backed Sec. Litigation*,
    2012 WL 2995046 (W.D. Wash. July 23, 2012)...............................................2, 14

*Wechsler v. Hunt Health Sys., Ltd.*,
    381 F. Supp. 2d 135 (S.D.N.Y. 2003) ................................................................... 4

## Statutes

15 U.S.C. § 15d.......................................................................................................... 11

Fed. R. Evid. 702 ....................................................................................................4, 5

Fed. R. Evid. 702(a) ................................................................................................6, 7

N.Y. COMP. CODES R. & REGS. tit. 18, § 519.18(g)..........................................................................11

## Other Authorities

MANUAL FOR COMPLEX LITIGATION § 11.493 (4th ed. 2004)..........................................................12

David H. Kaye & David A. Freedman, *Reference Guide on Statistics*, *in* REFERENCE MANUAL ON
SCIENTIFIC EVIDENCE 83, 86 (Fed. Jud. Ctr. 2d ed. 2000)..................................................12, 16

Plaintiff respectfully submits this memorandum in support of its motion *in limine* concerning statistical sampling, as relevant to its above-captioned litigations against Defendants SunTrust Mortgage, Inc. ("SunTrust"), HSBC Mortgage Corp. (USA) ("HSBC"), GreenPoint Mortgage Funding, Inc. ("GreenPoint") and Summit Financial Mortgage, LLC f/k/a Summit Financial, LLC, and Summit Community Bank, Inc.'s (collectively "Summit," and together with SunTrust, HSBC, and GreenPoint, the "Sampling Defendants").

## PRELIMINARY STATEMENT

This motion relates to the method by which the parties will litigate and prove their claims as to thousands of mortgage loans that Plaintiff purchased from the Sampling Defendants. Absent sampling, the task of obtaining, analyzing and providing expert testimony concerning the loan files associated with these thousands of loans, and their corresponding representations and warranties ("R&Ws"), as well as related loan documents and information that may be in the hands of third parties, would be an enormously burdensome task for the parties, experts, and the Court. There is no need for such inefficiency. Rather, as the Sampling Defendants have agreed, and as federal and state courts across the country have consistently recognized in other cases involving allegedly defective loans, statistical sampling is a reliable and admissible alternative.

*First*, during the parties' meet and confers related to sampling, and during recent hearings before the Court, the Sampling Defendants themselves agreed that Plaintiff's proposed methodology is an objective, scientifically-valid methodology that would be admissible, including for purposes of determining a breach rate. *See, e.g., In re Residential Capital, LLC*, No. 12-12020-mg (S.D.N.Y. Oct. 14, 2014), Tr. 25:18-24 ("Tr.") (Mr. Johnson: "[T]he crux of the matter is that defendants have essentially agreed to what plaintiff has proposed with respect to sampling, that is using 150 loans as the sample, at a 95 percent confidence interval, with a

margin of error of plus or minus 8 percent, for loans that were included in securitizations and have experienced actual or expected losses, to determine a breach rate."). There is no basis to depart from that agreement.

*Second*, statistical sampling is routinely accepted in RMBS litigation:

- *Deutsche Bank Nat'l Trust Co. v. WMC Mortgage, LLC*, 2014 WL 3824333, at *9 (D. Conn. Aug. 4, 2014) ("statistical evidence is an accepted and useful way of proving liability (and by extension, damages) in an RMBS case");

- *Nat'l Credit Union Admin. Bd. v. Morgan Stanley & Co.*, No. 13-cv-6705 (DLC), Dkt. 122 at 1-2 (S.D.N.Y. Apr. 30, 2014) (granting motion to admit expert sampling);

- *Nat'l Credit Union Admin. Bd. v. RBS Sec., Inc.*, 2014 WL 1745448, at *1 (D. Kan. Apr. 30, 2014) (granting motion to admit expert sampling);

- *Nat'l Credit Union Admin. Bd. v. Goldman Sachs & Co.*, No. 2:11-cv-06521-GW-JEM, Dkt. 259 at 1 (C.D. Calif. Feb. 10, 2014) (granting motion to admit expert sampling);

- *Massachusetts Mut. Life Ins. Co. v. Residential Funding Co., LLC*, 989 F. Supp. 2d 165, 175 (D. Mass. 2013) (denying motion to exclude sampling expert testimony);

- *MASTR Adjustable Rate Mortgages Trust 2006-OA2, et. al., v. UBS Real Estate Securities, Inc.*, No. 12-cv-07322 (S.D.N.Y. Apr. 1, 2013) ("I will allow sampling" [to prove both liability and damages on repurchase claims against the defendant sponsor of three RMBS trusts])[1];

- *In re Massachusetts Life Ins. Co. Litig.*, No. 11-cv-30039, Dkt. 117 at 6 (D. Mass. Mar. 5, 2013) (granting motion for early determination of sampling);

- *Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*, 920 F. Supp.2d 475, 478, 512-515 (S.D.N.Y. 2013) (approving sampling for liability and damages);

- *Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.*, 2012 WL 6000885, at *1 (S.D.N.Y. Dec. 3, 2012) (denying motion challenging sampling methodology);

- *In re Washington Mut. Mortgage Backed Sec. Litigation*, 2012 WL 2995046, at *1 (W.D. Wash. July 23, 2012) (denying motion to exclude sampling expert testimony);

---

[1] Formerly *Assured Guaranty Municipal Corp. v. UBS Real Estate Sec. Inc.*, No. 12-cv-1579, Dkt. No. 86 (S.D.N.Y. Apr. 1, 2013).

- *Syncora Guar. Inc. v. EMC Mortg. Corp.*, 2011 WL 1135007, at *1, *4, *6 (S.D.N.Y. Mar. 25, 2011) (holding plaintiff could seek pool-wide remedy based on sampling and extrapolation for repurchase claims);

- *Home Equity Mortgage Trust Series 2006-1, et al. v. DLJ Mortgage Capital, Inc.*, No. 156016/2012, NYSCEF No. 236 at 1 (N.Y. Sup. Ct., Nov. 19, 2013) ("plaintiff's use of statistical sampling to prove liability and damages would streamline the trial, promote judicial economy, and conserve the resources of the parties and the court"); and

- *MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 2010 WL 5186702, at *6 (N.Y. Sup. Ct. Dec. 22, 2010) ("use of sampling is widespread as a valid method to prove cases with large numbers of underlying data").

Here, Plaintiff's proposed methodology is similar to the methodologies considered and accepted in the above-cited cases, and it will be implemented by a distinguished, qualified expert statistician, Dr. Karl Snow, Ph.D., who has more than twenty years' experience providing financial, economic, and statistical analysis in academia, consulting, and the investment and mortgage banking industries. As Dr. Snow's expert declaration explains, a sample of 150 loans for each Sampling Defendant is appropriate because (1) the proposed sample will be randomly selected to ensure it represents the relevant population of loans; (2) the proposed sample will be sufficiently large to draw conclusions about the total population of loans; and (3) the proposed sample will result in no more than a +/- 8% margin of error at the 95% confidence level. That margin of error means that, if the defective loan percentage for the sample is 50% then, 95% of the time, the defective loan percentage of the population will be between 42% and 58%. Having established the representativeness and reliability of the sample, subsequent expert extrapolation of the re-underwriting analysis of the sample to the loan population will be governed by well-established, scientifically valid, and reliable statistical techniques.

The Court should accordingly grant this motion and hold Dr. Snow's sampling methodology to be admissible for purposes of proving liability and damages as to the Sampling Defendants. Furthermore, as discussed during the parties' recent appearances before the Court,

3

and as reflected in greater detail below, the Sampling Defendants should be required to disclose any proposed rebuttal sample and/or sampling methodology within thirty (30) days, so that these actions may be litigated efficiently and effectively with full agreement as to the loans that will be the subject of expert testimony and, ultimately, proof at trial.

## ARGUMENT

This Court is charged with a gatekeeper function to determine whether proffered expert testimony is based upon sound, reliable theory, or rank speculation. *See Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589-90 (1993); Fed. R. Evid. 702. To be admissible under Federal Rule of Evidence 702, the Court evaluates proffered expert testimony under a three-part standard: "a district court must determine that (1) the expert is qualified, (2) the testimony is relevant, and (3) that the testimony is reliable." *Wald v. Costco Wholesale Corp.*, 2005 WL 425864, at *5 (S.D.N.Y. Feb. 22, 2005) (citing *Daubert*, 509 U.S. at 592-97); *accord Wechsler v. Hunt Health Sys., Ltd.*, 381 F. Supp. 2d 135 (S.D.N.Y. 2003) (three-part test).

In evaluating these factors, the court must be vigilant not to exclude an expert where the opponent's challenge to the proffered testimony goes to the weight that the jury accords the testimony rather than to its admissibility. *See McIntire v. China MediaExpress Holdings, Inc.*, --- F. Supp. 2d ---, 2014 WL 4049896, at *8 (S.D.N.Y. Aug. 15, 2014) (rejecting challenge to reliability because "the Court is persuaded that [opponent's] objections go to the weight, not the admissibility, of the testimony"); *Wechsler*, 381 F. Supp. 2d at 141 (distinguishing *sufficiency* of proffered evidence, which is a question for the trier of fact, from *admissibility* under Rule 702— a preliminary legal determination).

## I.    DR. SNOW IS A QUALIFIED STATISTICS EXPERT

To testify as an expert, the witness must be "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. "Courts in the Second Circuit have liberally construed expert qualification requirements when determining whether a witness can be considered an expert." *McIntire*, 2014 WL 4049896, at *7. As set forth below, Dr. Karl Snow more than meets this standard to provide testimony on statistical sampling. *See* Expert Declaration of Karl N. Snow ("Snow Decl."), ¶¶ 1-9, App. A & B (attached hereto as Exhibit 1). Indeed, even Defendants have not contended that Dr. Snow is not a qualified expert on sampling during the extensive meet and confers, and hearings on these issues. Dr. Snow received his Ph.D. and M.A. degrees in economics from the University of Chicago with an emphasis on finance and econometrics (statistics applied to economics) and a B.A. in economics (*summa cum laude*) from Brigham Young University. *Id.*, ¶2. Dr. Snow has taught statistics, finance, and economics at the graduate and undergraduate levels at the University of North Carolina–Chapel Hill, from 1990 to 1995, as an Assistant Professor of Finance. *Id.*, ¶3. He has also taught finance and statistics courses at the undergraduate level at Brigham Young University, where he was an Assistant Professor of Economics from 1995 to 2000. *Id.*

Dr. Snow is presently a partner and co-lead of the Finance Practice of Bates White Economic Consulting, a firm that provides litigation and economic consulting services. *Id.*, ¶1.

Before joining Bates White, he was employed as a Director at UBS Warburg (now UBS Investment Bank), where he worked in conjunction with the Fixed Income and Mortgage-Backed Securities groups to teach internal courses on, among other things, mortgage-backed and derivative securities. *Id.*, ¶4. He also conducted statistical analysis as a Senior Economist at Welch Consulting and a Principal Economist at Freddie Mac. *Id.*, ¶¶1, 4.

Dr. Snow focuses his academic research on statistical modeling and the valuation of financial assets. *Id.*, ¶5. He has published papers in peer-reviewed journals such as the Journal of Finance and the Financial Analysts Journal, and has presented workshops on statistical, financial, and economic topics at academic institutions in both Europe and the United States. *Id.*

Dr. Snow has also used sampling for multiple legal matters. For instance, Dr. Snow is a sampling expert in the New York State RMBS matter *Home Equity Mortgage Trust Series 2006-1, et al. v. DLJ Mortgage Capital, Inc.. Id.*, ¶30. In that case, Justice Schweitzer ordered that the RMBS "plaintiffs may use statistical sampling **to prove liability and damages on all of their claims.**" *Home Equity Mortgage Trust Series 2006-1*, No. 156016/2012, NYSCEF No. 236 at 1 (N.Y. Sup. Ct., Nov. 19, 2013) (emphasis added). The court held that "plaintiffs' use of statistical sampling to prove liability and damages would streamline the trial, promote judicial economy, and conserve the resources of the parties and the court." *Id.*

He is also a sampling expert in the pending RMBS matter *SACO I Trust 2006-5 v. EMC Mortgage LLC.*, No. 651820/2012, NYSCEF No. 134 (N.Y. Sup. Ct., Dec. 20, 2013). Snow Decl., ¶30. And, he served as a sampling expert in the RMBS matter *Financial Guaranty Insurance Co. v. Countrywide Home Loans, Inc.*, No. 650736/09 (N.Y. Sup. Ct. N.Y. Cnty. Dec. 11, 2009), where he submitted an expert report on statistical analysis to estimate the fraction of mortgage loans in various securitized pools that allegedly failed to meet the originator's stated guidelines and/or breached representations and warranties. Snow Decl., ¶31.

For all of these reasons, it is beyond peradventure that Dr. Snow is a qualified expert pursuant to Rule 702.

## II.    SAMPLING IS RELEVANT AND WILL BE HELPFUL TO THE FACTFINDER

In addition to being presented by a qualified expert, Rule 702 requires proffered expert testimony to be relevant; it should "help the trier of fact to understand the evidence or to

determine a fact in issue." Fed. R. Evid. 702(a). As Dr. Snow's testimony most assuredly will assist the factfinder and is related to significant issues in the case, it meets this standard of relevance.

This motion involves thousands of loans—approximately 7,700 loans across the four Sampling Defendants. *See* Tr. 24:18-25:1 (4500 for SunTrust, 1070 for HSBC, 800 for GreenPoint and 800 for Summit). That volume means that sampling will present dramatic efficiencies, insofar as it will reduce the number of loan files (each containing hundreds of pages) to be collected, re-underwritten, and made the subject of expert discovery, as well as the volume of documents to be collected and reviewed from outside the loan file—materials such as borrowers' tax records, public bankruptcy filings, and documents concerning assets and income. Many of these documents may require third-party discovery. The efficiencies associated with reducing the burden of this discovery will benefit not only Plaintiff, but also the Sampling Defendants, who would be expected to replicate the Plaintiff's re-underwriting and compile re-underwriting expert reports of their own. It would be needless and wasteful to conduct this discovery as to each of thousands of loans. That is why courts recognize that such is unnecessary: A Plaintiff can prove a case based upon a much smaller, but still statistically valid, sample of the loans.

As explained by Dr. Snow, sampling is a scientifically valid method of using a subset (sample) of a group about which we wish to draw inferences (population) to estimate some property or characteristic of that population (*e.g.*, a loan breach rate) without having to examine each and every element of the population. Snow Decl., ¶12. As noted in a textbook on research methods:

> Researchers would like to be able to speak about entire populations of interest,
> such as adult residents of the United States or children enrolled in public

7

> preschool programs. However, time and costs permit them to collect data from
> only a limited number of population members. The researcher needs a bridge to
> connect the goals of the study with the practical considerations of conducting the
> research. Sampling methods, or the methods by which members of a population
> are selected for a study, provide that bridge.

*Id.* (citing Gary T. Henry, "Practical Sampling," *The Sage handbook of Applied Social Research Methods* (Leonard Bickman & Debra J. Rog, eds., 1998), 101).

Sampling involves drawing a random subset from a population where each element of the population has a positive probability of being selected and hence included in the sample. Snow Decl., ¶13. Such samples can then be used to extrapolate characteristics of the sample to the population in an unbiased fashion. *Id.*

Statistical sampling is a mathematical procedure that can be applied to any entity that can be counted; it is not dependent upon the type of entity being sampled. *Id.*, ¶15. Hence, statistical sampling can be accurately used to determine defect rates of manufactured goods, or the percentage of individuals planning to vote for a candidate, as well as the fraction of loans that fail to meet underwriting guidelines. *Id.* Even if the loans in a given population were to differ on many dimensions, such as being originated under different programs, at different points in time, in different geographies, or ultimately sold to different securitizations, statistical sampling allows for the calculation of an unbiased estimate of the overall population defect rate and associated monetary losses. *Id.*, ¶16. As a result, reliable measurement of population breach rate can be determined despite the varied characteristics of the underlying mortgages or types of defects. *Id.*, ¶18.

For example, a sample can be drawn from a population of loans originated by a given bank (such as loans from each of the four Defendants here). *Id.*, ¶14. The fraction of loans with underwriting violations and/or breaches of representations and warranties, along with the

associated dollar value of losses, within the sample can then be calculated using data from a review of the re-underwriting of sampled loans. *Id.* These results can then be used to extrapolate characteristics of the sample (such as breach rate and monetary losses) to the population of loans. *Id.* In order to do the extrapolation to determine breach, all the statistician needs to know is whether the loan has a defect or not; thus, the sampled loans are first re-underwritten, and thereafter the sample used for extrapolating population breach. *Id.,* ¶ 18, 44-47.

Extrapolating from the sample to the population involves measures of reliability and precision, otherwise known as confidence levels and margins of error. *Id.*, ¶19. The confidence level is the probability that the actual population value will fall within a specified range around the value extrapolated from the sample. *Id.* The margin of error describes that specific range around the estimated value from the sample. *Id.* For example, suppose that 50% of a sample of loans violate specified underwriting guidelines and/or representations and warranties, and that the associated confidence level is 95% with a margin of error of plus or minus 10%. *Id.* This means the 95% confidence interval would be the range of 40% to 60%. *Id.* Hence, there is a 95% probability that the actual population defect rate is within that range. *Id.*

In this case, statistically valid random sampling will help the trier of fact to understand the evidence and to determine a fact in issue because sampling allows the trier to estimate the breach rate and hence the liability and losses of the population of loans with a known degree of accuracy (*e.g.*, 95% confidence level and +/- 8% margin of error). *See* Snow Decl., §IV.B (proposed sample can be used to reliably extrapolate re-underwriting results to population and as an input to determine liability and associated damages); ¶47 ("A fact finder will be able to reliably use the results of the extrapolations as an input in determining liability and damages

because the extrapolations will have a known level of accuracy (the confidence interval and the associated margin of error.")).  That is why another court in this District has specifically held that "the use of sampling will assist the fact finder in determining liability…."  *JPMorgan Chase & Co*, 2012 WL 6000885, at *6.  This Court should follow suit.

## III.    SAMPLING IS WELL ACCEPTED AND RELIABLE

For the final requirement of proffered expert testimony, reliability, the focus of the inquiry is solely upon principles and methodology--not the conclusions that they generate.  *See Daubert*, 509 U.S. at 594-95.  As set forth below, Dr. Snow's testimony is grounded in facts, principles, and replicable methods; thus, his evidence meets the reliability standard embedded in Rule 702.

### A.    Sampling Is Scientifically Valid And Widely Used

Sampling is a well-established and commonly-used procedure in the academic, business, government, and legal arenas to make reliable estimates about the characteristics of a population. Snow Decl., ¶¶12, 21; *see generally id.*, §III ("Sampling is well-recognized and established"). As Dr. Snow's declaration amply demonstrates, there is a vast body of academic peer-reviewed literature in the field of statistics discussing the utility of statistical sampling for making reliable estimates of parameters in large populations.  *See* Snow Decl., § III.  That is why private businesses, lawmakers, government agencies and courts all regularly rely upon—indeed, many *require—* the use of statistical sampling.  *Id.*, ¶¶12-36.

Many government agencies routinely use statistical sampling.  For example, the United States Census Bureau employs sampling to estimate coverage as well as in the development of the Census survey itself.  *Id.*, ¶22.  In addition, the Office of Comptroller of the Currency (OCC) and Federal Deposit Insurance Corporation (FDIC) employ sampling to examine institutional practices and loan portfolios.  *Id.*, ¶23 (OCC uses sampling to examine banks' and mortgage

10

subsidiaries' compliance with fair lending regulations; FDIC uses sampling to estimate the value of various loan pools when examining and valuing a failed banks' loan portfolio). The United States Department of Housing and Urban Development also requires that originators use statistical sampling as part of a quality-control process for federally insured loans. *Id.*, ¶24.

A wide array of statutes also expressly authorize the use of statistical sampling. For example, the Hart-Scott-Rodino Antitrust Improvements Act provides that "damages may be proved and assessed in the aggregate by statistical or sampling methods . . . ." 15 U.S.C. § 15d. *Accord* N.Y. COMP. CODES R. & REGS. tit. 18, § 519.18(g) ("An extrapolation based upon an audit utilizing a statistical sampling method certified as valid will be presumed, in the absence of expert testimony and evidence to the contrary, to be an accurate determination of the total overpayments made or penalty to be imposed.").

Furthermore, examples of private institutions utilizing sampling in their day-to-day operations are abundant, including in the context of valuing and assessing pools of mortgage loans. *See* Snow Decl., ¶¶25-27. In particular, federal regulators charged with examining loans and other activities utilize samples of loans because it would not be feasible to inspect an entire vast loan population. *Id.* Both Fannie Mae and the Federal Home Loan Mortgage Corporation use statistical sampling to review and assess pools of mortgage loans. *Id.*, ¶¶25-26. Sampling is also used by mortgage originators as part of the process of assessing underwriting quality, as well as by underwriters and securitization sponsors to conduct compliance reviews of loans to be included in securitizations or purchased from third parties. *Id.*, ¶27.

Because statistical sampling has been widely endorsed in peer-reviewed literature, reproduced in independent scientific studies, and routinely applied in practice, it follows that sampling more than satisfies the reliability standard of Rule 702.

**B.    Sampling Is Widely Used In Litigation—Particularly In Matters Involving Mortgages**

The use of statistical sampling is also not novel in the particular context of litigation.  On the contrary, both Federal and State courts have commonly recognized the scientific validity of sampling and allowed plaintiffs to use it to establish the nature of a large population by studying and presenting evidence on a subset.  *See Schuldt Chiropractic Wellness Center v. Sebelius*, 2014 WL 247972, at *2 (D. Neb. Jan. 22, 2014) ("Statistical sampling, with extrapolation of results to the universe of all claims for recoupment purposes, may be used to determine overpayments to Medicare and Medicaid providers suspected of overbilling"); *Rosado v. Wyman*, 322 F. Supp. 1173, 1180 (E.D.N.Y. 1970) ("Sampling has long been considered an acceptable method of determining the characteristics of a large universe . . . . Such mathematical and statistical methods are well recognized by the courts as *reliable and acceptable in determining adjudicative facts*.") (emphasis added), *aff'd* 402 U.S. 991 (1971); *United States v. United Shoe Mach. Corp.*, 110 F. Supp. 295, 305-06 (D. Mass. 1953) ("If anti-trust trials are to be kept manageable, samples must be used, and a sample which is in general reasonable should not be rejected in the absence of the offer of a better sample"), *aff'd*, 347 U.S. 521 (1954); *United States v. Lahey Clinic Hosp.*, 399 F.3d 1, 18 at n.19 (1st Cir. 2005) ("sampling of similar [fraudulent Medicare] claims and extrapolation from the sample is a recognized method of proof"); *Sunset Taxi Co., Inc. v. Blum*, 73 A.D.2d 691, 692 (2d Dep't 1979) ("[T]he contention that sample evidence provides no evidence for the goods or claims not sampled was rejected long ago."); *see also* David H. Kaye & David A. Freedman, *Reference Guide on Statistics*, *in* REFERENCE MANUAL ON SCIENTIFIC EVIDENCE 83, 86 (Fed. Jud. Ctr. 2d ed. 2000) ("[S]tatistical studies suitably designed to address a material issue generally will be admissible under the Federal Rules of Evidence"); MANUAL FOR COMPLEX LITIGATION § 11.493 (4th ed. 2004) ("Acceptable sampling techniques,

12

in lieu of discovery and presentation of voluminous data from the entire population, can save substantial time and expense, and in some cases provide the only practicable means to collect and present relevant data.").

Courts routinely allow the application of statistical proof in the context of contract disputes. *See, e.g., Texpor Traders, Inc. v. Trust Co. Bank*, 720 F. Supp. 1100, 1106 (S.D.N.Y. 1989) (shipment of sweaters found materially defective based on buyer's audit conducted by sampling different styles and colors); *Integrated Circuits Unlimited, Inc. v. E.F. Johnson Co.*, 691 F. Supp. 630, 631-32 (E.D.N.Y. 1988) (plaintiff's sample of eight percent of one type of microprocessor and the entire amount of another supported conclusion that shipment was nonconforming in its entirety under the UCC), *rev'd and vacated on other grounds*, 875 F.2d 1040 (2d Cir .1989).

Moreover, both federal and state courts uphold the use of sampling in the context of mortgage litigation, specifically in the context of breach of representations and warranties like those here. Indeed, sampling is routinely used in such cases because of the efficiencies it promotes. For example, in *MBIA Ins. Corp.,* 2010 WL 5186702, an action brought against the defendant sponsor of fifteen RMBS trusts, the court approved the use of a statistical sampling methodology similar to Dr. Snow's to prove the plaintiff's repurchase claims, among other things. The court held that "the use of sampling is widespread as a valid method to prove cases with large amounts of underlying data," and that sampling may "sav[e] the parties and the court from significant litigation time and may significantly streamline the action without compromising either party from proving its case." *Id*. at *6; *see Home Equity Mortgage Trust Series 2006-1, et al*., NYSCEF No. 236 at 1 ("plaintiffs may use statistical sampling to prove liability and damages on all of their claims," and that "plaintiffs' use of statistical sampling to

13

prove liability and damages would streamline the trial, promote judicial economy, and conserve the resources of the parties and the court").

Likewise, courts in this District routinely allow sampling in RMBS cases. *See, e.g.*, *Nat'l Credit Union Admin. Bd. v. Morgan Stanley & Co.,* No. 13-cv-6705(DLC), Dkt. 122 at 1-2 (S.D.N.Y. Apr. 30, 2014) (granting motion to admit expert sampling); *Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*, 920 F. Supp.2d 475, 512-515 (S.D.N.Y. 2013) (sampling was appropriate to determine both liability and damages, and more generally for "cases relating to RMBS and involving repurchase claims"); *MASTR Adjustable Rate Mortgages Trust 2006-OA2, et. al., v. UBS Real Estate Securities, Inc*., No. 12-cv-07322 (S.D.N.Y. Apr. 1, 2013) (approving sampling by plaintiff insurer and RMBS trustee to prove both liability and damages on repurchase claims); *JPMorgan Chase & Co*., 2012 WL 6000885, at *1 (approving sampling); *Syncora Guar. Inc*., 2011 WL 1135007, at *4, 6-7 (plaintiff could seek a pool-wide remedy based on sampling and extrapolation for repurchase claims).

Other federal courts are in accord with the Southern District of New York. *See, e.g., Nat'l Credit Union Admin. Bd. v. RBS Sec., Inc.*, 2014 WL 1745448, at *1 (D. Kan. Apr. 30, 2014) (allowing sampling); *Nat'l Credit Union Admin. Bd. v. Goldman Sachs & Co.*, No. 2:11-cv-06521-GW-JEM, Dkt. 259 at 1 (C.D. Cal. Feb. 10, 2014) (granting motion to admit expert sampling testimony); *Massachusetts Mut. Life Ins. Co. v. Residential Funding Co., LLC*, 989 F. Supp. 2d 165, 175 (D. Mass. 2013) (denying motion to exclude sampling expert testimony); *In re Washington Mut. Mortgage Backed Sec. Litigation*, 2012 WL 2995046, at *1 (same).

As these precedents make clear, the presentation of evidence based upon a statistically valid random sample of loans would conserve the resources of the parties and the Court,

streamline trial, and promote judicial economy and efficiency without compromising the quality

or reliability of the evidence adduced by Plaintiff to prove its claims.

### C.    Dr. Snow's Sampling Methodology Is Reliable

Plaintiff's proposed methodology for selecting a sample is based upon accepted

principles of statistical sampling and hence is reliable.  As set forth in his declaration, Dr. Snow

will determine a random, representative sample of 150 loans from the population of loans that (a)

were sold by each individual Sampling Defendant to Plaintiff, (b) have, as of May 2014, either

actual losses (i.e., due to liquidation events or loan modifications) or expected losses (90+ days

delinquent or had statuses of foreclosure or real estate owned (REO)), and (c) were included in

securitizations that were the subject of claims resolved by settlements in Plaintiff's bankruptcy.

Snow Decl., ¶37.  This sample size is sufficiently large to draw conclusions about the total

population of loans from each Defendant with actual or expected losses.  *Id.*  ("The results from

re-underwriting these sampled loans can then be used to provide an unbiased view of the

associated population defect or breach rates, as well as an input in determining damages and

liability for each Defendant.").

Specifically, to identify the population from which to draw the sample for each

Defendant, Dr. Snow will review loan-level information on the loans sold by each of the four

Sampling Defendants to Plaintiff.  *Id.*, ¶38.  After determining these sets of loans, he will use

loss detail data to determine which loans experienced losses, and servicing data to determine

which loans were seriously delinquent and hence had expected losses (loans that were 90+ days

delinquent and/or had statuses of foreclosure, or REO) as of May 2014.  *Id.*  From each of these

populations of loans that have experienced losses or are seriously delinquent, he will draw a

random sample of 150 loans, and a backup sample of 100 loans to be used if files associated with

the initial 150 loan sample are missing or unavailable for each of the four Defendants.[2]  *Id.*  A

sample size of 150 loans is sufficiently large to draw conclusions about the corresponding

population and specifically to make a scientifically reliable estimate of the population defect rate

and as an input to determine liability and associated damages.[3]

For purposes of extrapolating the sample breach rate to the relevant population of loans, a

sample size of 150 will produce a 95% confidence interval for the sample proportion with a

margin of error of no more than 8%.  *Id.*, ¶40.  This sample is sufficiently large to draw

scientifically valid conclusions about the population.  *Id.*  Indeed, courts have held a confidence

level of 95% with a margin of error of +/- 8% appropriate, including in RMBS litigations.  *See*

*e.g.*, *JP Morgan Chase & Co.*, 2012 WL 6000885 at *5, *9-10 (95% confidence level with 10%

margin of error).  *Cf. Johnson v. Big Lots Stores, Inc.*, 2008 WL 1930681, at *3 (E.D. La. Apr.

29, 2008) (describing methodology used by expert as an "accepted technique in statistical

analysis" when expert explained how he derived figures discussed after calculating the mean,

standard deviation, and 95% confidence interval for all responses); *Pruchniewski v. Leavitt*, 2006

WL 2331071, at *15 (M.D. Fla. Aug. 10, 2006) (affirming decision based upon statistical

sampling evidence with 90% confidence interval); *see also* David H. Kaye & David A.

Freedman, REFERENCE MANUAL ON SCIENTIFIC EVIDENCE at 117-21, 242-44 (2d ed. 2000)

("Traditionally, scientists adopt the 95% level of confidence, which means that if 100 samples of

---

[2]    More specifically, each loan in the relevant population as to each individual Sampling
Defendant will be assigned a random number generated in a way to ensure that each such loan
has a known and equal probability of being selected.  Each of those loans will then be sorted
according to their assigned random number from lowest to highest; the 150 loans with the lowest
random numbers will be selected for inclusion in the sample.  *Id.*, ¶ 39.  From that same
population, Dr. Snow will also draw 100 loans in the same manner for inclusion in a back-up
sample to be selected from if a loan file is missing from the main sample--the next available loan
in sequence in the back-up sample can be selected.  *Id.*

[3] Courts have sanctioned a simple random sample in RMBS cases.  *See, e.g., Flagstar*, 920 F.
Supp. 2d at 503-04.

the same size were drawn, the confidence interval expected for at least 95 of the samples would be expected to include the true population value.").

A simple random sample, determined using the process described by Dr. Snow, can be used to calculate unbiased estimates of population characteristics such as the breach rate.  Snow Decl., ¶43.  However, to confirm that the samples are representative for various relevant dimensions of the data (such as loan amount, CLTV ratio, documentation program, and occupancy type), Dr. Snow will conduct statistical tests of the representativeness of each sample. *Id.*  These tests are a standard statistical method for comparing the distribution of a particular data field in the sample and population.  *Id.*

Later, Dr. Snow will be able extrapolate the results of Plaintiff's re-underwriting of the sampled loans to the larger population of loans from which the sample was drawn.  *Id.*, ¶44.  In other words, the number of loans in the sample that fail to comply with the R&Ws will be used to estimate the total number of loans in the population that breach those R&Ws.  *Id.*  In addition, a factfinder will be able to reliably use the results of the extrapolations as an input in determining liability and damages because the extrapolations will have a known level of accuracy (the confidence interval and the associated margin of error).  *Id.*, ¶¶ 44, 47.

Accordingly, Dr. Snow's proposed sampling methodology is reliable.

## IV.    THE COURT SHOULD SET A SCHEDULE FOR DISCLOSURE OF ANY REBUTTAL SAMPLES OR SAMPLING METHODOLOGIES

As indicated above, Plaintiff's proposed sampling methodology is intended to generate a set of loans upon which the parties can focus their efforts in discovery.  To facilitate that goal, if the Court grants an *in limine* order approving Plaintiff's proposed sampling methodology, it should at the same time set a schedule for Defendants' prompt disclosure of any disputes concerning the manner or methodology by which Plaintiff's sample had been drawn, or any

proposed rebuttal samples.    The Court discussed entry of such an order at the most recent

conference:

> But what I am going to do is impose a reasonable time limit on the defendants to
> come forward, if they're going to -- they're not going to sit back and months down
> the road say whether they -- we got a different sampling methodology; it requires
> going back to square one on discovery.  That's not going to happen.

(Tr. 84:8-13).

Specifically, Plaintiff requests the Court to Order that within thirty (30) days after

Plaintiff discloses its main samples, back-up samples, the results of its tests for

representativeness, and any replacement loans, the Sampling Defendants shall assert in writing

any objections based upon the information provided at the time of the disclosure, including that:

(a) any samples are not representative of the relevant populations; (b) any main sample (or any

back-up sample) was not drawn in the manner described above; (c) any loans in the main sample

(or any back-up sample) are not members of a corresponding relevant population; (d) the

samples are not of sufficient size; (e) the margin of error is too great; and (f) the sampling

protocol has not been implemented as set forth above.  Within fourteen (14) days thereafter, the

Sampling Defendants should be required to disclose any proposed rebuttal sample or sampling

methodology.   Any objections concerning the validity of the sampling protocol, or the size

and/or composition of the samples that are not raised by the Sampling Defendants within the

foregoing 30-day period, and any different sampling methodologies and samples not disclosed

by the Sampling Defendants within the 14-day period, should be deemed waived and not subject

to future assertion in the actions absent Court order.

## CONCLUSION

For the reasons set forth herein, the Court should grant Plaintiff's motion *in limine*

concerning statistical sampling and enter an Order:  (i) holding that Plaintiff may attempt to

establish liability and determine damages by use of a statistically valid random sample of loans, drawn in the manner set forth in the accompanying declaration of Dr. Karl N. Snow; (ii) admitting into evidence the expert testimony of Dr. Karl N. Snow regarding statistical sampling, including pursuant to Federal Rule of Evidence 702; and (iii) requiring Defendants to disclose any rebuttal sample or sampling methodology at the time and manner set forth in Section IV above.

Dated:  November 6, 2014

QUINN EMANUEL URQUHART
   & SULLIVAN, LLP

By: _____
Peter E. Calamari
David L Elsberg
Isaac Nesser
51 Madison Avenue, 22nd Floor
New York, New York  10010
Telephone:  (212) 849-7000
Facsimile:  (212) 849-7100
Petercalamari@quinnemanuel.com
davidelsberg@quinnemanuel.com
Isaacnesser@quinnemanuel.com

*Counsel To Plaintiff*