Hearing Date:  **November 20, 2014**
Opposition Deadline:  **October 23, 2014**
Reply Deadline:  **November 7, 2014**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE RESCAP LIQUIDATING TRUST MORTGAGE PURCHASE LITIGATION | Case No. 12-12020 (MG) (Ch. 11) Adv. Proc. No. 14-07900 (MG) |

*This document relates to*:

Residential Funding Co. v. HSBC Mortg. Corp. (USA), Adv. Proc. No. 14-01915 (MG)

Residential Funding Co. v. Greenpoint Mortg. Funding, Inc., Adv. Proc. No. 14-01916 (MG)

Residential Funding Co. v. UBS Real Estate Secs., Inc., Adv. Proc. No. 14-01926 (MG)

ResCap Liquidating Trust v. Summit Fin. Mortg. LLC, Adv. Proc. No. 14-01996 (MG)

ResCap Liquidating Trust v. First Mariner Bank, N.A., Adv. Proc. No. 14-02003 (MG)

ResCap Liquidating Trust v. Mortg. Investors Grp., Inc., Adv. Proc. No. 14-02004 (MG)

Residential Funding Co. v. SunTrust Mortg. Inc., Adv. Proc. No. 13-1820 (MG)

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR COLLECTIVE MOTION TO DISMISS THE AMENDED COMPLAINTS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................... ii

ARGUMENT ............................................................................................1

I.    PLAINTIFF'S INDEMNIFICATION CLAIM IS BARRED TO THE EXTENT
IT SEEKS RECOVERY FOR SECURITIES OR FRAUD CLAIMS AGAINST
RFC ....................................................................................................1

II.   PLAINTIFF'S BREACH-OF-CONTRACT CLAIMS ARE UNTIMELY. .......................5

    A.    New York's Borrowing Statute Mandates Use of the Shortest Limitation
        Period, Delaware's Three-Year Statute of Limitation. ............................6

    B.    The "Continuing Obligation" Doctrine Is Not Applicable. ....................8

    C.    Plaintiff's Collateral Estoppel Arguments are Wrong. ........................10

III.  THE COMPLAINTS FAIL AS A MATTER OF LAW....................................12

CONCLUSION.......................................................................................15

## **TABLE OF AUTHORITIES**

### CASES

*ACE Sec. Corp. v. DB Structured Prods.*, 977 N.Y.S.2d 229 (1st Dep't 2013) ...........................8

*ACE Sec. Corp. Home Equity Loan Trust Series 2007-HE3 v. DB Structured Prods.*, 5 F. Supp. 3d 543 (S.D.N.Y. 2014).............................................................8–9, 14, 15

*Ades v. Deloitte & Touche*, 1993 WL 362364 (S.D.N.Y. Sept. 17, 1993) .....................................3

*AIG v. Countrywide Fin. Corp.*, 834 F. Supp. 2d 949 (C.D. Cal. 2012) .......................................7

*Am. Lumbermens Mut. Cas. Co. v. Cochrane*, 129 N.Y.S.2d 489 (Sup. Ct. N.Y. Cnty. 1954) ...................................................................................................................6

*Assured Guar. Mun. Corp. v. Flagstar Bank FSB*, 2011 WL 5335566 (S.D.N.Y. Oct. 31, 2011) ...................................................................................................................15

*Bank Hapoalim B.M. v. Bank of Am. Corp.*, 2012 WL 6814194 (C.D. Cal. Dec. 21, 2012) ...........................................................................................................................15

*Barbagallo v. Marcum LLP*, 2012 WL 1664238 (E.D.N.Y. May 11, 2012)..................................2

*Bear Stearns Mortg. Funding Trust 2006-SL1 v. EMC Mortg. LLC*, No. 7701-VCL (Del. Ch. Aug. 19, 2014)....................................................................................................9

*Besser v. E.R. Squibb & Sons, Inc.*, 146 A.D.2d 107 (1st Dep't 1989), *aff'd*, 552 N.E.2d 171 (N.Y. 1990)..................................................................................................7

*Brinckerhoff v. JAC Holding Corp.*, 263 A.D.2d 352 (1st Dep't 1999) ....................................6–7

*Cantor Fitzgerald, Inc. v. Lutnick*, 313 F.3d 704 (2d Cir. 2002)..................................................6

*CBS Corp. v. Eaton Corp.*, 2010 WL 1375169 (S.D.N.Y. Mar. 30, 2010) ...................................4

*Central Mortgage Co. v. Morgan Stanley Mortgage Capital Holdings, LLC*, 2012 WL 3201139 (Del. Ch. Aug. 7, 2012) ...........................................................................13, 15

*CIFG Assurance, Inc. v. Goldman Sachs & Co.*, 2012 WL 1562718 (Sup. Ct. N.Y. Cnty. May 1, 2012) .......................................................................................................14

*Citigroup Mortgage Loan Trust 2007-AMC3 ex rel. U.S. Bank v. Citigroup Global Markets Realty Corp.*, 2014 WL 1329165 (S.D.N.Y. Mar. 31, 2014) .................14, 15

*Credit Suisse First Boston, LLC v. Intershop Commc'ns. AG*, 407 F. Supp. 2d 541 (S.D.N.Y. 2006).....................................................................................................................4

*Department of Economic Development v. Arthur Andersen & Co. (U.S.A.)*, 747 F. Supp. 922 (S.D.N.Y. 1990) ................................................................................. 2–3

*Donaldson Lufkin & Jenrette Sec. Corp. v. Star Techs, Inc.*, 561 N.Y.S.2d 371 (Sup. Ct. N.Y. Cnty. 1990), *aff'd*, 180 A.D.2d 495 (1st Dept. 1992) ....................... 4

*Fireman's Fund Insurance Co. v. Western National Mutual*, 851 F. Supp. 1361 (D. Minn. 1994) ......................................................................................................... 4

*Gibbs-Alfano v. Burton*, 281 F.3d 12 (2d Cir. 2002) .................................................. 4

*Globus v. Law Research Serv., Inc.*, 418 F.2d 1276 (2d Cir. 1969) .......................... 2

*Global Fin. Corp. v. Triarc Corp.*, 715 N.E.2d 482 (N.Y. 1999) .............................. 6

*Greenwald v. Am. Medcare Corp.*, 666 F. Supp. 489 (S.D.N.Y. 1987) .................... 4

*Henning Nelson Constr. Co. v. Fireman's Fund Am. Life Ins. Co.*, 383 N.W.2d 645 (Minn. 1986) ...................................................................................................... 10

*Hillstrom v. Kenefick*, 2004 WL 2823222 (D. Minn. Dec. 9, 2004) ........................ 10

*In re Del-Val Fin. Corp. Sec. Litig.*, 868 F. Supp. 547 (S.D.N.Y. 1994) .................. 4

*In re Livent Securities Litigation*, 193 F. Supp. 2d 750 (S.D.N.Y. 2002) ................ 3

*Inver Grove Heights Mkt. Place, LLC v. ANC Foods III, Inc.*, 2008 WL 2574482 (Minn. App. July 1, 2008) ....................................................................................... 10

*Kilmartin v. H.C. Wainwright & Co.*, 637 F. Supp. 938 (D. Mass. 1986) ................ 4

*Lair v. Oglesby*, 14 F.3d 15 (8th Cir. 1993) .............................................................. 11

*Lehman Bros. Holdings Inc. v. Universal Am. Mortg. Co.*, 2013 WL 169997 (S.D. Fla. Jan. 9, 2013) ................................................................................................... 13

*Lehman XS Trust, Series 2006-4N ex rel. U.S. Bank v. GreenPoint Mortg. Funding, Inc.*, 991 F. Supp. 2d 472 (S.D.N.Y. 2014) ............................................... 9

*Linares v. McLaughlin*, 423 F. App'x 84 (2d Cir. 2011) ........................................... 12

*Martin v. Julius Dierck Equip. Co.*, 52 A.D.2d 463 (2d Dep't 1976), *aff'd*, 374 N.E.2d 97 (N.Y. 1978) ............................................................................................ 7

*Maslan v. Am. Airlines, Inc.*, 885 F. Supp. 90 (S.D.N.Y. 1995) ............................... 6

*Maverick Fin. Grp. v. State Bank of Loretto*, 2002 WL 31749161 (Minn. App. Dec. 10, 2002) ......................................................................................................... 2

*McCleod v. Travelers Indem. Co.*, 2012 WL 5210945 (S.D.N.Y. Oct. 19, 2012)...........................7

*Milsap v. Special Sch. Dist. No. 1*, 1999 WL 391859 (Minn. App. June 15, 1999).....................11

*Morgan Stanley Mortg. Loan Trust 2006-13ARX v. Morgan Stanley Mortg. Capital Holdings*, 2014 WL 4829638 (Sup. Ct. N.Y. Cnty. Sept. 25, 2014) ...........................9

*Odette v. Shearson, Hammill & Co.*, 394 F. Supp. 946 (S.D.N.Y. 1975) ..................................2, 3

*Okla. Police Pension & Ret. Sys. v. U.S. Bank*, 291 F.R.D. 47 (S.D.N.Y. 2013).........................15

*Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828 (Minn. 2011)......................................................9

*Peggy Rose Revocable Trust v. Eppich*, 640 N.W.2d 601 (Minn. 2002)......................................10

*Peralta v. Vasquez*, 467 F.3d 98 (2d Cir. 2006) ...........................................................................5

*Portfolio Recovery Assocs., LLC v. King*, 927 N.E.2d 1059 (N.Y. 2010)....................................6

*RFC v. Americash*, 2014 WL 3577312 (D. Minn. July 21, 2014) .................................................10

*RFC v. Cmty. W. Bank, N.A.*, 2014 WL 5207485 (D. Minn. Oct. 14, 2014)..........................10, 11

*RFC v. Embrace Home Loans, Inc.*, 2014 WL 2766114 (D. Minn. June 18, 2014).............. *passim*

*RFC v. GreenPoint Mortg. Funding, Inc.*, No. 13-3538, Dkt. No. 70 (D. Minn. Oct. 15, 2014) ....................................................................................................................11

*RFC v. GreenPoint Mortg. Funding, Inc.*, No. 14-5452, Dkt No. 9 (S.D.N.Y. Aug. 4, 2014) ........................................................................................................................5

*RFC v. Mortg. Access Corp.*, 2014 WL 3577403 (D. Minn. July 21, 2014) ...............................10

*RFC v. Mortg. Outlet, Inc.*, 2014 WL 4954645 (D. Minn. Oct. 1, 2014)................................9, 10

*Seiffer v. Topsy's Int'l Inc.*, 487 F. Supp. 653 (D. Kan. 1980) .....................................................4

*Statek Corp. v. Dev. Specialists, Inc. (In re Coudert Bros. LLP)*, 673 F.3d 180 (2d Cir. 2012) ........................................................................................................................7

*Torchlight Loan Servs., LLC v. Column Fin., Inc.*, 2012 WL 3065929 (S.D.N.Y. July 25, 2012)....................................................................................................................14

*U.S. Bank v. Bank of Am.*, 2012 WL 6136017 (S.D.N.Y. Dec. 11, 2012)....................................9

*U.S. Bank v. DLJ Mortg. Capital, Inc.*, 2014 WL 5334039 (1st Dep't Oct. 21, 2014) ........................................................................................................................9

*United States v. Maull*, 855 F.2d 514 (8th Cir. 1988)................................................................11

*Verizon Directories Corp. v. Continuum Health Partners*, 74 A.D.3d 416 (1st
Dep't 2010) ......................................................................................................7

*Verizon Directories Corp. v. Continuum Health Partners, Inc.*, 2009 WL 1116113
(Sup. Ct. N.Y. Cnty. Apr. 21, 2009) .................................................................7

*Wydallis v. U.S. Fid. & Guar. Co.*, 472 N.E.2d 322 (N.Y. 1984) ............................6–7

## OTHER AUTHORITIES

5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §
1357 (3d ed. 2004 & Supp. 2014)....................................................................12

Restatement (Second) of Judgments § 13, cmt. e .......................................................11

Federal Rule of Civil Procedure 12(b)(6) ............................................................11, 12

## ARGUMENT

Plaintiff's Opposition ("Opp.") fails to refute any of the three grounds on which

Defendants moved to dismiss.

*First*, Plaintiff concedes that it seeks indemnity for billions of dollars of settled securities

law and fraud claims, and nowhere disputes that indemnification for such claims is barred in this

Circuit.  Instead, it argues that dismissal is premature and that it is entitled to prove RFC's actual

innocence, ignoring that it has not even asserted such a claim and that courts, including in this

District, routinely reject on motion to dismiss indemnification for securities law and fraud

claims.

*Second*, Plaintiff adduces no authority to refute Defendants' position that New York's

borrowing statute mandates use of the shortest statute of limitations available which, in this case,

requires application of Delaware's three-year limitations period.  Plaintiff, instead, resorts to

asserting the "continuing obligation" doctrine, but court after court has rejected that doctrine in

mortgage-backed securities cases, including in parallel cases brought by Plaintiff, holding as a

matter of law that breach of a pre-suit remedial provision, such as notice, does not constitute a

separate breach of contract for purposes of accrual of the statute of limitations.

*Third*, Plaintiff admits that its Complaints do not address alleged breaches for the vast

majority of loans at issue, as is required where, as here, a plaintiff seeks loan-by-loan relief.

## I.    PLAINTIFF'S INDEMNIFICATION CLAIM IS BARRED TO THE EXTENT IT SEEKS RECOVERY FOR SECURITIES OR FRAUD CLAIMS AGAINST RFC.[1]

It is uncontroverted that a significant portion of the underlying claims for which Plaintiff

seeks indemnity were either securities law, fraud, or other intentional tort claims.  Nor does

Plaintiff dispute that its own pleadings in this case and the Findings of Fact in RFC's bankruptcy

---

[1] Defendants HSBC and UBS do not join in this section of Defendants' Reply.  *See* Defs.' Mem. of Law In Support of Collective Mot. to Dismiss the Am. Compls. ("Mem.") at 10 n.17.

demonstrate that more than $2 billion in allowed claims for which Plaintiff seeks indemnification arose out of securities law, fraud, or other intentional tort claims asserted against RFC.[2]

These uncontroverted facts, drawn from Plaintiff's Complaints and the documents cited in those Complaints, are dispositive. Binding precedent establishes that, as a matter of public policy, indemnification is barred when the underlying claims are based on securities law, fraud, or other intentional tort claims. *See Globus v. Law Research Serv., Inc.*, 418 F.2d 1276, 1288 (2d Cir. 1969) (indemnification "would encourage flouting the policy of the common law and the Securities Act"); *Odette v. Shearson, Hammill & Co.*, 394 F. Supp. 946, 956 (S.D.N.Y. 1975) (extending bar on indemnification of securities law claims to negligent conduct); *Barbagallo v. Marcum LLP*, 2012 WL 1664238, *4 (E.D.N.Y. May 11, 2012) ("New York law does not permit a party to indemnify itself against its own intentional torts."); *Maverick Fin. Grp. v. State Bank of Loretto*, 2002 WL 31749161, *5 (Minn. App. Dec. 10, 2002) (under Minnesota law, "indemnity provision is not enforceable against intentional torts or deliberate acts").

Plaintiff tries to forestall dismissal by contending that Defendants seek an "advisory" opinion and dismissal is "premature" because "factual" issues should be addressed to decide the motion. Opp. at 1. Plaintiff is wrong. Courts routinely grant motions to dismiss indemnification claims for liability incurred based on securities law, fraud, or intentional tort claims. *Department of Economic Development v. Arthur Andersen & Co. (U.S.A.)*, 747 F. Supp. 922, 931 (S.D.N.Y. 1990), is directly on point. There, the defendant moved to dismiss an indemnification claim. The court found that, although it could not "completely" dismiss the indemnity claim "at this

---

[2] *See* Mem. at 2 & n.3; Ahmad Supp. Decl., Ex. F (Direct Testimony of Jeffrey Lipps, Ch. 11 ECF Doc. # 5701, at 2 (Nov. 12, 2013)) (debtor summarizing settlement of securities law and fraud claims of private securities claimants, monoline insurers, and institutional RMBS investors). References to documents filed in RFC's Chapter 11 proceeding, No. 12-12020, are identified as "Ch. 11 ECF Doc. # __."

juncture," as "a matter of law . . . indemnity is unavailable as to those claims in the main action

where [the indemnitee] is found to have recklessly or intentionally contributed to plaintiff's

injury," and the court dismissed "the claims for indemnity for violations of . . . the federal

securities law and fraud claims." *Id.* at 930–31, 944.  Other cases in this District similarly have

dismissed indemnification claims at the pleadings stage.  *See*, *e.g.*, *Ades v. Deloitte & Touche*,

1993 WL 362364, *22 (S.D.N.Y. Sept. 17, 1993) (dismissing indemnity claim based on

securities law claim); *Odette*, 394 F. Supp. at 955–57 (same).  Thus, even if Plaintiff may obtain

indemnity for certain other claims, it is proper for the Court to rule on a motion to dismiss that

Plaintiff is precluded from obtaining indemnity for underlying liability arising out of its

violations of the securities laws, or its fraud or other intentional torts.

Plaintiff also argues that it is entitled to indemnification if it can prove RFC was

"innocent," *i.e.*, "without fault."  Opp. at 11 & n.11.  Plaintiff does not dispute, however, the

court's logic in *In re Livent Securities Litigation*, where it held that indemnification for securities

law claims is simply unavailable because the indemnitor is either going to "be found not liable

for the alleged fraud, in which case there would be no liability to indemnify," or it will "be found

liable to plaintiffs for securities violation," in which case "indemnification is unwarranted."  193

F. Supp. 2d 750, 754 (S.D.N.Y. 2002).

Having no response to the court's reasoning, Plaintiff instead argues that *Livent* and

similar cases are "inapplicable" because "RFC settled the underlying claims."  Opp. at 12.

Plaintiff misses the point.  Regardless of whether RFC settled, it is not entitled to

indemnification for liability for, as *Livent* teaches, if RFC had proceeded to trial, it either would

have been found not liable, in which case there would have been no liability to indemnify, or it

would have been found liable, in which case public policy would have barred indemnification.

3

Rather, Plaintiff's proffered authority stands only for the narrow proposition that a settling

defendant may be entitled to indemnity for litigation expenses—as opposed to liability—to the

extent it can prove its actual innocence.[3]  With respect to the underlying liability, the rule is

clear:  indemnification is not permitted for liability incurred in connection with the settlement of

federal securities law claims.  *See, e.g., In re Del-Val Fin. Corp. Sec. Litig.*, 868 F. Supp. 547,

553 (S.D.N.Y. 1994) (dismissing settling defendants' claims for indemnification, as "[c]ourts do

not allow indemnification for securities claims because permitting it would reduce each actor's

incentive to perform its statutory duties carefully"); *Kilmartin v. H.C. Wainwright & Co.*, 637 F.

Supp. 938, 940 (D. Mass. 1986) (dismissing indemnification claim by settling defendants

because "[i]ndemnification is not available under the federal securities laws"); *Seiffer v. Topsy's

Int'l Inc.*, 487 F. Supp. 653, 708–09 (D. Kan. 1980) (same).[4]

     In any event, Plaintiff's actual innocence argument is a red herring:  glaringly absent

from Plaintiff's Complaints or Opposition is any contention that RFC acted without fault.

---

[3] *See Greenwald v. Am. Medcare Corp.*, 666 F. Supp. 489, 493 (S.D.N.Y. 1987) ("right to indemnification of litigation expenses survives a settlement"); *Donaldson Lufkin & Jenrette Sec. Corp. v. Star Techs, Inc.*, 561 N.Y.S.2d 371, 372 (Sup. Ct. N.Y. Cnty. 1990) (indemnity for "costs of defending" securities claim), *aff'd*, 180 A.D.2d 495 (1st Dept. 1992); *see also Credit Suisse First Boston, LLC v. Intershop Commc'ns. AG*, 407 F. Supp. 2d 541, 549 (S.D.N.Y. 2006) ("attorney's fees and other expenses incurred in successfully defending against a securities lawsuit").

[4] Similarly, settling fraud defendants are not entitled to indemnification.  Under New York law, an alleged fraudfeasor seeking indemnity, even if it "was never found liable for fraud," is entitled only to "legal defense fees in cases alleging intentional or fraudulent wrongdoing."  *CBS Corp. v. Eaton Corp.*, 2010 WL 1375169, *2 (S.D.N.Y. Mar. 30, 2010).  Plaintiff cites *Gibbs-Alfano v. Burton* to support its contrary claim, Opp. at 9, but that case concerned "nonfeasance," not fraud. 281 F.3d 12, 19–21 (2d Cir. 2002).  Plaintiff also adduces no Minnesota authority holding that settling defendants are entitled indemnification for allegedly fraudulent conduct.  *Fireman's Fund Insurance Co. v. Western National Mutual*, 851 F. Supp. 1361 (D. Minn. 1994), which Plaintiff claims "applied this principle to settling defendants," Opp. at 10, is inapposite; the court there based its decision on a contract that expressly required indemnification for "willful misconduct" even absent an adjudication of liability.  851 F. Supp. at 1368.  Plaintiff does not allege any such contract here.

Moreover, any such assertion would be implausible.  It would defy logic for Plaintiff to assert

that RFC agreed to settlements of $2 billion in allowed claims for securities law violations and

related torts, but really was innocent of those claims.  As noted in Defendants' opening brief,

Mem. at 3, Plaintiff's own counsel, while representing MBIA in one of the underlying cases,

asserted in court-filed pleadings that RFC "perpetrated a fraud" in connection with its issuance of

RMBS.  Indeed, RFC itself submitted to this Court expert testimony admitting material

underwriting defects in 43.5% of its loans underwritten from 2004-07 and sold into

securitizations.  *See* Ahmad Supp. Decl., Ex. G (Direct Examination of Frank Sillman, Ch. 11

ECF Doc. # 5703, at 2 (Nov. 12, 2013)) (further estimating recoverable damages against RFC

from defects in loans in the range of $7.4 to 8.7 billion).  Not only is Plaintiff's belated

speculation that it could prove RFC's innocence implausible, but it is estopped by its own

judicial submissions from taking that position here.  *See Peralta v. Vasquez*, 467 F.3d 98, 105

(2d Cir. 2006).[5]

## II.    PLAINTIFF'S BREACH-OF-CONTRACT CLAIMS ARE UNTIMELY.

Plaintiff's response on the statute of limitations issue is, if anything, even more infirm.

Its opposition to the application of Delaware's three-year statute of limitations and "continuing

obligation" theory are directly contrary to controlling caselaw.

---

[5] Notably, for Plaintiff to attempt to prove RFC's innocence, it would need to litigate the merits of the securities and fraud claims that RFC settled, an exercise Plaintiff has assiduously eschewed.  *See* Ahmad Supp. Decl., Ex. H (Pl.'s Mem. of Law In Opp. to Def.'s Mot. To Withdraw the Ref., *RFC v. GreenPoint Mortg. Funding, Inc.*, No. 14-5452, Dkt No. 9, at 19 n.8 (S.D.N.Y. Aug. 4, 2014)) (Plaintiff asserts that its "claims require a showing only of potential liability and the reasonableness of the settlements").

A. **New York's Borrowing Statute Mandates Use of the Shortest Limitation Period, Delaware's Three-Year Statute of Limitation.**

*First*, Plaintiff contends that, because RFC maintained its principal place of business in Minnesota, that state's longer limitations period governs, not Delaware's shorter limitations period. Plaintiff is wrong. Its contention ignores the directives of the New York Court of Appeals and Second Circuit, both of which have held that, under New York's borrowing statute, a corporation's residence is determined by "look[ing] to its *State of incorporation* or its principal place of business." *Global Fin. Corp. v. Triarc Corp.*, 715 N.E.2d 482, 485 (N.Y. 1999);[6] *Cantor Fitzgerald, Inc. v. Lutnick*, 313 F.3d 704, 710 (2d Cir. 2002) ("Because . . . [plaintiff] is a Nevada corporation with offices in California, plaintiffs' alleged economic injury was sustained and the cause of action accrued in *either* Nevada or California."). Indeed, New York state and federal courts have held that "[f]or a corporation the place where economic injury is felt is usually understood to be its place of incorporation." *Maslan v. Am. Airlines, Inc.*, 885 F. Supp. 90, 94 (S.D.N.Y. 1995); *Am. Lumbermens Mut. Cas. Co. v. Cochrane*, 129 N.Y.S.2d 489, 491 (Sup. Ct. N.Y. Cnty. 1954) ("A corporation is a resident of the state which creates it. . . ."). Plaintiff's Opposition nowhere addresses this controlling caselaw.[7]

---

[6] All emphases are added unless otherwise stated.

[7] In each of the cases (save one) that Plaintiff cites that post-date the New York Court of Appeals' decision in *Global Financial*, plaintiff's place of incorporation and principal of business either did not differ or the court was not presented with the state of incorporation as a place of injury. *See* Opp. at 16 & n.17. *Brinckerhoff v. JAC Holding Corp.*, decided three weeks after *Global Financial*, is the only exception, and it nowhere acknowledged the Court of Appeals' decision. 263 A.D.2d 352 (1st Dep't 1999). Moreover, RFC's assertion that principal place of business is dispositive of residency for purposes of the borrowing statute is directly contrary to the New York Court of Appeals' holding that a New York corporation with its principal place of business in Massachusetts was a New York resident for purposes of the borrowing statute. *Wydallis v. U.S. Fid. & Guar. Co.*, 472 N.E.2d 322, 323–24 (N.Y. 1984); *see also Portfolio Recovery Assocs., LLC v. King*, 927 N.E.2d 1059, 1061 (N.Y. 2010) (Plaintiff's principal place of business and state of incorporation were both in Delaware; holding that "borrowing statute applies" because plaintiff "is incorporated in Delaware and is not a New York

Plaintiff also fails to adduce any authority contradicting the rule in this Circuit that the

borrowing statute "mandat[es] us[ing] the *shortest* statute of limitations available." *Statek Corp.*

*v. Dev. Specialists, Inc. (In re Coudert Bros. LLP)*, 673 F.3d 180, 190 (2d Cir. 2012); *accord*

*McCleod v. Travelers Indem. Co.*, 2012 WL 5210945, *1 n.2 (S.D.N.Y. Oct. 19, 2012).   That

rule "giv[es] effect to the primary purposes of the borrowing statute, which are to prevent forum

shopping by nonresident plaintiffs, and also to give resident defendants the benefit of the shortest

period of limitations." *Martin v. Julius Dierck Equip. Co.*, 52 A.D.2d 463, 468 (2d Dep't 1976),

*aff'd*, 374 N.E.2d 97 (N.Y. 1978); *Besser v. E.R. Squibb & Sons, Inc.*, 146 A.D.2d 107, 114 (1st

Dep't 1989) (same), *aff'd*, 552 N.E.2d 171 (N.Y. 1990).[8]  Plaintiff's Opposition has no response.

Of all the authorities cited, only two cases specifically examined the circumstance where,

as here, a court was required to choose between the differing limitation periods of the plaintiff's

place of incorporation and its principal place of business.   The most recent, factually analogous

case is *Verizon Directories Corp. v. Continuum Health Partners*, 74 A.D.3d 416 (1st Dep't

2010), and it fully supports Defendants.[9]  There, the First Department selected the shorter statute

of limitations of Delaware (plaintiff's place of incorporation) over the longer limitations period

of Texas (plaintiff's principal place of business), and dismissed the lawsuit as untimely.  *Id.*

---

resident"); *AIG v. Countrywide Fin. Corp. (In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*), 834 F. Supp. 2d 949, 955 (C.D. Cal. 2012) (observing that *Brinckerhoff*, as well as other authority cited by Plaintiff, conflict with *Wydallis*, which "is a clear expression from New York's highest court; its holding is binding on this Court unless and until the legislature or the New York Court of Appeals revisits the issue.").

[8] Defendants HSBC, UBS, and GreenPoint each reside in New York.  *See* HSBC Am. Compl. ¶13; UBS Sec. Am. Compl. ¶ 15; GreenPoint Sec. Am. Compl. ¶ 14.

[9] The First Department was provided with both Plaintiff's state of incorporation and principal place of business.  *See Verizon Directories Corp. v. Continuum Health Partners, Inc.*, 2009 WL 1116113, at nn.1 & 2 (Sup. Ct. N.Y. Cnty. Apr. 21, 2009).

Plaintiff articulates no principled legal basis for opposing application of Delaware's three-year statute of limitations. Under that limitations period, Plaintiff's breach-of-contract claims are time-barred virtually in their entirety. Mem. at 15–17.

**B.    The "Continuing Obligation" Doctrine Is Not Applicable.**

Plaintiff seeks to escape application of any limitations period to its contract claims by arguing that Defendants had a "continuing obligation" to notify RFC of contract breaches, and that this breach extends any statute of limitations. Again, Plaintiff's argument runs headlong into controlling contrary caselaw.

Numerous federal and state court decisions in New York and elsewhere involving mortgage-backed securities squarely hold that breach of a pre-suit remedial provision, such as notice, does *not* constitute a separate breach of contract for purposes of accrual of the statute of limitations. Plaintiff cites approvingly the seminal case addressing this issue, *ACE Securities*, Opp. at 19 n.20, but ignores its holding that "pre-suit remedial provisions," such as an agreement to repurchase a defective loan, do not "constitut[e] separate promises" and cannot "serve as the basis for independent causes of action." *ACE Sec. Corp. Home Equity Loan Trust Series 2007-HE3 v. DB Structured Prods.*, 5 F. Supp. 3d 543, 552 (S.D.N.Y. 2014). The court in *ACE* observed that "[n]umerous courts have held that a defendant's failure to repurchase a breached loan does not affect when the plaintiff's claim accrues, and therefore does not constitute a separate breach of contract." *Id.* To hold otherwise "would effectively allow a plaintiff to extend the statute of limitations" for contract claims indefinitely. *Id.* For this reason, court after court has held that a defendant's failure to fulfill pre-suit remedial obligations, such as providing notice, does not affect when a claim accrues.[10] This result also fully accords with Minnesota

---

[10] *See, e.g., ACE Sec. Corp. v. DB Structured Prods.*, 977 N.Y.S.2d 229, 231 (1st Dep't 2013) (holding that "claims accrued on the closing date . . . when any breach of the representations and

8

law.[11]  Defendants' alleged failure to notify RFC of an Event of Default does not constitute an

independent breach of contract, Plaintiff has not even asserted such a claim in its Complaints,

and any such assertion as a matter of law would not delay accrual of the claim that Plaintiff has

brought.  Plaintiff's invocation of a "continuing obligation" cannot save its time-barred claims.[12]

Plaintiff next argues that, "[u]nder Minnesota law," the Client Guide "extends the statute

of limitations applicable to" its contract claims.  Opp. at 20.[13]  That argument, however, has been

---

warranties . . . occurred," regardless of whether plaintiff received notice of breaches); *accord U.S. Bank v. DLJ Mortg. Capital, Inc.*, 2014 WL 5334039 (1st Dep't Oct. 21, 2014) (rejecting plaintiff's request to overturn *ACE* and plaintiff's argument that a mortgage seller's failure to cure or replace a non-conforming loan is a separate breach of the agreement that triggers a new limitations period); *Morgan Stanley Mortg. Loan Trust 2006-13ARX v. Morgan Stanley Mortg. Capital Holdings*, 2014 WL 4829638, *2 (Sup. Ct. N.Y. Cnty. Sept. 25, 2014) (rejecting "cause of action for failure to notify"); *Lehman XS Trust, Series 2006-4N ex rel. U.S. Bank v. GreenPoint Mortg. Funding, Inc.*, 991 F. Supp. 2d 472, 478–79 (S.D.N.Y. 2014) (party's "failure to comply with its cure or repurchase obligations does not give rise to a separate breach of contract," even when the contract contains a specific "Accrual Provision" accruing cause of action for "failure[s] to . . . cure or repurchase"); *accord* Ahmad Supp. Decl., Ex. I (Tr. of Rulings of the Court from Oral Argument on Defs.' Mot. to Dismiss, *Bear Stearns Mortg. Funding Trust 2006-SL1 v. EMC Mortg. LLC*, No. 7701-VCL, at 10–13 (Del. Ch. Aug. 19, 2014)) ("[N]otwithstanding the accrual provision, this transaction accrued at the time of closing . . . I do not believe, either as a matter of New York law or as a matter of Delaware law, that [the provision providing for accrual upon seller's failure to cure breach] alters the statute of limitations analysis").

[11] *See Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 837 (Minn. 2011) (observing that "courts must examine the nature of the wrongful conduct at issue in order to determine when the cause of action accrues," and rejecting plaintiff's claim that a continuing obligation gives rise to "separate causes of action with distinct accrual dates").

[12] Moreover, even if the notice requirement of the Client Guide could give rise to a separate cause of action, Plaintiff's claim still would fail for lack of causation.  As one court recently held in a parallel case brought by Plaintiff, RFC claims damages based on the defendant's alleged breaches of representations and warranties, not because of any breach of any notice requirement. *RFC v. Mortg. Outlet, Inc.*, 2014 WL 4954645, *5 (D. Minn. Oct. 1, 2014).  Any purported breach of the Client Guide's notice provision is completely untethered from Plaintiff's alleged damages and would fail for lack of causation.  *See, e.g.*, *U.S. Bank v. Bank of Am.*, 2012 WL 6136017, *8 (S.D.N.Y. Dec. 11, 2012) (dismissing contract claim because, "as presently pleaded, there was no injury flowing from [defendant's] alleged breach").

[13] The Client Guide is not applicable to Defendants UBS and GreenPoint.  *See* Opp. at 4.

expressly rejected by a Minnesota court in a parallel case Plaintiff brought.  The Client Guide,

the court held, merely provides that RFC "is not precluded from seeking remedies for breaches

of representations and warranties after the initial sale of the loans," not that it is free to pursue

time-barred claims.  *RFC v. Cmty. W. Bank, N.A.*, 2014 WL 5207485, *9 n.6 (D. Minn. Oct. 14,

2014).  Furthermore, it is black-letter Minnesota law that provisions seeking to extend the statute

of limitations "are not generally favored and are strictly construed against the party invoking

them."  *Henning Nelson Constr. Co. v. Fireman's Fund Am. Life Ins. Co.*, 383 N.W.2d 645, 651

(Minn. 1986).  "In assessing the reasonableness" of a provision extending the statute of

limitations, Minnesota courts use as the "starting point to consider what parameters the

legislature has determined to be appropriate with respect to the [applicable] claims."  *Peggy Rose*

*Revocable Trust v. Eppich*, 640 N.W.2d 601, 607 (Minn. 2002).  Plaintiff's assertion that the

Client Guide effects up to a *five-fold* extension of the statute of limitations (in the case of a 30-

year mortgage, for example) is patently unreasonable and finds no support in Minnesota law.

*See Hillstrom v. Kenefick*, 2004 WL 2823222, *4 (D. Minn. Dec. 9, 2004) (extension of

"Minnesota's two-year statute of limitations" to a "three-year contractual limitation period . . . is

reasonable"); *Inver Grove Heights Mkt. Place, LLC v. ANC Foods III, Inc.*, 2008 WL 2574482,

*2 (Minn. App. July 1, 2008) (A "construction is to be avoided which would lead to absurd or

unjust results").

### C.    Plaintiff's Collateral Estoppel Arguments are Wrong.

Five different judges in 14 parallel cases filed by Plaintiff have now held that its contract

claims for loans sold before May 14, 2006 are time-barred under Minnesota law.[14]  Those

---

[14] *See RFC v. Embrace Home Loans, Inc.*, 2014 WL 2766114, *2–4 (D. Minn. June 18, 2014);
*RFC v. Americash*, 2014 WL 3577312, *5 (D. Minn. July 21, 2014); *RFC v. Mortg. Access
Corp.*, 2014 WL 3577403, *5 (D. Minn. July 21, 2014); *Mortg. Outlet*, 2014 WL 4954645, at *5;

determinations are persuasive and correct and, to the extent Minnesota law governs, they

collaterally estop Plaintiff from now contending otherwise.

Plaintiff raises three arguments against collateral estoppel, Opp. at 23–25, each of which

is foreclosed under well-settled law.

*First*, Plaintiff contends there "is no final judgment to which res judicata effect attaches,"

because "no judgment has been entered" and "[n]o appeal has been taken." Opp. at 23–24. But

collateral estoppel fully applies where, as here, the first adjudication is resolved on a motion to

dismiss, *see Milsap v. Special Sch. Dist. No. 1*, 1999 WL 391859, *1, *3–4 (Minn. App. June 15,

1999); "it is well-established that a Rule 12(b)(6) dismissal is a judgment on the merits for res

judicata purposes," *United States v. Maull*, 855 F.2d 514, 516 n.3 (8th Cir. 1988). Principles of

preclusion similarly apply to discrete claims dismissed in an otherwise pending action. *See, e.g.*,

*Lair v. Oglesby*, 14 F.3d 15, 17 n.2 (8th Cir. 1993) ("[R]es judicata can apply to prevent

reassertion of dismissed claims, even though there remain live claims in the same litigation.");

Restatement (Second) of Judgments § 13, cmt. e (1982) ("A judgment may be final in a res

judicata sense as to a part of an action although the litigation continues as to the rest.").

Plaintiff's attempt to avoid collateral estoppel is contrary to these basic legal precepts.

*Second*, Plaintiff contends there is "no identity of the issues" between the Minnesota

cases and the Complaints here. Opp. at 24. Plaintiff's attempt to deny that it filed cookie-cutter

complaints in more than 70 cases is not credible. The Court need look only at Plaintiff's

continuing-obligation argument—that Defendants "fail[ed] to provide RFC" with "information

that materially affected the loans sold," and that "breaches of this continuing obligation allegedly

---

*Cmty. W. Bank*, 2014 WL 5207485, at *8–9; Ahmad Supp. Decl., Ex. J (Mem. Op., *RFC v.
GreenPoint Mortg. Funding, Inc.*, No. 13-3538, Dkt. No. 70, at 6–8 (D. Minn. Oct. 15, 2014)).

occurred post-sale"—to appreciate that its contention on this issue here is identical to its

argument in the Minnesota cases. *Compare*, *e.g.*, *Embrace*, 2014 WL 2766114, at \*3, *with*

HSBC Am. Compl. ¶ 19. Court after court in Minnesota has expressly rejected Plaintiff's

argument as a matter of law. *See supra*, at 10 & n.14.

*Third*, Plaintiff calls Defendants' collateral estoppel argument "illogical" given that

several Minnesota courts declined to dismiss on this basis. Opp. at 25. The fact that some courts

have concluded that "the timeliness determination cannot be made at this juncture," Nesser

Decl., Ex. W (*First Mortgage* Order), at 3, however, does not affect the collateral estoppel

analysis, as "denial of a Rule 12(b)(6) motion is not a final determination on the merits for

purposes of res judicata." 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and*

*Procedure* § 1357 (3d ed. 2004 & Supp. 2014); *Linares v. McLaughlin*, 423 F. App'x 84, 85 (2d

Cir. 2011) (same). Multiple courts in parallel cases have finally adjudicated and dismissed

Plaintiff's contract claim as time-barred. *See supra*, at 10 & n.14. Plaintiff points to no contrary

judgment. The only "illogical" outcome would be to fail to give preclusive effect to these final

adjudications, which would only give rise down the road to the potential for inconsistent

judgments.

## III.    THE COMPLAINTS FAIL AS A MATTER OF LAW.

Plaintiff admits that its Complaints provide only "*examples* of defective loans sold by

Defendants to RFC" and do not address the vast majority of loans purportedly at issue. Opp. at

26. This shortcoming requires dismissal. As the court in *Embrace* held, in a case where the

plaintiff seeks loan-by-loan relief, RFC cannot "simply assert, without more, that an unspecified

number of loans were in breach of [defendant's] obligations." 2014 WL 2766114, at \*6.

Plaintiff attempts to distinguish *Embrace* by claiming that the Complaints here allege an

"extensive forensic review," Opp. at 29–30, but those alleged reviews concern only a fraction of

the loans that are the subject of Plaintiff's claims, Mem. at 25.[15]

Embrace accords with decisions in other RMBS cases.  For example, in Central

Mortgage Co. v. Morgan Stanley Mortgage Capital Holdings, LLC, the plaintiff initially alleged

that defendant received notice for 47 specific loans, and in an amended pleading sought to

expand its complaint to more than 12,000 additional loans constituting nearly every loan sold to

the plaintiff.  2012 WL 3201139, at *17–19 (Del. Ch. Aug. 7, 2012).  The defendant moved to

dismiss claims concerning the additional loans, arguing they were time-barred and could not

relate back because "the Original Complaint did not give it fair notice" of claims regarding the

new loans.  Id. at *17.  Then-Chancellor Strine agreed, holding that "each alleged breach of

contract due to a breach of representation made by [defendant] as to each individual loan

constitutes a separate transaction or occurrence" because "they are based on different loans and

distinct instances of misrepresentation."  Id. at *18.  The court rejected the plaintiff's contention

"that notice of the breach of one loan is notice as to breach of all other . . . loans."  Id. at *19.

The same result obtains here, where Plaintiff attempts to use its breach allegations on a handful

of loans to shoehorn thousands of additional loans into these actions.[16]

---

[15]  For example, Plaintiff alleges that HSBC sold to RFC "over 8,800 mortgage loans," HSBC
Am. Compl. ¶ 4, but it provides the results from its purported "forensic review" for only 1,535
loans.  Id. Ex. D.  In the UBS action, Plaintiff does not provide any list of loans allegedly subject
to its forensic review despite alleging that UBS sold "over 2,200 mortgage loans" to RFC.  UBS
Am. Compl. ¶ 4; UBS Mem. at 34.

[16]  See also Lehman Bros. Holdings Inc. v. Universal Am. Mortg. Co., 2013 WL 169997, *1
(S.D. Fla. Jan. 9, 2013) (interpreting contract to require that each loan be adjudicated separately
because each "was made at a different time, to different borrowers, in different locations
involving different purchases of different real properties; [and] most fundamentally, each loan
requires separate proof as to whether a breach occurred").

Similarly, in *Citigroup Mortgage Loan Trust 2007-AMC3 ex rel. U.S. Bank v. Citigroup Global Markets Realty Corp.*, 2014 WL 1329165 (S.D.N.Y. Mar. 31, 2014), the plaintiff sued on 1,267 loans for which plaintiff had provided pre-suit, loan-specific notice to defendant, as well as on unidentified loans for which plaintiff had provided no notice. The court dismissed the claims with respect to the latter for failure to state a claim. *Id.* at *6; *see also Torchlight Loan Servs., LLC v. Column Fin., Inc.*, 2012 WL 3065929, *5 (S.D.N.Y. July 25, 2012) (dismissing mortgage loan put back case identifying one loan because complaint did not adequately plead a factual basis for alleged contractual breaches).

Plaintiff's reliance on *ACE* to circumvent these holdings, Opp. at 28, is misplaced. In *ACE*, the complaint alleged that the defendant was given "multiple" pre-suit notices that "provided, for each loan as to which a breach had been identified, the loan number, the specific representations and warranties that had been breached, the specific subsections of the [contract] setting forth those representations and warranties, and a description of the facts establishing the breaches," while others "identified each breaching loan by number." 5 F. Supp. 3d at 550. As the court in *Embrace* observed, "although the *Ace* complaint did not list each defective loan and its defect or defects in the body of the complaint, the defendant knew before the complaint was filed specifically what loans in the pool were alleged to be defective and likely knew why each loan was allegedly defective. This is a far cry from the allegations in the Amended Complaint here." 2014 WL 2766114, at *5.[17] As in *Embrace*, the Complaints here nowhere allege that Plaintiff provided Defendants with any notice of loan-specific breaches, let alone "widespread"

---

[17] Similarly, in *CIFG Assurance, Inc. v. Goldman Sachs & Co.*, 2012 WL 1562718 (Sup. Ct. N.Y. Cnty. May 1, 2012), also cited by Plaintiff, Opp. at 28, the plaintiff had both "served notice of the breaches" and "provid[ed] a statistical sampling with documentation demonstrating the pervasive nature of the collective breaches in the underlying loans."

14

defects. *See, e.g.*, HSBC Am. Compl. ¶ 47.[18]  Plaintiff's remaining citations, Opp. at 28, are

inapposite because they did not address the circumstance where, as here, a plaintiff seeks loan-

by-loan relief.[19]

Finally, Plaintiff claims it adequately pled a connection between the alleged contractual

breaches and its alleged losses.  Opp. at 31.  But Plaintiff is forced to acknowledge that its

Complaints contain mere generalized allegations that RFC settled various claims "involving

securitizations backed by Defendants' loans."  *Id.*  Plaintiff nowhere alleges that any particular

loans were the cause of any of those purported losses.  Mem. at 27.[20]

## CONCLUSION

For the foregoing reasons, as well as those set forth in Defendants' opening brief,

Defendants respectfully request that the Court dismiss Plaintiff's (1) claims for indemnification

with respect to securities law, fraud, and intentional misconduct claims, (2) contract claims as

time-barred, and (3) contract and indemnification claims as insufficiently pled.

---

[18]  Plaintiff faults the court in *Embrace* for failing to consider that an "unnamed 'Certificateholder,'" rather than the plaintiff, had conducted the alleged forensic review, Opp. at 30, but fails to explain the significance of that distinction.  Moreover, while the court in *ACE* attempted to distinguish *Central Mortgage* based on the faulty premise that the court had applied a higher pleading standard under Delaware law, *ACE*, 5 F. Supp. 3d at 560, Chancellor Strine held that plaintiff's original pleading as to certain loans did not give "fair notice" to the defendant as to any other loans.  *Cent. Mortg.*, 2012 WL 3201139, at *17, *19.

[19]  *See Okla. Police Pension & Ret. Sys. v. U.S. Bank*, 291 F.R.D. 47, 66–67 (S.D.N.Y. 2013) (plaintiff alleged trustee's violation of Trust Indenture Act for failing to give "[any] notice of defaults"); *Bank Hapoalim B.M. v. Bank of Am. Corp.*, 2012 WL 6814194, *7 (C.D. Cal. Dec. 21, 2012) (defendant's statement regarding underwriting guidelines could provide basis for fraud claim where "plaintiffs allege systematic abandonment of underwriting guidelines"); *Assured Guar. Mun. Corp. v. Flagstar Bank FSB*, 2011 WL 5335566, *7 (S.D.N.Y. Oct. 31, 2011) (certificate insurer sued to recover insurance proceeds under separate Insurance and Indemnity Agreement and thus was not bound by loan-by-loan notice requirement).

[20]  At a minimum, the Complaints should be limited to only those loans and contractual breaches specifically identified.  *See Citigroup*, 2014 WL 1329165, at *6–7; *Cent. Mortg.*, 2012 WL 3201139, at *17–19.

Dated: November 7, 2014

Respectfully submitted,

 /s/ Matthew V. Johnson
R. Hackney Wiegmann (hwiegmann@wc.com)
Andrew W. Rudge (arudge@wc.com)
Matthew V. Johnson (mjohnson@wc.com)
Jesse Smallwood (jsmallwood@wc.com)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
(202) 434-5000
(202) 434-5029 (fax)

*Attorneys for Defendant HSBC Mortgage Corp.(USA)*

 /s/ Cameron S. Matheson
James A. Murphy (jmurphy@mmlawus.com)
Cameron S. Matheson (cmatheson@mmlawus.com)
Theodore R. Snyder (tsnyder@mmlawus.com)
MURPHY & MCGONIGLE, PC
1185 Avenue of the Americas
21st Floor
New York, NY 10036
(212) 880-9999

*Attorneys for Defendants GreenPoint Mortgage Funding, Inc., Summit Financial Mortgage LLC, and Summit Community Bank, Inc.*

 /s/ Scott D. Musoff
Scott D. Musoff (scott.musoff@skadden.com)
Robert A. Fumerton
Alexander C. Drylewski
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036
(212) 735-3000
(212) 735-2000 (fax)

*Attorneys for Defendant UBS Real Estate Securities, Inc.*

 /s/ Joel L. Perrell, Jr.
Joel L. Perrell, Jr. (jperrell@milesstockbridge.com)
Kristen M. Siracusa
(ksiracusa@milesstockbridge.com)
MILES & STOCKBRIDGE, P.C.
100 Light Street
Baltimore, MD 21202
(410) 727-3762
(410) 385-3700 (fax)

*Attorneys for Defendant First Mariner Bank*

16

/s/ Roland P. Reynolds
_____
Roland P. Reynolds (rreynolds@pldlawyers.com)
PALMER, LOMBARDI & DONOHUE, LLP
515 South Flower Street
Suite 2100
Los Angeles, CA 90071
(213) 688-0430
(213) 688-0440 (fax)

*Attorney for Defendant Mortgage Investors Group, Inc.*

/s/ John Doherty
_____
John P. Doherty (john.doherty@alston.com)
Jennifer Susan Kozar
James S. D'Ambra, Jr.
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016
(212) 210-9400
(212) 210-9444 (fax)

*Attorneys for Defendant SunTrust Mortgage, Inc.*